## ● ORIGINAL ●



```
FILED
APR 0 4 2002
PER _____
HARRISBURG, PA, DEPUTY CLERK
```

2 TO G

87
4/5/0

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER LEWIS, | : CIVIL ACTION - LAW |
| Plaintiff | : |
| | : |
| v. | : NO. CV 00-0436 |
| | : |
| DOMINICK DEROSE, MARK | : |
| JESZENKA, MICHAEL HOHNEY, | : JUDGE RAMBO ✓ |
| ROBERT DRUM, MR. SHOEMAKER | : |
| CARL GARVER, and | : MAGISTRATE JUDGE SMYSER |
| DAUPHIN COUNTY, | : |
| Defendants | : JURY TRIAL DEMANDED |

## APPENDIX OF EXHIBITS IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

Exhibit 37     Second Supplemental Affidavit of Warden DeRose.

Exhibit 38     Unsworn Declaration of Sharon Manton.

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER LEWIS,       : CIVIL ACTION - LAW
        Plaintiff    :
                      :
        v.         : NO. CV 00-0436
                      :
DOMINICK DEROSE, MARK    :
JESZENKA, MICHAEL HOHNEY,  : JUDGE RAMBO
ROBERT DRUM, MR. SHOEMAKER :
CARL GARVER, and       : MAGISTRATE JUDGE SMYSER
DAUPHIN COUNTY,       :
        Defendants   : JURY TRIAL DEMANDED

## SECOND SUPPLEMENTAL AFFIDAVIT
## OF DOMINICK DeROSE

Dominick DeRose, being duly sworn according to law hereby deposes and states as follows:

1. In my original affidavit dated May 3, 2001, I stated at paragraph 31 that Christopher Lewis' back pay was not refused when he returned to work at the Prison. I further indicated that there were numerous letters and conversations among Mr. Lewis, Union Business Agent Charles Shugart, and me in an effort to compute the proper amount of back wages to be provided to Mr. Lewis. I also indicated that Mr. Lewis initially disputed these findings and proposed payments and that the matters were

EXHIBIT
37

under negotiation for some period of time. In fact, throughout the entire period of negotiations, Mr. Lewis continually challenged my calculations and my proposed payment. My purpose here is to clarify in greater detail the nature of the disputes and the chronology of the negotiations that lead to the compromise resolution of these matters.

2. Upon Mr. Lewis' return to work in late January, 2000, computing the back wages owed to him during the period of suspension was not a simple matter of just calculating the amount of wages owed to him for that time period at straight time based upon a normal work week. Rather, these calculations also included issues concerning entitlement to and calculation of leave time pay, overtime pay, holiday pay, and training pay as well as deductions for any wages and unemployment compensation received during the period of suspension. After his return to work, Mr. Lewis had raised issues concerning his alleged entitlement to payment for these items during his period of suspension. He also initially refused to provide a W-2 wage form for employment that he had during his period of suspension. In this regard, two memos of 2/1/00 and two memos of 2/8/00 from Christopher Lewis, which raise some of these matters, are attached hereto and marked collectively as Exhibit "A".

3.  Thereafter, I further reviewed and researched these matters and drafted a memorandum concerning adjustments to those items claimed by Mr. Lewis for back wage reimbursement that I felt were proper and justified.  A true and correct copy of that memorandum is attached hereto and marked as Exhibit "B".  That memorandum also addressed the issue of health benefits on page 3.  The applicable section indicated that if Mr. Lewis had any out of pocket medical expenses during the period of his suspension, they would be reimbursed at the rate appropriate for his health care coverage.  I then forwarded this memorandum by correspondence of February 24, 2000 to Charles Shugart, the Union representative, who was involved in negotiation of these items, for his review.  A true and correct copy of my February 24, 2000 letter to Charles Shugart is marked and attached hereto as Exhibit "C".

4.  As of the time of my February 24, 2000 letter (Exhibit "C") Mr. Lewis was again no longer actively employed at the Prison.  After his return from suspension, on or about February 14, 2000, he claimed that a stress related medical condition prevented him from working at the Prison, and he has not returned to duty since that date.

5.  As of February 2000, there was pending a grievance number 59597 dated 7/14/99 pertaining to these matters which had previously been filed by Christopher Lewis and which states as follows:

> "I am grieving that I had been suspended without pay on July 12, 1999.  I had been accused of erasing the file in the Captain's office.  I am requesting a hearing and all monies lost in back pay and in benefits owed to me."

That grievance was also signed by Charles Shugart, the Union representative, as well as by Mr. Lewis.  A true and correct copy of Grievance Number 59597 is attached hereto and marked as Exhibit "D".

6.  I then received correspondence of February 25, 2000 in response to my draft memorandum (Exhibit "B") which was signed by both Charles Shugart and by Christopher Lewis.  While many of the items that I discussed in my memorandum were agreed to by Mr. Shugart and Mr. Lewis, there still remained several unresolved issues.  Specifically, these issues pertain to alleged entitlement to back pay for training time, a credit of seven (7) vacation days and five (5) sick days that Mr. Lewis and Mr. Shugart claimed he would have earned between July 11, 1999 and January 9, 2000, as well as applicable deductions for wages and unemployment

compensation received during the period of suspension.  Mr. Shugart and Mr. Lewis also did not agree that this settlement should include resolution of a prior three (3) day suspension for sleeping on duty which I had proposed in my memorandum (Exhibit "B").  The letter did indicate that Mr. Lewis was under an HMO (County provided) and as such, would not have had any "out of pocket" costs for medical services.  It was agreed to resolve this issue as outlined in my memorandum with the understanding that all of Mr. Lewis' medical bills would be paid in full.  Finally, the letter specifically indicates as follows:

> "Any corrections to the draft settlement must be mutually agreed upon prior to the final settlement of this matter.  The signatures of the County and grievant will settle all issues, discipline or other matters related to this incident and proposal."

Based upon this paragraph from the letter from Mr. Shugart and Mr. Lewis, I understood that final settlement of the matter could not occur until any corrections to the draft settlement document were mutually agreed upon between Lewis, the Union, and the County.

7.  I then responded to the letter of February 25, 2000 from Mr. Lewis and Mr. Shugart (Exhibit "E") by letter of March 6, 2000 addressed to Mr.

Shugart and copied to Christopher Lewis.  A true and correct copy of said letter is marked and attached hereto as Exhibit "F".  This letter, in essence, states that with respect to the back pay matter, the remaining issues were alleged entitlement to back pay for training time and leave time carry over. My letter also notes that the prior suspension for the other matter would be handled in accordance with the established procedures and would not be part of the settlement.  Finally, my letter notes that with regard to the health benefits issue, as of March 6, 2000, Mr. Lewis had produced two (2) receipts from health care providers which would be forwarded to "Personnel" (the County Personnel Office) for processing and would be completed in accordance with Mr. Lewis' medical plan.  To my knowledge, those receipts were forwarded to the County Personnel Office for processing.  After having been returned to duty from his suspension, Mr. Lewis was again not reporting to duty due to "health problems." Therefore, my letter also stated, with regard to the health benefits issue, that Mr. Lewis was again being carried on inactive status as of February 14, 2000.  It also indicated that as of that time, Officer Lewis had not applied for Family Medical Leave.  It is my understanding that, subsequently, Mr. Lewis did apply for Family Medical Leave after the date of my letter.

8.  After my correspondence of March 6, 2000 to Mr. Shugart (Exhibit "F"), I continued to negotiate the remaining issues with him.  Ultimately, by March 21, 2000, we had tentatively resolved two of the remaining issues. The resolution that was ultimately agreed to by both sides was that there would be no payment for training hours in 1999; however, on the leave time issue, Mr. Lewis would be paid for five (5) sick days and one (1) vacation day.  In this regard, Mr. Lewis had originally claimed seven (7) vacation days and five (5) leave days which the County did not believe that he was entitled to claim.

9.  At that time, there also still remained an issue of the deduction calculation from the amount due to Mr. Lewis because of monies received by him from Unemployment Compensation and from other employment during the period of his suspension.    Along these lines I received correspondence dated March 21, 2000 from Mr. Shugart which included a proposed settlement agreement signed by Mr. Lewis, true and correct copies of which are collectively attached hereto and marked as Exhibit "G". The proposed settlement amount was $19,869.20 which did not include the allowable deductions for wage and unemployment compensation received.

10.  Wage information that was ultimately provided to me indicated that Mr. Lewis had earned/received $644.70 in wages from other employers during his period of suspension in 1999 and $2,406.00 in unemployment compensation during that period.   Subtracting those figures from the $19,869.20 figure, leaves a total of $16,818.50, the amount ultimately agreed to by the parties.

11.  There also remained a dispute concerning the language of the Release Agreement. I believed that the proposed draft of the agreement that was forwarded to me on March 21, 2000 by Mr. Shugart was different from what had been previously agreed to between the two of us.  It also contained an incorrect figure due of $19,869.20.   I then forwarded correspondence of April 19, 2000 to Mr. Shugart along with what I considered to be the final agreement and a spread sheet showing the basis for calculation of the final figure due of $16,818.50, true and correct copies of which are collectively attached hereto and marked as Exhibit "H".

12.  While a check had been cut for payment of the amount due of $16,818.50 since March 24, 2000, it could not be disbursed until there was agreement by the parties to the language of the settlement agreement and

to the amount due.  As previously indicated, the letter of February 25, 2000

signed by both Mr. Lewis and Mr. Shugart (Exhibit "E") also stated that

> "Any corrections to the draft settlement must
> be mutually agreed upon prior to the final
> settlement of this matter"

13.  Thereafter, I received a further memorandum from Mr. Shugart

indicating that the proposed language in paragraph 14 of the settlement

agreement was not satisfactory to Mr. Lewis and his attorney.  A true and

correct copy of that memorandum is attached hereto and marked as Exhibit

"I".

14.  Ultimately, after further negotiation, the specific language of the

final paragraph of the settlement agreement (paragraph 14) was agreed to

between the attorneys for the County and the attorney for Mr. Lewis.  The

agreement was signed by Mr. Shugart and Mr. Lewis on May 11, 2000 and

by me on May 15, 2000.  I had the original signed settlement agreement and

the payroll check for the amount due under the agreement hand delivered

to Mr. Shugart on May 15, 2000.    A true and correct copy of my

correspondence of May 15, 2000 along with the executed settlement

agreement and check stub are collectively attached hereto and marked as Exhibit "J".

15.  The settlement agreement specifically addresses both the issue of reimbursement of medical expenses to Mr. Lewis in paragraph 11 and in paragraph 14 indicates that it settles and resolves all matters raised in Grievance Number 59597. (Exhibit "J").   That Grievance specifically referenced "all monies lost in back pay and in benefits owed to me." (Exhibit "D")

16.  At no time did I ever direct, advise, or suggest either directly or indirectly, either before or after completion of the settlement agreement (Exhibit "J") that payment of medical expenses incurred by Mr. Lewis either not be paid or that there be any delay in their processing and payment.  In fact, from the start, my initial memorandum (Exhibit "A") specifically recognized that medical expenses that were incurred during the period of suspension would be submitted and would be reimbursed at the applicable rate by the County.

17.  I also was not in any way involved in any claimed delay in the re-enrollment of Mr. Lewis for medical benefits upon his return from suspension.  In this regard, I specifically recall calling Sharon Manton,

Director of Personnel for the County, in February 2000 to confirm that the necessary paperwork had been completed from her office to again enroll Mr. Lewis for his benefits.

The foregoing is based upon my personal knowledge and I am competent to and would testify to same if called as a witness at the trial of this matter.

Date: _April 4, 2002_

_Dominick DeRose_, Warden
Dauphin County Prison

Sworn to and subscribed
before me this _4th_ day
of April, 2002.

_Denise Kelly_
Notary

NOTARIAL SEAL
DENISE KELLY, Notary Public
Harrisburg, Dauphin County
My Commission Expires Feb. 1, 2003

**DAUPHIN COUNTY PRISON**



WARDEN'S OFFICE
RECEIVED
FEB 0 2 2000
DAUPHIN COUNTY, PRISON

TO: Warden DeRose

FROM: CO- Christopher B. Lewis

SUBJECT: In Response to the telephone Conversation on 2-1-00 Approx 10:25am

DATE: 2-1-00

I am still respectfully requesting all Vacation time earned and not used in 1999 be added to year 2000's Vacation time. Also respectfully requesting the sick time that I would have earned in 1999 be $ added to year 2000 and three of those days Cover 1-25-00, 1-26-00, 1-27-00. For I was under a doctors care per faxed Doctors slip Sent and faxed to the prison on 2-1-00. I also understand that you said the Emergency Vacation Day I took on 1-30-00 will be handled and taken care of and be paid, But that, that vacation Day will come out of year 2000's Vacation time.

Respectfully
CO Christopher Lewis
CO.

**EXHIBIT**
**A**

### DAUPHIN COUNTY PRISON



TO: Warden DeRose

FROM: CO Christopher Lewis

SUBJECT: Response to your letter

DATE: 2-1-00

In response to your letter Warden DeRose. I respectf
need to inform you as per Contract with Local 716 it does
not state that any employment that I had undertaken
while I was unjustly suspended, be reported to you or
a copy of W-2 for that job I worked be handed ove
It does say in the Contract though that any
unemployment I recieved while under suspension
does have to be reported to you for deduction on
the back pay that is owed to me. The W-2 for
unemployment will be copied and handed over to you
promptly.

Respectfully
CO. Christopher Lewis

CO.

## DAUPHIN COUNTY PRISON



TO: Warden De Rose

FROM: CO Christopher B. Lewis

SUBJECT: 4 hours Baton Training

DATE: 2-8-00

Warden De Rose, I am also respectfully requesting four (4) hours Overtime pay for Baton Training that I had missed while suspended unjustly. As Well as (4) Four hours Overtime for Handcuffing class.

Thank You
CO Christopher Lewis
CO Chp B. X

Handed in on 2-8-00
10-6 shift put in envelope
Handed to Captain Lahr

## DAUPHIN COUNTY PRISON

WARDEN'S OFFICE
RECEIVED
FEB 0 8 2000
DAUPHIN COUNTY, PRISON

TO: Warden DeRose

FROM: CO Christopher B. Lewis

SUBJECT: Payment for loss of Benefits Package

DATE: 2-8-00

Warden DeRose, Respectfully
I am request $600.00 to be added to
my back pay for all my benefits were
taken away for over six (6) months.
I did not opt out of my benefit package
voluntarily, they were taken from me.

Thank You
CO Christopher Lewis
CO CBL

Handed in on 2-8-00
10-6 Shift to Cpt. Lahr
and copy made
Sent in Envelope



# DAUPHIN COUNTY PRISON


A-1

**Commissioners**
JOHN D. PAYNE, Chairman
LOWMAN S. HENRY
ANTHONY M. PETRUCCI

**Chief County Administrator/
Chief Clerk**
ROBERT BURNS

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Support**
JAMES M. DeWEES

**Deputy Warden/Treatment**
ELIZABETH K. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 558-1100
FAX (717) 558-8825

# DRAFT

Correctional Officer Christopher Lewis
2747 Banks St.
Harrisburg, PA 17103

    Re: Return to Work Adjustment

Dear Officer Lewis:

As per our conversations, please allow me to outline what I have discovered and will apply to your return to work adjustment.

- **Leave Time:**
  I have researched your accrual rate as well as your usage of leave time for the past five years. In each instance, during the course of the calendar year, you used that time which was earned at the appropriate rate for that year. In no year did you carry over any leave time. Therefore, no additional leave time will be credited to you. However, according to Pay Period 1 in 2000, you were in a negative balance for personal days (15.175 hours) and vacation (40.2854 hours). In these two areas, I will notify payroll to "zero you out" (credit you for the above listed deficit hours) since if you had worked during that period of suspension, you would have been eligible to accrue leave time to offset the negative balances. For calendar year 2000, you will be eligible for that leave time as contractually stipulated for your years of service.

- **Leave Time Taken/Pay Period 3:**
  As per our conversation, since you did not have sick time to cover the sick days taken January 25, 26, and 27, this time was converted to vacation time, which would be deducted from your total year 2000 vacation leave. Since there was some confusion as to what leave time you thought would be available, by converting the sick hours to vacation leave, you will not be adversely affected.


**EXHIBIT**
B

C.O. C. Lewis    DRAFT LETTER    3/21/00 2/23/00        page 2

- **Overtime Hours:**
  Research shows that in 1997 and 1998, you were paid very minimal overtime and per our conversation, you believe that those few hours were possibly for training purposes. My research and your acknowledgment that you had not worked any overtime in previous years would not make you eligible for any overtime compensation. We had a lengthy discussion as to the "what if" scenario, and the results of our conversation were that I could not calculate "what if" overtime, since history showed that you worked no overtime days. Therefore, no overtime hours will be paid.

- **1999 Wage and Tax Statement/Unemployment Compensation:**
  I have received your fax and I will debit the stated amount from the computation of wages owed.

- **2000 Wage and Tax Statement/Unemployment Compensation:**
  You advised me that you had only received six unemployment compensation checks, and those were received in calendar year 1999. Further, you stated that you received no unemployment compensation for calendar year 2000.

- **1999 Wage and Tax Statement/Employment:**
  I have received your fax and I will debit the stated amount from the computation of wages owed.

- **2000 Wage and Tax Statement/Employment:**
  Per our conversation, you advised me that you had no employment in calendar year 2000.

- **Wages:**
  As per our conversation, I will calculate your wages as follows:
  - for pay periods in which there are no paid holidays, you will be credited for 80 hours at your appropriate hourly rate.
  - for pay periods in which a holiday was on your normal workday, you will be credited with 72 hours regular pay, 8 hours at time and a half, and 8 hours of holiday pay.
  - for pay periods in which a holiday fell on your day off, you will be credited with 80 hours regular pay and 8 hours holiday pay.

  Your suspension began the first day of Pay Period 15, 1999, and you returned to work the last workday of Pay Period 2, 2000. Therefore, for Pay Period 2, you are only eligible for 64 hours regular time, 8 hours at time and a half and 8 hours holiday pay.

- **Training:**
  Your request for overtime payment for baton and handcuffing training is denied since the training for both classes was completed on your normal shift and days of work. Therefore you are not eligible for any payment

C.O. C. Lewis    DRAFT LETTER    3/21/00 2/23/00     page 3

- **Health Benefits:**
  Your request for reimbursement for loss of health benefits is denied.  You were offered COBRA but did not apply and per your letter you did not opt out.  If you had any out of pocket expenses, they will be reimbursed at the rate appropriate for your health care coverage. The two (2) receipts faxed to this office have been forwarded to Personnel for processing.

- **Three (3) day Suspension:**
  I propose that the three (3) day suspension, for sleeping on duty that has not yet been served, be considered served during your period of absence.  If agreeable, the three (3) days will be deducted from the money owed.

- **Grievance:**
  This proposal shall resolve the grievance/s filed due to your suspension from duty.

If there are any errors of omission or commission, I reserve the right to make the necessary corrections prior to or after final adjustments.

If you have any questions or require further information, please feel free to contact me.

Sincerely yours,

| **DRAFT** |
| --- |

Dominick L. DeRose
Warden

DLD:dk

Copy:  Administration
       Charles Shughart, Business Agent



Christopher B. Lewis
SSN: 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 / 236-4927

Adjustment

| | Reg Hrs | R of P | Reg Pay | OT Hours | R of P | Total OT | Holiday Hrs | R of P | Total Hol. | TOTAL PAY |
|---|---|---|---|---|---|---|---|---|---|---|
| PP #15 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #16 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #17 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #18 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #19 | 72 | $16.68 | $1,200.96 | 8 | $25.02 | $200.16 | 8 | $16.68 | $133.44 | $1,534.56 |
| PP #20 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #21 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #22 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #23 | 72 | $16.68 | $1,200.96 | 8 | $25.02 | $200.16 | 8 | $16.68 | $133.44 | $1,534.56 |
| PP #24 | 72 | $16.68 | $1,200.96 | 8 | $25.02 | $200.16 | 8 | $16.68 | $133.44 | $1,534.56 |
| PP #25 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #26 | 72 | $16.68 | $1,200.96 | 8 | $25.02 | $200.16 | 8 | $16.68 | $133.44 | $1,534.56 |
| PP #1 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | $0.00 | 8 | $16.68 | $133.44 | $1,467.84 |
| PP #2 | 72 | $17.26 | $1,242.72 | 8 | $25.89 | $207.12 | 8 | $17.26 | $138.08 | $1,587.92 |
| | | | | | | | | | Sub TOTAL | $19,869.20 |

| Type | Leave | Used 99 | Nor. C/O | Amount owed for 99/00 | |
|---|---|---|---|---|---|
| PRD | 5 | 5 | 0 | 0 | |
| VAC | 24 | 10 | 0 | 0 | |
| Sick | 15 | 10 | 0 | 0 | |
| OT/hrs | 0.5 | | | 0 | |
| | 1995 | 1996 | 1997 | 1998 | |
| PRD | 5 | 5 | 5 | 5 | |
| VAC | 21 | 21 | 21 | 23 | |
| Sick | 17 | 16 | 15 | 15 | |
| OT/hrs | | | 11 | 10.5 | |

| | | |
|---|---|---|
| Unemployment 1999 | $2,406.00 | ($2,406.00) |
| Unemployment 2000 | $0.00 | |
| | | |
| Other Employment 1999 | $644.70 | ($644.70) |
| Other Employment 2000 | $0.00 | |
| | | |
| | | |
| | | |
| | TOTAL | $16,818.50 |

NOTE: TOTAL FIGURE TO BE ADJUSTED DUE TO THREE (3) DAY SUSPENSION NOT YET SERVED

# DAUPHIN COUNTY PRISON



**Commissioners**
JOHN D. PAYNE, Chairman
LOWMAN S. HENRY
ANTHONY M. PETRUCCI

**Chief County Administrator/
Chief Clerk**
ROBERT BURNS

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Support**
JAMES M. DeWEES

**Deputy Warden/Treatment**
ELIZABETH K. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 558-1100
FAX (717) 558-8825

February 24, 2000

Mr. Charles Shughart
Chauffeurs, Teamsters & Helpers
Local Union No. 776
2552 Jefferson St.
Harrisburg, PA 17110-2519

        Re:    C.O. Christopher Lewis/Return to Work Adjustment

Dear Mr. Shughart:

Enclosed please find a copy of the proposed letter to send to C.O. Christopher Lewis, and the proposed adjustment, as well as an employee absence history.

After review, if you have any questions or require further information, please feel free to contact me.

        Sincerely yours,

        Dominick L. DeRose
        Warden

Copy: Administration



EXHIBIT

C

# REPORT OF GRIEVANCE — Teamsters Local 776   № 59597

Name Christopher B. Lewis     Home Phone 236-4927   Date of Hire 5-2-88

Address 2747 Banks St.     City Hbg     State Pa   Zip 17103

Employer Dauphin County Prison

Employer's Address 501 Mall Road Hbg Pa 17111

Road ☐   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☒

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: 7-14-99

NATURE OF GRIEVANCE: I am grieving that I have been suspended without pay on July 12, 1999. I have been accused of erasing file in Captins office. I am requesting a hearing and all monies lost in back pay and in benefits owed to me.

WARDEN'S OFFICE

RECEIVED

JUL 19 1999

DAUPHIN COUNTY PRISON

STEWARD'S COMMENTS:

_____          _____
Signature of Member Filing Grievance              Shop Steward

☐ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT

Certified Mail

Z 340 287 055

7/14/99 Kad

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

Date: _____          Signature

INSTRUCTIONS ON BACK OF YELLOW SHEET

EXHIBIT
D

PHIL FERRANTE
VICE PRESIDENT

BRAD LINDSAY
RECORDING SECRETARY

HARVEY WHITE
TRUSTEE

MIKE HORD
TRUSTEE

THOMAS VINSON
TRUSTEE

# CHAUFFEURS, TEAMSTERS AND HELPERS
## LOCAL UNION NO. 776

"AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS"

2552 JEFFERSON STREET, HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH                    JOHN L. FOGLE, II
PRESIDENT AND BUSINESS AGENT          SECRETARY TREASURER AND BUSINESS AGENT

BUSINESS AGENTS

CARLOS N. RAMOS, II

CHARLES SHUGHART

ROBERT J. SNYDER, JR.

RUSSELL A. STEPP

DANIEL A. VIRTUE



February 25, 2000

Warden DeRose
Dauphin County Prison
501 Mall Road
Harrisburg, PA 17111

Ref:    Your (DRAFT) Memo Concerning Christopher Lewis

Dear Warden:

Your above referenced Memo was received.  Below is our response on each paragraph:

- Leave Time - The "zero out" is agreed.

- Leave Time Taken / Pay Period 3 - Vacation time to cover January 25, 26 and 27 is agreed.

- Overtime Hours - Overtime hours as presented is agreed, except for training.

- 1999 Wage and Tax Statement / Unemployment Compensation - Agreed.

- 2000 Wage and Tax Statement / Unemployment Compensation - Agreed

- 1999 Wage and Tax Statement / Employment - Agreed

- 2000 Wage and Tax Statement / Employment - Agreed

- Wages - The method of calculation is agreed.

- Training - Not agreed.  It is our belief that training was performed from 6:00 a.m. until 10:00 a.m. (off shift).

- Health Benefits - Mr. Lewis was under the HMO.  He would not have had any "out of pocket" costs for services.  This is agreed, if it is understood that all his bills are paid in full.



**EXHIBIT**

E

TELEPHONE (717) 233-8766



- Three (3) day Suspension - Not agreed. This is a separate issue from the backpay settlement. He is entitled to have his grievance presented under the grievance procedure.

- Grievance (59597) - If all issues contained in this letter are resolved to the satisfaction of the grievant, the grievance will be withdrawn.

- Any corrections to the draft settlement must be mutually agreed upon prior to the final settlement of this matter. The signatures of the County and grievant will settle all issues, discipline or other matters related to this incident and proposal.

It is the position of the grievant that he should be credited with the seven (7) vacation days and five (5) sick days he would have earned between July 11, 1999 and January 9, 2000. We will need to confirm that Mr. Lewis was credited with all his sick leave, vacation and personal days from the first full pay period in January 2000.

Except for the above, the back pay reimbursement as listed on your draft copy is agreed upon.

Sincerely,

Charles Shughart
Business Agent

Christopher Lewis

cc:
Stewards

# DAUPHIN COUNTY PRISON



**Commissioners**
JOHN D. PAYNE, Chairman
LOWMAN S. HENRY
ANTHONY M. PETRUCCI

**Chief County Administrator/
Chief Clerk**
ROBERT BURNS

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Support**
JAMES M. DeWEES

**Deputy Warden/Treatment**
ELIZABETH K. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 558-1100
FAX (717) 558-8825

March 6, 2000

Mr. Charles Shughart, Business Agent
Teamsters Local #776
2552 Jefferson Street
Harrisburg, PA 17110-2505

Re: C.O. Christopher Lewis

Dear Mr. Shughart:

I have had an opportunity to review your letter of 2/25/00 which was received on 2/29/00. In your correspondence, you addressed each section and I will again review those sections with your comments in mind.

1. Leave time: "Zero Out" - No problem/agreed; "Carry Over of Leave Time" – not agreed – There is no room for discussion or movement. SEE # 12.
2. Leave time Taken (Pay Period #3): No problem/agreed.
3. Overtime Hours: No problem with normal overtime, but 'training overtime' not agreed. There is no room for discussion or movement; Officer Lewis is not eligible for any payment in this area. Training was offered on shift – SEE #9.
4. 1999 Wage/Tax Statement /Unemployment Compensation: No problem/agreed.
5. 2000 Wage/Tax Statement/Unemployment Compensation: No problem/agreed as long as no unemployment checks were received in 2000.
6. 1999 Wage/Tax Statement/Employment: No problem/agreed as long as no other wages were earned in 1999.
7. 2000 Wage/Tax Statement/Employment: No problem/agreed as long as no wages were earned in 2000.
8. Wages: No problem/agreed.
9. Training: Officer Lewis may be calculating overtime based on pervious years. Calendar year 1999 training, for the 10-6 shift, was offered, on shift, on six (6) separate days. Each day/training session was scheduled on Officer Lewis' regularly scheduled workday. ***Therefore no training overtime is owed or warranted.***
10. Health Benefits: Officer Lewis stated several times that he had no 'out of pocket expenses' relative to this issue. However, he did produce two (2) receipts. ***Those receipts were***

EXHIBIT

Mr. Charles Shughart
March 6, 2000



*forwarded to Personnel for processing and will be completed in accordance with Officer Lewis' medical plan.* If there are any outstanding claims by Officer Lewis, they need to be addressed now. In addition, as of February 14, 2000, Officer Lewis is again being carried in an inactive status. Officer Lewis was offered the opportunity to apply for Family Medical Leave several times. On each occasion he declined and as of March 1, 2000 he again has lost his coverage unless he applies for COBRA. This is a separate matter unrelated to his suspension. Therefore, the only claims eligible in this settlement are those that occurred between the time of his initial suspension (July 12, 1999) and his return to work on January 23, 2000.

11. Sleeping on Post Suspension: This matter, as well as all outstanding issues regarding discipline (except grievance #59,597) shall be handled in accordance with established procedures.

12. Carry Over of Leave Time: As explained to Officer Lewis personally and as outlined in my draft **LEAVE TIME,** a review of Officer Lewis' leave time usage for the past five (5) years showed a very distinct pattern of utilizing all alloted time each year. *No time,* vacation, personal, or sick *was carried over in any year.* Therefore, **if** it is your position that Officer Lewis would have earned this time, then this office will assume that Officer Lewis would have used those days. (However, by this discussion, it may NOT be assumed that this office concurs with the days in question.) In addition, we will need to assume that Officer Lewis was in an active status the complete year. NOTE: Since Officer Lewis is now in an inactive status, he will not be able to accrue his full allotment of leave time for calendar year 2000.

13. Grievance #59,597: It appears that this issue is not yet resolved.

Please advise me if the above information will now resolve grievance #59,597. I believe that the only two (2) outstanding issues are Training OT and Leave Time Carry over. I believe I have calculated both in accordance with past practice and established protocol.

Sincerely,


Dominick L. DeRose, Warden


COPY:  Administration
       C.O.  Christopher Lewis
       Personnel Office

# MEMORANDUM
## Teamsters Local 776

March 21, 2000

To:     Warden DeRose

From:   Chuck Shughart, Business Agent

Subj:   Settlement for Chris Lewis

Attached is a proposed settlement agreement.  This proposed agreement has been reviewed by Mr. Lewis.  It is acceptable to Mr. Lewis.  An original has been signed by him and is in my possession.

Please advise me if this proposed settlement is acceptable to the County.

EXHIBIT

G

03/21/00  TUE 13:28 FAX 7172338023          TEAMSTERS 776

3-21-00

# SETTLEMENT AGREEMENT

It is agreed between the County, Union and Christopher Lewis that grievance 59597 will be settled in the following manner:

1.  Mr. Lewis will be paid back pay in the amount of $19,869.20. From this amount, all appropriate deductions will be made. This lump sum payment will be paid in a regular paycheck. Payment will be submitted immediately and paid by the County as soon as possible.

2.  Negative leave time balances in 1999 will be "zeroed out".

3.  Mr. Lewis will be credited with five sick days and one vacation day that would have been credited to him between the date of his suspension until the start of the first full pay period in the year 2000. (Mr. Lewis contends that he was entitled to seven vacation days and five sick days.) This will not establish a precedent for either the County or Union.

4.  Mr. Lewis will receive vacation pay for time he was off work on January 25, 26 and 27.

5.  No overtime hours will be paid for 1999. This is to include training hours in 1999.

6.  The Unemployment Compensation deduction from the amount stated in paragraph 1 is agreed.

7.  The deduction for interim wages from the amount stated in paragraph 1 is agreed.

8.  It is understood and agreed that Mr. Lewis did not have any employment earnings or unemployment payments from January 1, 2000 until January 22, 2000.

3-21-00

9.   The County's calculation for wages and holiday pay as reflected on the attached exhibit is agreed.

10.  The County will pay (or reimburse Mr. Lewis) for any actual medical expenses that were incurred by Mr. Lewis or his qualified dependents during the time of his suspension. Such benefits will be equal to those which he would have received under his chosen insurance provider at the time of suspension.

11.  All other grievances filed by Mr. Lewis will be processed in accordance with the established contractual grievance procedure. Those grievances remain on hold until Mr. Lewis returns to active employment with the County.

12.  Grievance 59597 will be withdrawn with the signing of this agreement.

_____ / _____          _____ , 3-21-00
For the County              Date                    For the Union              Date

_____ / 3-21-00
Christopher Lewis           Date



# DAUPHIN COUNTY PRISON



**Commissioners**
JOHN D. PAYNE, Chairman
LOWMAN S. HENRY
ANTHONY M. PETRUCCI

**Chief County Administrator/**
**Chief Clerk**
ROBERT BURNS

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Support**
JAMES M. DeWEES

**Deputy Warden/Treatment**
ELIZABETH K. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 558-1100
FAX (717) 558-8825

April 19, 2000
(Faxed, not mailed)

Mr. Charles Shughart, Business Agent
Teamsters Local #776
2552 Jefferson Street
Harrisburg, PA 17110-2505

Re: C.O. Christopher Lewis

Dear Mr. Shughart:

I have had the opportunity to talk with the County's attorneys regarding Officer Lewis' proposed Settlement Agreement. As you are aware, the final draft proposed by Officer Lewis was different from the one to which you and I had tentatively agreed. In consequence to the proposed changes by Officer Lewis, a phone conversation between the County's attorneys and Officer Lewis' attorney, Don Bailey, Esq. has resulted in a final Settlement Agreement contingent on both your agreement and that of Officer Lewis.

In addition, I have a payroll check for Officer Lewis that has been cut since March 24, 2000. This check will be forwarded as soon as the signatures are affixed to the Agreement.

Sincerely,

Dominick L. DeRose
Warden

Attachments: Adjustment Agreement without Leave Time Changes Reflected
             Settlement Agreement (with Agreed Leave Days)

COPY: Administration



**EXHIBIT**
H

## SETTLEMENT AGREEMENT
Christopher B. Lewis/Grievance #59,597

It is agreed between the County, Union, and Christopher Lewis that grievance #59597 will be settled in the following manner:

1. Mr. Lewis will be paid back pay in the amount of $16,818.50. This amount will be paid in a lump sum in a regular paycheck and all appropriate deductions will be made (withholding taxes, retirement, etc.). Payment will be submitted immediately and paid by the County as soon as possible.

2. Negative leave time balances in 1999 will be "zeroed out."

3. Mr. Lewis will be credited with five sick days and one vacation day that would have been credited to him between the date of his suspension until the start of the first full pay period in 2000. (Mr. Lewis contends that he was entitled to seven vacation days and five sick days.) This will not establish a precedent for either the County or Union.

4. Mr. Lewis will receive vacation pay for absences that occurred on January 25, 26, and 27, 2000.

5. No overtime hours will be paid for 1999.

6. The Unemployment Compensation deduction is agreed. (This amount was already deducted from the amount in Paragraph 1.)

7. The deduction for interim wages earned by Mr. Lewis in 1999 is agreed. (This amount was already deducted from the amount in Paragraph 1.)

8. It is understood and agreed that Mr. Lewis did not have any employment earnings or unemployment payments for the period from January 1, 2000 through January 22, 2000.

9. The County's calculation for wages and holiday pay as reflected on the attached exhibit is agreed.

10. It is agreed that Mr. Lewis will not be paid for any training hours in 1999.

11. The County will pay (or reimburse Mr. Lewis) for any actual medical expenses that were incurred by Mr. Lewis or his qualified dependents during the time of his suspension. Such benefits will be equal to those which he would have received under his chosen insurance provider at the time of suspension.

12. All other grievances filed by Mr. Lewis will be processed in accordance with the established contractual grievance procedure.

13. Grievance #59,597 will be withdrawn with the signing of this agreement.

14. The issues raised in grievance #59597 and resolved in this agreement were settled and resolved between the parties prior to the institution of the lawsuit in the United States District Court for the Middle District of Pennsylvania, captioned Christopher Lewis v. Dominick DeRose, Mark Jeszenka, Michael Hohney, Robert Drum, Mr. Shoemaker, Carl Garver, and Dauphin County, No. CV 00-0436. This agreement settles and resolves all matters raised in grievance No. 59597. It does not constitute a waiver of any other claims or causes of action asserted by the grievant in the above-captioned lawsuit. It is also specifically agreed that this agreement does not make Christopher Lewis a prevailing party for purposes of any claims for attorney fees and costs under federal law asserted in the above-captioned lawsuit.

| | | |
|---|---|---|
| _____/_____ | _____/_____ | |
| For the County    Date | For the Union    Date | |

_____/_____
Christopher Lewis    Date

Christopher B. Lewis
SSN: 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 / 236-4927

Adjustment

| | Reg Hrs | R of P | Reg Pay | OT Hours | R of P | Total OT | Holiday Hrs | R of P | Total Hol. | TOTAL PAY |
|---|---|---|---|---|---|---|---|---|---|---|
| PP #15 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #16 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #17 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #18 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #19 | 72 | $16.68 | $1,200.96 | 8 | $25.02 | $200.16 | 8 | $16.68 | $133.44 | $1,534.56 |
| PP #20 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #21 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #22 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #23 | 72 | $16.68 | $1,200.96 | 8 | $25.02 | $200.16 | 8 | $16.68 | $133.44 | $1,534.56 |
| PP #24 | 72 | $16.68 | $1,200.96 | 8 | $25.02 | $200.16 | 8 | $16.68 | $133.44 | $1,534.56 |
| PP #25 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | 0 | 0 | $16.68 | 0 | $1,334.40 |
| PP #26 | 72 | $16.68 | $1,200.96 | 8 | $25.02 | $200.16 | 8 | $16.68 | $133.44 | $1,534.56 |
| PP #1 | 80 | $16.68 | $1,334.40 | 0 | $25.02 | $0.00 | 8 | $16.68 | $133.44 | $1,467.84 |
| PP #2 | 72 | $17.26 | $1,242.72 | 8 | $25.89 | $207.12 | 8 | $17.26 | $138.08 | $1,587.92 |
| | | | | | | | | | Sub TOTAL | $19,992 |

| Type | Leave | Used 99 | Nor. C/O | | |
|---|---|---|---|---|---|
| PRD | 5 | 5 | 0 | | 0 |
| VAC | 24 | 10 | 0 | | 0 |
| Sick | 15 | 10 | 0 | | 0 |
| OT/hrs | 0.5 | | | | 0 |
| | 1995 | 1996 | 1997 | 1998 | |
| PRD | 5 | 5 | 5 | 5 | |
| VAC | 21 | 21 | 21 | 23 | |
| Sick | 17 | 16 | 15 | 15 | |
| OT/hrs | | | 11 | 10.5 | |

| | | |
|---|---|---|
| Unemployment 1999 | $2,406.00 | ($2,406.00) |
| Unemployment 2000 | $0.00 | |
| | | |
| Other Employment 1999 | $644.70 | ($644.70) |
| Other Employment 2000 | $0.00 | |
| | | |
| | | |
| | | |
| | TOTAL | $16,192 |

# MEMORANDUM
## Teamsters Local 776

April 24, 2000

To:         Warden DeRose

Subj:       Chris Lewis Settlement

Please be advised that I forwarded the proposed settlement dated April 19, 2000 to Mr. Lewis. He forwarded it to his attorney. The following reflects language that is not satisfactory:

> ~~The issues raised in grievance # 59597 and resolved in this agreement were settled and resolved between the parties prior to the institution of the lawsuit in the United States District Court for Middle District of Pennsylvania, captioned Christopher Lewis v. Dominick DeRose, Mark Jeszenka, Michael Hohney, Robert Drum, Mr. Shoemaker, Carl Garver, and Dauphin County, No. CV 00-0436.~~ This agreement settles and resolves all matters raised in grievance No. 59597. It does not constitute a waiver of any other claims or causes of action asserted by the grievant in ~~the above-captioned lawsuit~~ [his federal Lawsuit in CV 00-0436]. It is also specifically agreed that this agreement does not make Christopher Lewis a prevailing party for purposes of any claims for attorney fees and costs under federal law asserted in the above-captioned lawsuit.

Please have the County Solicitor review this matter and respond as soon as possible.

Sincerely,

Charles Shughart
Business Agent



EXHIBIT
I



# DAUPHIN COUNTY PRISON



**Commissioners**
JOHN D. PAYNE, Chairman
LOWMAN S. HENRY
ANTHONY M. PETRUCCI

**Chief County Administrator/**
**Chief Clerk**
ROBERT BURNS

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Support**
JAMES M. DeWEES

**Deputy Warden/Treatment**
ELIZABETH A. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 558-1100
FAX (717) 558-8825

15 May 2000
(Hand Delivered)

Mr. Charles Shughart, Business Agent
Teamsters Local #776
2552 Jefferson Street
Harrisburg, PA 17110-2505

Re: C.O. Christopher Lewis

Dear Mr. Shughart:

Enclosed please find an executed original Settlement Agreement for your files as well as the payroll check cut from pay period #6 (ending 3/19/00) for Mr. Lewis. Please forward this check to Mr. Lewis as expeditiously as possible since the expiration date of the check is fast approaching. If there are any problems, please advise me.

Very truly yours,

Dominick L. DeRose
Warden

Enclosures (2): Settlement Agreement

COPY: Administration
        Christopher Lewis (w/o enclosures)



EXHIBIT

J

## SETTLEMENT AGREEMENT
Christopher B. Lewis/Grievance #59597

It is agreed between the County, Union, and Christopher Lewis that grievance #59597 will be settled in the following manner:

1. Mr. Lewis will be paid back pay in the amount of $16,818.50. This amount will be paid in a lump sum in a regular paycheck and all appropriate deductions will be made (withholding taxes, retirement, etc.). Payment will be submitted immediately and paid by the County as soon as possible.

2. Negative leave time balances in 1999 will be "zeroed out."

3. Mr. Lewis will be credited with five sick days and one vacation day that would have been credited to him between the date of his suspension until the start of the first full pay period in 2000. (Mr. Lewis contends that he was entitled to seven vacation days and five sick days.) This will not establish a precedent for either the County or Union.

4. Mr. Lewis will receive vacation pay for absences that occurred on January 25, 26, and 27, 2000.

5. No overtime hours will be paid for 1999.

6. The Unemployment Compensation deduction is agreed. (This amount was already deducted from the amount in Paragraph 1.)

7. The deduction for interim wages earned by Mr. Lewis in 1999 is agreed. (This amount was already deducted from the amount in Paragraph 1.)

8. It is understood and agreed that Mr. Lewis did not have any employment earnings or unemployment payments for the period from January 1, 2000 through January 22, 2000.

9. The County's calculation for wages and holiday pay as reflected on the attached exhibit is agreed.

10. It is agreed that Mr. Lewis will not be paid for any training hours in 1999.

11. The County will pay (or reimburse Mr. Lewis) for any actual medical expenses that were incurred by Mr. Lewis or his qualified dependents during the time of his suspension. Such benefits will be equal to those which he would have received under his chosen insurance provider at the time of suspension.

12. All other grievances filed by Mr. Lewis will be processed in accordance with the established contractual grievance procedure.

13. Grievance #59597 will be withdrawn with the signing of this agreement.

14. This agreement settles and resolves all matters raised in grievance No. 59597. It does not constitute a waiver of any other claims or causes of action asserted by the grievant in the lawsuit that he has filed in the United States District Court for the Middle District of Pennsylvania, captioned Christopher Lewis v. Dominick DeRose, Mark Jeszenka, Michael Hohney, Robert Drum, Mr. Shoemaker, Carl Garver, and Dauphin County, and docketed to No. CV 00-0436. It is also specifically agreed that this agreement does not make Christopher Lewis a prevailing party for purposes of any claims for attorney fees and costs under federal law asserted in the above-captioned lawsuit.

| For the County | Date 8/15/00 | For the Union | Date 5-11-00 |
|---|---|---|---|

| Christopher Lewis | Date 5-11-00 |
|---|---|

## ACKNOWLEDGMENT OF RECEIPT

By my signature below, I do hereby acknowledge that I have received a letter written to me addressing Officer Christopher Lewis' Settlement Agreement (grievance #59597) from Warden DeRose, with a date of May 15, 2000.

5-15-00
_____
DATE

(signed) _____
Charles Shughart

5-15-00
_____
DATE

(signed) _____
Witness

REPORT: PREDIT        GENERATED: 09 NOV 1999 17:36                    RUN: TUESDAY MAR212000 10:53          PAGE   672

CHECK DATE  03/24/00                      DAUPHIN COUNTY
                                          PAYROLL JOURNAL
                                              EDIT

| | | | | | DEPT | C-CENTER | POSITION | ADVANCE DATE | | | LOCATION | | FREQUENCY | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | EMPLOYEE # | NAME | | | | SHFT EXCEP | | | | | | | | SHFT EXCEP |
| TC | TC DESC | AMOUNT | HOURS | DAY | RATE | CD | CC | TC | TC DESC | AMOUNT | HOURS | DAY | RATE | CD  CC |

----------------------------------------------------------------------------------------------
                                                                    TOTAL DEDUCTIONS                    1327.62
                                                                         ISSUE NOD                         0.00
----------------------------------------------------------------------------------------------

|  | 354 | LEWIS, CHRISTOPHER B | | | | 00035 | PRISN | 704719013 | | | | 311 | | 1 |

EARNINGS
197 ADG        *    16818.50      19                        220 AWO        *              80.0000 19
                                                              TOTAL EARNINGS              80.0000          16818.50
DEDUCTIONS
   301 PEN NOTTAX      840.93                  401 FICA         1042.75
   402 MED             243.67                  410 FWT          5358.63
   415 SIT             470.92                  420 LOC           168.19
                                                 TOTAL DEDUCTIONS                  8125.29
                                                       CHECK AMOUNT                8693.21
----------------------------------------------------------------------------------------------

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER LEWIS,<br>　　　　　　　　Plaintiff | : | CIVIL ACTION - LAW |
| | : | |
| v. | : | NO. CV 00-0436 |
| | : | |
| DOMINICK DEROSE, MARK<br>JESZENKA, MICHAEL HOHNEY,<br>ROBERT DRUM, MR. SHOEMAKER<br>CARL GARVER, and<br>DAUPHIN COUNTY,<br>　　　　　　　　Defendants | : | JUDGE RAMBO |
| | : | MAGISTRATE JUDGE SMYSER |
| | : | JURY TRIAL DEMANDED |

## UNSWORN DECLARATION OF SHARON H. MANTON

I, Sharon H. Manton, do hereby state under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct, based upon my own personal knowledge:

**EXHIBIT**

38

1.    I am currently employed as the Director of Personnel and Payroll for the County of Dauphin and I have held that position since January 6, 2000.

2.    The Personnel and Payroll Department oversees and coordinates the various employee medical benefits programs, including dental, vision and prescription benefits and health insurance coverage for eligible County employees.

3.    On January 20, 2000, Deputy Warden DeWees submitted a personnel action form indicating that Christopher Lewis, an employee at the prison, was returning from a suspension effective January 23, 2000. A true and correct copy of the personnel action form is attached as Exhibit "A". After submission of that form, it would be the responsibility of my Department to ensure that Mr. Lewis was re-enrolled with the applicable benefits programs and the Warden would not be involved in that process.

4.    On or before February 14, 2000, I was contacted by Warden DeRose who wanted to confirm that the prison had taken care of the necessary paperwork to reinstate Mr. Lewis' employment and have him re-enrolled for benefits. I then sent an e-mail to Jeannette Taylor and Willie Evans requesting that they advise the Warden if there was anything further

which needed to be done to accomplish this. A true and correct copy of my February 14, 2000 e-mail is attached as Exhibit "B".

5.    On February 15, 2000, I received an e-mail response from Willie Evans responding to my February 14, 2000 e-mail inquiry. I was advised by Mr. Evans that Christopher Lewis was completing the enrollment benefit applications and he would also forward any bills he incurred during the time he was suspended from employment (July 12, 1999 – January 23, 2000). A true and correct copy of Willie Evans' February 15, 2000 e-mail is attached as Exhibit "C".

6.    On February 15, 1999 [sic], Mr. Lewis submitted a memo to the Warden indicating that he was submitting the forms to have his insurance coverages reinstated. That memo also indicated that Mr. Lewis had spoken with Willie Evans who advised that all pre-existing conditions would be covered. A true and correct copy of Christopher Lewis' February 15, 1999 [sic] memo is attached as Exhibit "D".

7.    On February 14, 2000, Christopher Lewis requested worker's compensation/administrative leave due to alleged job-related stress. The County's worker's compensation carrier was notified of this claim via the Employer's Report of Occupational Injury or Disease Form. On February

17, 2000, the carrier issued a Notice of Worker's Compensation Denial to Mr. Lewis indicating that he did not suffer a compensable, work-related injury.

8.    On or about February 17, 2000, the change in enrollment documents were submitted to Delta Dental, National Prescription Administrator and Keystone Health Plan Central to reinstate the dental, prescription, vision and medical coverages for Christopher Lewis and his dependents with an effective date of February 1, 2000.

9.    On February 24, 2000, a personnel action form was submitted indicating that Mr. Lewis was absent without leave since February 14, 2000 and that Mr. Lewis was offered Family Medical Leave which was refused. A true and correct copy of the February 24, 2000 personnel action form is attached as Exhibit "E".

10.    Since Mr. Lewis was in a non-compensable status and since he had refused to apply for Family Medical Leave, the County ceased paying for his health benefits as of March 1, 2000.   Mr. Lewis was sent correspondence dated March 7, 2000 advising Mr. Lewis of his option to continue his health benefits, for up to eighteen (18) months.   A true and

correct copy of the March 7, 2000 COBRA notification letter is attached as Exhibit "F".

11.    On April 11, 2000, Willie Evans, Benefits Coordinator, sent Mr. Lewis' outstanding medical and dental bills to Marie Rebuck, County Controller, for payment.  Those invoices were for services provided on November 24, 1999, December 28, 1999 and January 27, 2000.  A true and correct copy of the April 11, 2000 memo is attached as Exhibit "G".  The County Controller's office cut checks on April 20, 2000 which were mailed to the providers on April 24, 2000.

12.    By correspondence dated April 13, 2000, Mr. Lewis was advised as to his options with respect to his health benefit and was requested to advise me within five (5) days whether he wished to use Family and Medical Leave or to continue in an unpaid leave status. A true and correct copy of the April 13, 2000 correspondence is attached as Exhibit "H".

13.    On April 21, 2000, Mr. Lewis requested Family and Medical Leave commencing on April 13, 2000.  Mr. Lewis had previously declined Family and Medical Leave due to possible adverse consequences on his pending worker's compensation claim.  Mr. Lewis further indicated that he had not incurred any medical expenses during the month of March, 2000

and that the Family and Medical Leave should commence from the date of my April 13, 2000 letter.

14.    On May 2, 2000, a personnel action form was submitted returning Mr. Lewis from general medical leave effective April 12, 2000 and placing him on Family and Medical Leave effective April 13, 2000.  A true and correct copy of the May 2, 2000 personnel action form is attached as Exhibit "I".

15.    On July 17, 2000, I confirmed that Delta Dental was notified on the June, 2000 eligibility report to restore Mr. Lewis' benefits back to April, but Delta Dental did not update their system until July 14, 2000 to reflect that change.  True and correct copies of my July 17, 2000 e-mail to Willie Evans, as well as the Delta Dental eligibility data update forms for February, April and June, 2000 are attached as Exhibit "J".

16.    On July 19, 2000, a personnel action form was submitted reflecting that Mr. Lewis returned from family medical leave effective July 6, 2000 and was placed on medical leave of absence effective July 6, 2000.

17.    All of the foregoing changes in employment status and/or eligibility for benefits were handled in accordance with my Department's

standard operating procedures with respect to the administration of employee benefits programs.

18.    What happened in this case was that over the course of twelve weeks, Plaintiff was brought back from suspension, left again without applying for Family and Medical Leave, and then reconsidered and applied for Family and Medical Leave benefits.    Any delays and/or problems which occurred were due to Mr. Lewis' frequent changes in employment status and not due to any involvement of the Warden in the benefits process.

19.    Warden DeRose never in any way interfered with, obstructed or did anything to delay the processing of Christopher Lewis' re-enrollment for benefits, or with respect to reimbursement of Mr. Lewis for medical expenses incurred during his period of suspension.    In fact, to my knowledge, the Warden's only involvement with Mr. Lewis' re-enrollment for benefits was his phone call on or before February 14, 2000.

Date: 4-4-02

Sharon H. Manton

Sharon H. Manton
Director of Personnel and Payroll
County of Dauphin

# PERSONNEL ACTION FORM

psnl3 rev 9-96

| Name | Christopher Lewis | Social Security Number | 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 |
|---|---|---|---|
| Address | | City | State |
| Phone | Taxing District | Department Prison | Zip |

| | | | |
|---|---|---|---|
| Resignation | Date | Present Classification CO 3 | Job Code 704719 |
| Retirement | Date | | |
| Terminate | Date | Full Time | Part Time | Per Diem | Summer |
| Deceased | Date | Present Appropriation Code 001-311000-801101-00000 | |
| Furlough | Date | Proposed Classification | Job Code |
| Job Demotion | Date | Full Time | Part Time | Per Diem | Summer |
| Suspension | Date | | |
| Suspension return | Date 1-23-00 | Proposed Appropriation Code | |
| Transfer | Date | Proposed Hourly Rate 17.26   Range 29   Step 5 | |
| Temporary Position | Date | | |
| Workman's Compensation | Date | **Departmental Notes** | |
| Promotion | Date | | |
| Merit Increase | Date | Return from suspension effective 1-23-00 | |
| Hire Date Change | Date | | |
| Merit Increase | Date | | |
| Leave of Absence Personal | Date | | |
| Leave of Absence Medical | Date | | |
| Family Medical Leave | Date | | |
| Military Leave | Date | | |
| Maternity Leave | Date | | |
| Paternity Leave | Date | | |
| Return From Personal Leave | Date | | |
| Return From Medical Leave | Date | | |
| Return From Family Leave | Date | | |
| Return From Military Leave | Date | | |
| Return From Maternity Leave | Date | | |
| Return From Paternity Leave | Date | | |
| Reclassification | Date | | |
| Cost of Living Increase | Date | | |
| Miscellaneous | Date | | |
| Change of Address | Date | | |

**Department Head Signature**

Ron Lynn    2-3-00    MLB    1-20-00

**Personnel/Payroll Use Only**    Date

EXHIBIT "A"

**DeRose, Dominick**

| | |
|---|---|
| **From:** | Manton, Sharon |
| **Sent:** | Monday, February 14, 2000 11:41 AM |
| **To:** | Taylor, Jeannette; Evans, Willie |
| **Cc:** | DeRose, Dominick |
| **Subject:** | Chris Lewis - Prison |

Mr. Lewis was out for an extended period of time pending the outcome of his criminal trial for illegal use of a computer. He was found not guilty and has returned to work.

The Warden wanted to confirm that they have taken care of the necessary paperwork. They sent a PAF to suspend him, a PAF to reinstate him, and they gave him paperwork to re-enroll in benefits.

If they need to do anything else, please let the Warden know.

Willie:  The employee raised a question about pre-existing conditions and the Health Insurance Portability Act.  Are there any special concerns here?  Also, can you confirm for the Warden that a COBRA notice was sent to the employee when he lost his coverage.

**EXHIBIT**

"B"

## DeRose, Dominick

| | |
|---|---|
| **From:** | Manton, Sharon |
| **Sent:** | Tuesday, February 15, 2000 3:33 PM |
| **To:** | DeRose, Dominick |
| **Subject:** | FW: Chris Lewis - Prison |

-----Original Message-----
**From:**      Evans, Willie
**Sent:**      Tuesday, February 15, 2000 4:30 PM
**To:**        Manton, Sharon
**Subject:**   RE: Chris Lewis - Prison

There are no pre-existing clause for medical coverage.  Cobra was sent to Mr. Lewis on July 20, 1999.
I spoke with Mr Lewis today and he is completing the proper enrollment benefit applications and will also forward any bills
he incured between August of last year and January of this year.

    -----Original Message-----
    **From:**      Manton, Sharon
    **Sent:**      Monday, February 14, 2000 12:41 PM
    **To:**        Taylor, Jeannette; Evans, Willie
    **Cc:**        DeRose, Dominick
    **Subject:**   Chris Lewis - Prison

Mr. Lewis was out for an extended period of time pending the outcome of his criminal trial for illegal use of a
computer.  He was found not guilty and has returned to work.

The Warden wanted to confirm that they have taken care of the necessary paperwork.  They sent a PAF to suspend
him, a PAF to reinstate him, and they gave him paperwork to re-enroll in benefits.

If they need to do anything else, please let the Warden know.

Willie:  The employee raised a question about pre-existing conditions and the Health Insurance Portability Act.  Are
there any special concerns here?  Also, can you confirm for the Warden that a COBRA notice was sent to the
employee when he lost his coverage.



EXHIBIT

"C"

## DAUPHIN COUNTY PRISON

TO: Warden

FROM: Christopher Lewis

SUBJECT: Insurance

DATE: 2-15-99



WARDEN'S OFFICE
RECEIVED
FEB 1 5 2000
DAUPHIN COUNTY PRISON

I am Filling out and handing in to the Dauphin County Prison forms to have my insurance reinstated. I am also aware by handing in these forms all pre-existing conditions that my children and I have are to be covered. The forms handed in are as follows Keystone Health Plan Central enrollment forms, Delta Dental, NPA Nation Prescription Administrators and Willie Evans called me today at 105pm to tell me there is no pre-existing condition clans in our benefits.

Thank You

DCP-29

EXHIBIT
"D"

# △ DELTA DENTAL®  # 354

| | | | FOR DDP USE ONLY |
| --- | --- | --- | --- |
| ☐ NEW ENROLLMENT | | | |
| ☐ COBRA | | | |

**SOCIAL SECURITY NO.** 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
**LAST NAME** Lewis
**FIRST** Christopher
**INITIAL** B

**SEX** M ☒  F ☐
**BIRTHDATE** 12-17-64

**HOME ADDRESS** 3747 Banks St. No 5 Pa
**ZIP CODE** 17103

**MARITAL STATUS**
☐ Single  ☒ Married  ☐ Divorced  ☐ Separated  ☐ Widowed

**GROUP NO.** 0384
**GROUP NAME** Dauphin County

**NAME OF CARRIER**

DOES YOUR SPOUSE HAVE A DENTAL PLAN? ☐ YES ☐ NO    ARE DEPENDENTS COV'D? ☐ YES ☐ NO

If Enrolling any Eligible Dependent, All must be enrolled

| | LAST NAME (if different) | FIRST NAME | SEX M / F | BIRTHDATE Mo. Day Yr. |
| --- | --- | --- | --- | --- |
| SPOUSE: | Lewis | Tracey | X | 8·16·87 |
| CHILDREN: | Lewis | Tiffany | X | 9·11·73 |
| | 2n oo | MO | | |

HIRE DATE May 2 1988

EFFECTIVE DATE 02·01·00

I hereby acknowledge that the information is correct.

EMPLOYEE SIGNATURE

 **NATIONAL PRESCRIPTION ADMINISTRATORS**
P.O. BOX 1981
EAST HANOVER, NJ 07936-1981



**ATTN: ELIGIBILITY DEPT.**

## CARDMEMBERS INFORMATION

| SPONSOR NAME | SPONSOR# | LOCATION# | | DATE |
|---|---|---|---|---|
| Dauphin County Prison | 191 | 0153 | | 3-15-2000 |

| SOCIAL SECURITY # | CARDMEMBERS NAME (FIRST/LAST) | DATE OF BIRTH | ☒ MALE |
|---|---|---|---|
| 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 | Christopher Lewis | 12-13-64 | ☐ FEMALE |

| STREET ADDRESS (☐ CHECK IF NEW ADDRESS) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2747 Banks Street | Harrisburg | PA | 17103 |

| TYPE OF COVERAGE: REQUESTED | ☐ MEMBER ONLY    ☐ MEMBER & SPOUSE | ☒ MEMBER & CHILD(REN)    ☐ FAMILY |
|---|---|---|

## SPOUSES INFORMATION

| SPOUSES NAME (First/Last) | Date of Birth | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Domestic Partner |
|---|---|---|---|---|
| | | | | |

## DEPENDENT INFORMATION

| DEPENDENT NAME (First/Last) | Date of Birth | | | |
|---|---|---|---|---|
| Tracey Lewis | 8-15-87 | ☐ Male  ☒ Female | ☒ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| Tiffany Lewis | 9-11-93 | ☐ Male  ☒ Female | ☒ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| | | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| | | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| | | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| | | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| | | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| | | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| | | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |
| | | ☐ Male  ☐ Female | ☐ Add  ☐ Cancel | ☐ Fulltime Student  ☐ Disabled Dependent |

## PLEASE CHECK APPROPRIATE ACTION(S)

☐ New Enrollee Effective _____

☐ Cancel Coverage Effective _____

☒ Reinstatement of Coverage Effective  02-01-2000

2-17-00
HIB

☐ Addition of Spouse Effective _____     ☐ Cancellation of Spouse Effective _____

☐ Addition of Child(ren) _____     ☐ Cancellation of Child(ren) _____

☐ Name Change  *Former Name* _____     *New Name* _____

☐ Location # Change  *Former Loc #:* _____     *New Loc #:* _____

☐ Soc. Sec. # Change  *Former SS#:* _____     *New SS#:* _____

**PLEASE CHECK ONE:**     ☒ ISSUE CARD     ☐ DO NOT ISSUE CARD

2056 P  2/99

# KEYSTONE
Health Plan Central
Independent Licensee of the Blue Cross and Blue Shield Association

## APPLICATION FOR ENROLLMENT/CHANGE
Keystone Health Plan Central, Inc., P.O. Box 898812, Camp Hill, PA  17089-8812

Marketing: (800) 547-2583    Member Services: (717) 763-3894/(800) 622-2843    Fax: (717) 975-6895

http://www.khpc.com

**FOR EMPLOYER USE ONLY**

| EFFECTIVE DATE | GROUP NUMBER |
|---|---|
| 01 01 00 | 1222 56 |

**Enrollment Fax:** (717) 730-1650

FOR KHPC USE ONLY
PLAN CODE 361
DENTAL/VISION
☐

FAXED  2-17-00

Reason for change:

| | Employee/Contract Holder | Spouse | Child | Child | Child | Child |
|---|---|---|---|---|---|---|
| **Social Security Number** | 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 | | | | | |
| **Name (Last, First, MI)** | Lewis Christopher B | | Tiffany Ona Lewis | Tracy Lynn Lewis | | |
| **Sex** | ☒ Male ☐ Female | ☐ Male ☐ Female | ☐ Male ☒ Female | ☒ Male ☐ Female | ☐ Male ☐ Female | ☐ Male ☐ Female |
| **Membership Status** | ☒ Single (1) ☐ Married (2) | ☐ Spouse (2) | ☒ Child (3) ☐ Grandchild (4) ☐ Student over 19 (5) ☐ Disabled (6) | ☒ Child (3) ☐ Grandchild (4) ☐ Student over 19 (5) ☐ Disabled (6) | ☐ Child (3) ☐ Grandchild (4) ☐ Student over 19 (5) ☐ Disabled (6) | ☐ Child (3) ☐ Grandchild (4) ☐ Student over 19 (5) ☐ Disabled (6) |
| **Birthdate** | 12-17-64 | | 9-11-93 | 8-15-87 | | |
| **Primary Care Physician Name** | Community Medical Associates | | same | same | | |
| **Check ☐ if current physician** | | | | | | |
| **Primary Care Physician No.** | 104462 | | same | same | | |
| **Other Health Insurance Co.** | ☐ Yes ☒ No | | | | | |
| **Policy Number** | | | | | | |
| **Medicare Health Insurance Claim Number** | | | | | | |
| **Medicare Effective Date(s)** | | | | | | |
| **Reason for Medicare Disability** | Part A ☐☐☐ Part B ☐☐☐ Age 65 & Over Disabled End-Stage Renal | Part A ☐☐☐ Part B ☐☐☐ Age 65 & Over Disabled End-Stage Renal | Part A ☐☐☐ Part B ☐☐☐ Age 65 & Over Disabled End-Stage Renal | Part A ☐☐☐ Part B ☐☐☐ Age 65 & Over Disabled End Stage Renal | Part A ☐☐☐ Part B ☐☐☐ Age 65 & Over Disabled End Stage Renal | Part A ☐☐☐ Part B ☐☐☐ Age 65 & Over Disabled End Stage Renal |

**Social Security Number** 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

**Employee/Contract Holder Name**

**Member Name**

**County of Residence** Dauphin

**Home Phone Number** (717) 236-4127

**Work Phone Number/Extension** (717) 238-1100

**Employer's Name**

**Date Hired**

**Employment Status:** ☐ New ☐ Hourly ☐ Rehire ☐ Retired

**Employer's Address**

**Home Address** 2747 Banks Street

**City** Harrisburg

**State** Pennsylvania

**Zip Code** 17103

**Marital Status:** ☐ Single (1) ☐ Married (2) ☒ Divorced (4) ☐ Separated (5) ☐ Widowed (3)

☐ New Enrollment ☐ COBRA Enrollment ☐ Change of Physician ☐ Add Dependent(s) ☐ Change of Employee Status ☐ Reinstate ☐ Open Enrollment ☐ COBRA ☐ Management ☐ Medicare Eligibility ☐ New Address/Name Change ☐ Other ☐ Salaried (Union Represented) ☐ Salaried (Not Union Represented) ☐ Remove Dependent(s) ☐ Terminate Coverage

**IMPORTANT:** By signing below, I represent that all information supplied in this application is true and complete. I have read and hereby agree to the Conditions of Enrollment on the reverse side of application.

**Employee's Signature:** _(signature)_    **Date:** 2-15-2000

**Employer's Signature/Phone Number:** _(signature)_ 236-8952    **Date:** 2-17-00

White - Keystone    Canary - Employer    Pink - Employee (Temporary ID)

# PERSONNEL ACTION FORM

prsnl-3 rev 9-96

| Name | Christopher Lewis | # 354 | Social Security Number | 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 |
|------|------|------|------|------|
| Address | | | City | State | Zip |
| Phone | Taxing District | | Department | Prison |

| | | | | | | |
|------|------|------|------|------|------|------|
| Resignation | Date | | Present Classification | CO 3 | | Job Code | 704719 |
| Retirement | Date | | Full Time | Part Time | Per Diem | Summer |
| Terminate | Date | | Present Appropriation Code | 001-311000-801101-00000 | | |
| Deceased | Date | | Proposed Classification | | Job Code | |
| Furlough | Date | | Full Time | Part Time | Per Diem | Summer |
| Job Demotion | Date | | Proposed Appropriation Code | | | |
| Suspension | Date | | Proposed Hourly Rate | 17.26 | Range | 29 | Step | 5 |
| Transfer | Date | | | | | |
| Temporary Position | Date | | | | | |
| Workman's Compensation | Date | | **Departmental Notes** | | | |
| Promotion | Date | | AWOL - Absence without leave since 2-14-00 | | | |
| Merit Increase | Date | | Correctional officer was offered Family Medical Leave | | | |
| Hire Date Change | Date | | and refused this leave | | | |
| Leave of Absence Personal | Date | | | | | |
| Leave of Absence Medical | Date | | | | | |
| Family Medical Leave | Date | | | | | |
| Military Leave | Date | | | | | |
| Maternity Leave | Date | | | | | |
| Paternity Leave | Date | | | | | |
| Return From Personal Leave | Date | | | | | |
| Return From Medical Leave | Date | | | | | |
| Return From Family Leave | Date | | **Department Head Signature** | | **Date** | 2-24-00 |
| Return From Military Leave | Date | | | | | |
| Return From Maternity Leave | Date | | | | | |
| Return From Paternity Leave | Date | | | | | |
| Reclassification | Date | | | | | |
| Reclassification | Date | | **Personnel/Payroll Use Only** | | | |
| Cost of Living Increase | Date | | | | | |
| Miscellaneous | Date | | | | | |
| Change of Address | Date | | | | | |

EXHIBIT
"E"

*Office Of*

# Dauphin County Personnel



**Commissioners**
JOHN D. PAYNE
LOWMAN S. HENRY
ANTHONY M. PETRUCCI

**Chief Clerk/Chief of Staff**
ROBERT BURNS

**Director of Personnel & Payroll**
SHARON MANTON

**Deputy Personnel Director**
O.J. HANNAH

**Mailing Address:**
P.O. Box 1295
Harrisburg, Pa. 17108
Telephone: (717) 255-2952

*Harrisburg, Pennsylvania*

WARDEN'S OFFICE
RECEIVED
MAR 0 8 2000
DAUPHIN COUNTY PRISON

March 7, 2000

Dear Mr. Lewis,

The County of Dauphin is required to inform you of your options to continue your health benefits after the termination of those benefits on **March 1st** The option is available, to former employee's spouses and/or dependents previously covered, who qualify.

By statute, we must offer you the same benefits you had while employed with the County of Dauphin. Your union will contact you for any benefits they administered for you. Please review the following and complete the enclosed enrollment forms and return them to this office within 60 days.

| BENEFITS | COUNTY | UNION |
|---|---|---|
| BC/BS | | |
| KEYSTONE | X | |
| VISION | X | |
| PRESCRIPTION | X | |
| DENTAL | X | |

If you would like to continue your health benefits, you will be eligible for coverage up to **18** months, effective **March 1, 2000.** Make your check payable to the **Dauphin County Treasurer.** Payment must be received prior to the first of each month to insure continued coverage. You will not receive a monthly billing. **Your coverage will lapse if the premiums are not paid when due.** There will be no reinstatement of lapsed coverage. Please send your payment to:

> County of Dauphin
> Personnel Department
> Attn: Willie S. Evans
> P.O. Box 1295
> Harrisburg, PA 17108-1295

If you have any questions, please feel free to contact Mr. Evans at (717) 255-2952.



**EXHIBIT**
"F"

# COBRA ENROLLMENT/DECLINE FORM

## DO NOT COMPLETE SHADED AREAS

| NAME Christopher Lewis | SOCIAL SECURITY NUMBER 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 | RACE | SEX | BIRTH DATE |
|---|---|---|---|---|
| ADDRESS | CITY | STATE | ZIP | HOME PHONE |

| PREVIOUS COVERAGE (MAJOR MEDICAL) | | | | COVERAGE SELECTED | |
|---|---|---|---|---|---|
| FAMILY | BLUE CROSS/SHIELD | KEYSTONE | AETNA | | |
| INDIVIDUAL | RATE | RATE $464.73 | RATE | RATE SELECTED | |

| OPTIONAL COVERAGE SELECTED | | | | |
|---|---|---|---|---|
| FAMILY | DENTAL | VISION / PRESCRIPTION | COVERAGE SELECTED | |
| INDIVIDUAL | RATE $46.72 | RATE $118.44 | TOTAL AMOUNT - MAJOR MED AND OPTIONAL | |

| DEPENDENTS | | | | |
|---|---|---|---|---|
| NAME | SOCIAL SECURITY NUMBER | RACE | SEX | BIRTH DATE |
| ADDRESS | CITY | STATE | ZIP | RELATIONSHIP |
| NAME | SOCIAL SECURITY NUMBER | RACE | SEX | BIRTH DATE |
| ADDRESS | CITY | STATE | ZIP | RELATIONSHIP |
| NAME | SOCIAL SECURITY NUMBER | RACE | SEX | BIRTH DATE |
| ADDRESS | CITY | STATE | ZIP | RELATIONSHIP |
| NAME | SOCIAL SECURITY NUMBER | RACE | SEX | BIRTH DATE |
| ADDRESS | CITY | STATE | ZIP | RELATIONSHIP |

**PLEASE COMPLETE AND RETURN TO THE PERSONNEL OFFICE EVEN IF YOU DECLINE THE COVERAGE.**

SIGNATURE

DATE



*Office Of*

# Dauphin County Personnel

**Commissioners**
JOHN D. PAYNE
LOWMAN S. HENRY
ANTHONY M. PETRUCCI

**Chief Clerk/Chief of Staff**
ROBERT BURNS

**Director of Personnel & Payroll**
SHARON MANTON

**Deputy Personnel Director**
O.J. HANNAH

**Mailing Address:**
P.O. Box 1295
Harrisburg, Pa.  17108

Telephone: (717) 255-2952

*Harrisburg, Pennsylvania*

**To:**      Marie Rebuck
            Controller

**From:**    Willie S. Evans
            Benefits Coordinator



**Subject:**  Health and Dental bills reimbursement

**Date:**     April 11, 2000

Please process the attached bills for Christopher Lewis (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).  Mr. Lewis is employed at the Prison and was on suspension during the time the claims occurred.  Mr. Lewis was suspended on July 7, 1999 and was reinstated on January 23, 2000.  With his reinstatement we are to pay any outstanding medical and dental bills.  Mr. Lewis's medical and dental bills are from November of 1999 and January of this year.  The medical bill is for $72.00 and should be made payable to Community Medical Associates at 3601 North Progress Avenue, Harrisburg PA 17110. The dental bill is for $47.00 and should be made payable to Settino & Sheets Dental Services at 354 Colonial Road, Harrisburg PA 17110.  If you have any questions please feel free to contact me at ext. 2952.
 Thank you for your cooperation.


Attachment


PC:
Sharon Manton, Personnel Director
File

**EXHIBIT**

"G"

FROM : Chistopher_Lewis_____    PHONE NO. : 717 236 4927    Feb. 28 2000 12:49AM P1

**DELTA DENTAL**
DELTA DENTAL OF PENNSYLVANIA

**NOTICE OF PAYMENT OR ACTION**

THIS IS NOT A BILL

PAYABLE BENEFITS HAVE BEEN ISSUED TO THE PROVIDER LISTED BELOW

0217PAPA0002-004742
CHRISTOP LEWIS
2747 BANKS ST
HARRISBURG PA    17103-2019

Illulluuuullllluuullulllluuullllulluullull

| EMPLOYEE | CHRISTOP LEWIS | | | |
|---|---|---|---|---|
| SUBSCRIBER I.D. NUMBER | 161643469 | DATE PAID | 02/18/00 | PAGE    1 |

**DELTA DENTAL OF PENNSYLVANIA**

| | | $ | 13.00 |
|---|---|---|---|
| TOTAL FEE SUBMITTED | | $ | |
| APPLIED TO DEDUCTIBLE | | $ | 0.00 |
| TOTAL PATIENT PAYMENT | | $ | 13.00 |
| TOTAL PLAN PAYMENT | | $ | 0.00 |

ONE DELTA DRIVE    TTY/TDD (888)373-3582
MECHANICSBURG, PA 17055
(717)766-8500
(800)932-0783

| DENTAL BENEFIT PROGRAM FOR GROUP NUMBER | 00384-00001 |
|---|---|
| GROUP NAME | DAUPHIN COUNTY |

**CLAIM INFORMATION**

| CLAIM NUMBER | DOCUMENT CONTROL NUMBER | PATIENT NAME | DATE OF BIRTH | RELATION | PROVIDER NAME | CLAIM ADJ. NOTICE |
|---|---|---|---|---|---|---|
| 000311235 | 00020000031123500000 | CHRISTOP LEWIS | 12/17/64 | SELF | SETTINO SHEETS DENTAL | |

| TOOTH NO. | DATE OF SERVICE | PROC. NO. | DESCRIPTION OF SERVICE | AMOUNT SUBMITTED | AMOUNT APPROVED | KEY | CONTRACT ALLOWANCE | KEY | APPLIED TO DEDUCT. | DELTA CO-PAY % | PATIENT PAYMENT | DELTA PAYMENT | ADJ. NOTICE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12/28/99 | 00220 | PERIAPICAL-FIRST FILM | 13.00 | 13.00 | 4 | 0.00 | 4 | 0.00 | | 13.00 | 0.00 | 033 |

**KEY**

4 - MANUAL PRICING

**ADJUSTMENT NOTICES**

033  PATIENT IS NOT ELIGIBLE FOR BENEFITS DUE TO TERMINATION OF COVERAGE.

ADJUSTMENTS REFLECT CONTRACT LIMITS AND EXCLUSIONS. DELTA MEMBER PROVIDER AGREEMENTS AND GENERALLY ACCEPTED DENTAL PRACTICE, AS APPLIED TO TREATMENT INFORMATION SUBMITTED TO DELTA, PROCEDURES REQUIRING PROFESSIONAL JUDGMENT FOR BENEFIT DETERMINATION HAVE BEEN REVIEWED BY A DENTAL CONSULTANT.
**DO NOT SEND MONEY TO DELTA DENTAL. THE AMOUNT SHOWN AS "TOTAL PATIENT PAYMENT" IS PAYABLE TO THE PROVIDER.**

FROM : Chistopher_Lewis_____          PHONE NO. : 717 236 4927          Feb. 16 2000 02:20AM P2

## ⚠️ DELTA DENTAL
DELTA DENTAL OF PENNSYLVANIA

## NOTICE OF PAYMENT OR ACTION

### THIS IS NOT A BILL

PAYABLE BENEFITS HAVE BEEN ISSUED TO THE PROVIDER LISTED BELOW

0203PAPA0002-005130
**CHRISTOP LEWIS**
**2747 BANKS ST**
**HARRISBURG PA      17103-2019**

|..ll...l..l..lll...l.l..l.lll..l.lll..l..l.l.l.l|

| EMPLOYEE | CHRISTOP LEWIS | | |
|---|---|---|---|
| SUBSCRIBER I.D. NUMBER | 161643469 | | |

DATE PAID  **02/04/00**      PAGE    1

## DELTA DENTAL OF PENNSYLVANIA

NE DELTA DRIVE          TTY/TDD (888)373-3582
ECHANICSBURG, PA 17055
717)766-8500
800)932-0783

| | $ | |
|---|---|---|
| TOTAL FEE SUBMITTED | $ | 34.00 |
| | $ | |
| APPLIED TO DEDUCTIBLE | $ | 0.00 |
| TOTAL PATIENT PAYMENT | $ | 34.00 |
| TOTAL PLAN PAYMENT | $ | 0.00 |

DENTAL BENEFIT PROGRAM FOR GROUP NUMBER  **00384-00001**
GROUP NAME  **DAUPHIN COUNTY**

### CLAIM INFORMATION

| CLAIM NUMBER | DOCUMENT CONTROL NUMBER | PATIENT NAME | DATE OF BIRTH | RELATION | PROVIDER NAME | CLAIM ADJ. NOTICE |
|---|---|---|---|---|---|---|
| 933702529 | 00000993370252900000 | CHRISTOP LEWIS | 12/17/64 | SELF | SETTINO SHEETS DENTAL | |

| TOOTH NO. | DATE OF SERVICE | PROC. NO. | DESCRIPTION OF SERVICE | AMOUNT SUBMITTED | AMOUNT APPROVED | KEY | CONTRACT ALLOWANCE | KEY | APPLIED TO DEDUCT. | DELTA CO-PAY % | PATIENT PAYMENT | DELTA PAYMENT | ADJ. NOTICE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 11/24/99 | 00130 | EMERGENCY ORAL EXAM | 34.00 | 34.00 | 4 | 0.00 | 4 | 0.00 | | 34.00 | 0.00 | 033 |

KEY

4 = MANUAL PRICING

ADJUSTMENT NOTICES

033  PATIENT IS NOT ELIGIBLE FOR BENEFITS DUE TO TERMINATION OF COVERAGE.

ADJUSTMENTS REFLECT CONTRACT LIMITS AND EXCLUSIONS, DELTA MEMBER PROVIDER AGREEMENTS AND GENERALLY ACCEPTED DENTAL PRACTICE, AS APPLIED TO TREATMENT INFORMATION SUBMITTED TO DELTA, PROCEDURES REQUIRING PROFESSIONAL JUDGMENT FOR BENEFIT DETERMINATION HAVE BEEN REVIEWED BY A DENTAL CONSULTANT.
DO NOT SEND MONEY TO DELTA DENTAL. THE AMOUNT SHOWN AS "TOTAL PATIENT PAYMENT" IS PAYABLE TO THE PROVIDER.

FROM : Chistopher_Lewis_____    PHONE NO. : 717 236 4927    Feb. 16 2000 02:19AM P1

# KEYSTONE
## Health Plan Central

Independent Licensee of the Blue Cross and Blue Shield Association

Keystone Health Plan Central, Inc.
P.O. Box 898812, Camp Hill, PA 17089-8812

LEWIS,CHRISTOPHER,B
2747 BANKS ST
HARRISBURG,PA 17103

If you have questions about this
Explanation of Benefits call (717)
763-3894  or   1-800-622-2843
(TDD number at 1-800-669-7075
for the hearing impaired.)

DATE                02/07/00
CLAIM NUMBER        00311524700
PATIENT NAME        LEWIS,CHRISTOPHER,B
PROVIDER NAME       COMMUNITY MEDICAL ASSOCIAT
PAID TO             COMMUNITY MEDICAL ASSOCIAT
CHECK NUMBER        01379259

AGREEMENT NUMBER 161643469
GROUP NUMBER

## EXPLANATION OF BENEFITS

| NUMBER | SERVICE DATE | SERVICE DESCRIPTION | AMOUNT BILLED | AMOUNT ALLOWED | LESS INELIGIBLE AMOUNT | AMOUNT PAID | R |
|---|---|---|---|---|---|---|---|
| 01 | 012700 | OFFICE OR OUTPT VISI | 72.00 | 0.00 | 0.00 | 0.00 | S0 |
| | | *** T O T A L S *** | 72.00 | 0.00 | 0.00 | 0.00 | |

REASON CODES:

S005  THE MEMBER DOES NOT HAVE ACTIVE COVERAGE FOR THIS SERVICE DATE.

## THIS IS NOT A BILL

You are not responsible for any difference between the amount billed and the amount paid for any Covered Service, unless an amount is specified in the "LESS INELIGIBLE AMOUNT" column. Please refer to the explanation above for any ineligible amounts. If your claim has been denied in whole or in part, you have the right to request a review within 60 days of receiving this Explanation of Benefits Statement.  Please refer to the "Complaint and Grievance Procedure" section of your Membership Guide for additional information. The request for a review of the decision should be sent to: Keystone Health Plan Central, Inc., Member Service Dept., Box 898886, Camp Hill, PA 17089-8880, or you may call Keystone's Member Service Department at 1-800-622-2843 toll-free in Pennsylvania (TDD number at 1-800-669-7075 for the hearing impaired).

*Office Of*

# Dauphin County Personnel



*Warden*

**Commissioners**
JOHN D. PAYNE
LOWMAN S. HENRY
ANTHONY M. PETRUCCI

**Chief Clerk/Chief of Staff**
ROBERT BURNS

**Director of Personnel & Payroll**
SHARON MANTON

**Deputy Personnel Director**
O.J. HANNAH

**Mailing Address:**
P.O. Box 1295
Harrisburg, Pa. 17108

Telephone: (717) 255-2952

*Harrisburg, Pennsylvania*

0345-966

April 13, 2000

**CONFIDENTIAL**

Mr. Christopher B. Lewis
2747 Banks St.
Harrisburg, PA 17103

              Re:    Leave Status/Evaluation Report from Dr. Hostetter

Dear Mr. Lewis:

      In response to an inquiry from Teamsters' Business Agent Charles Shughart regarding your current employment status, a review of your recent employment record indicates the following:

- For your normal shift, which began on February 10, 2000, you worked 2.75 hours and then left work early, taking 5.25 hours sick time.
- Your normal days off were Friday and Saturday, February 11 and 12, 2000.
- On February 12, 2000, you requested, via phone, a vacation day for Sunday, February 13, 2000.
- On February 14, 2000, you reported to the Warden's office with an excuse from your Physician's Assistant, dated February 11, 2000, stating that you were evaluated for acute anxiety secondary to repeated job stress and would remain off work indefinitely. At that time you requested Worker's Comp/Administrative Leave.
- Proper documentation was forwarded to the County's insurance carrier via the Employer's Report of Occupational Injury or Disease.
- Later on February 14, 2000, you called off at 6:56 p.m. due to medical problems (high blood pressure). Per prison protocol, you were marked "absent" until detailed documentation was provided. You have not returned to work since that time.
- On February 17, 2000, a notice of Worker's Compensation Denial was sent to you, indicating that you did not suffer a work-related injury.
- You had previously been offered paperwork to apply for leave under the Family and Medical Leave Act a number of times, but you declined due to a concern about such leave interfering with Worker's Compensation.
- When you applied for vacation on February 14, 2000, you already had a negative balance of 33.2308 hours for calendar year 2000. As you are aware, for you to



**EXHIBIT**

**H**

properly accrue your allotted vacation (leave time), you must be in a compensable status for the complete year. Since your Physician's Assistant's note stated that you would be remaining off work indefinitely, you have been carried in an unpaid leave status since that time.

- Since you were in a non-compensable status and refused to apply for Family Medical Leave, the County ceased paying for your health benefits as of March 1, 2000.
- Consequently, you were sent correspondence dated March 7, to apply for COBRA benefits in order to continue your health benefits for up to 18 months and were sent a COBRA Enrollment/Decline Form. You have not responded to this correspondence.
- In a letter dated February 23, 2000, written by Warden DeRose, you were informed of an appointment, which had been arranged for you with Dr. Abram Hostetter, to determine your fitness for duty. You were directed to present yourself at his office for the appointment at 10:30 a.m. on February 29, 2000. Subsequent to the psychiatric evaluation he performed during that appointment, Dr. Hostetter prepared a report of his findings. A copy of this report is enclosed for your review. Dr. Hostetter notes that your condition is not a consequence of your work situation, but is longstanding in nature.

This finding by Dr. Hostetter indicates that you are eligible for Family Medical Leave, provided you want to do so. Therefore, I am enclosing a Medical/Family Leave of Absence Request form that you may complete and return to me. If you do not agree with Dr. Hostetter's evaluation, you may still be placed on Family & Medical Leave if you have your own physician complete the enclosed Certification of Physician or Practitioner form.

If you complete the Leave of Absence request form, indicating which physician's report you are using, and return to me, you will be placed on Family & Medical Leave and will be eligible for the County to pay for your health benefits. If you request, we will make the Family & Medical Leave effective March 1, 2000, and the County will pay for your health benefits for March and April (and through your Family & Medical Leave).

If you continue to not want your leave to be considered as Family & Medical Leave, then you will continue to be carried in an unpaid leave status and your health benefits will only continue if you elect to pay for them under COBRA.

Please call me within 5 days to advise me whether you wish to use Family & Medical Leave or continue in an unpaid leave status. If you have any questions or want to discuss anything further, please contact me at your convenience.

Sincerely,

Sharon H. Manton
Director of Personnel & Payroll

Enclosures:
        Dr. Abram Hostetter's Report
        Medical/Family Leave of Absence Request Form
        Certification of Physician or Practitioner Form

Copy:   Personnel File
        Prison
        Charles Shughart, Business Agent, Teamsters Local 776 (w/o Hostetter's report)

☑ 002



**Hershey Psychiatric Associates**

20 Briarcrest Square, Suite 205

Hershey, Pennsylvania 17033-2359

(717) 533-4797

Fax: (717) 533-1574

March 8, 2000

Paul J. Delasega, Esquire
POB 999
Harrisburg, PA  17108

Re:  Christopher Lewis
Your File #477-00233

Dear Mr. Delasega:

In this report I will summarize my observations and conclusions after reviewing the packet of records you had forwarded to me concerning Mr. Lewis' employment at the Dauphin County Prison, and seeing him in a psychiatric evaluation in my office on February 29, 2000.

He is a thirty-five-year-old divorced man who has been employed as a Correctional Officer at the prison for more than twelve years.

You had asked me to perform a psychiatric evaluation to determine whether Mr. Lewis is psychiatrically fit to carry a weapon and whether he could function appropriately in emergency situations.

In reviewing the records, it is clear that Mr. Lewis has made many grievances during his years of employment at the prison.  Also, he has had violations of expectations of an Officer at times, including sleeping on duty after he had taken medication.

In 1999 he was charged with a felony, of having deleted negative items from his personnel file, which was stored in a computer.

This led to a jury trial in which Mr. Lewis was found not guilty.  He returned to work on January 23, 2000.

Then in early February 2000 he had significant absenteeism and was placed off work indefinitely on February 11, 2000.

Abram M. Hostetter, M.D., F.A.C.P., F.A.P.A.        Barbara G. Kuhlengel, M.D., F.A.P.A.        M. George Feeney, Ph.D.

Kathleen L. Huth, Office Manager

☑003

Re: Christopher Lewis
Page: 2

When he appeared for his appointment on February 29, 2000 he said he was very nervous being in my office.

He said he takes two medications since the Summer of 1999 when he was charged with felonious behavior, the anti-anxiety agent BuSpar, of which he uses 15 mg twice daily, and the antidepressant medication Zoloft, of which he uses 50 mg once daily.

Mr. Lewis said he believes he was "set up by another officer" who doesn't like him.

I found him to be fully able to comprehend my questions, but he was somewhat guarded in his responses early in the interview. He gave no evidence of being depressed nor of being significantly anxious. There was no cognitive impairment.

He told me he wants to return to the work situation and believes he will be able to function when he gets back to work.

He informed me he is the single parent of two daughters, ages twelve and six. He has primary custody of those children.

He told me he is picked on by "a selected number of individuals." He said two officers above him do not get along well with him. He said since returning to work in January, 2000, he had been "written up for two bogus charges."

He spoke about having become so tense at work that his blood pressure went to 170/100. He then claimed when he went to the Emergency Room at the hospital he was unable to obtain care because his health insurance had not been reinstated.

I asked him about his family situation. He said his wife "took off in June 1999." They had been separated since June 1997. He described it as "an amicable divorce."

She was a certified nurses' aide. She had an Eskimo background. He had met her when he was in military service in Alaska. She has now returned to Alaska and rarely contacts him or their daughters.

After Mrs. Lewis left, he took his daughters for psychological counseling. He believes they have adjusted to living without their mother. He said he has a very supportive family in the Harrisburg area and they help him in taking care of his daughters.

At this point I asked Mr. Lewis how he feels about the fact that his wife had left

Re: Christopher Lewis
Page: 3

him. He said, "I deal only with the facts, not with feelings."

Mr. Lewis had worked night shift at the prison for four years. He felt he had done a good job, but recognized that he had difficulty in getting along with fellow officers.

When he was working at night, his mother or his brother or sister-in-law would look after the children. His brother and sister-in-law, along with their four-month-old baby, live on the third floor of Mr. Lewis' house.

Mr. Lewis is not involved with any religious or social groups. He has never had any serious medical problems.

I heard nothing to indicate that he is psychotic.

He said in the Fall of 1989 he had taken a one-month "stress leave" because he was threatened to be beaten up by other guards at the prison.

I found him to be somewhat rigid and single-minded in the way he made his presentation. He said he knows he is "viewed as a trouble maker because I live by the rules."

Mr. Lewis believes he is being treated differently from other guards. He said he has been written up for "things that I see as being bull crap."

He asserted that he has no trouble in getting along with the inmates in the prison.

He said no one had ever referred him for counseling or psychiatric treatment. The Physician's Assistant in Dr. Little's office, Ms. Roth, had prescribed the medication for him and had indicated he has "acute anxiety secondary to repeated job stress."

He talked about the incident when he had been asleep on the job at work. He said that was because he had mistakenly taken an overdose of medication for flu symptoms, which caused him to fall asleep.

Mr. Lewis has a way of rationalizing all of his behaviors. I asked him why he had not attended work on a regular basis after he returned on January 23, 2000. He said it was because he was having chest pain because there was ice and snow on the roads on some days. He said he didn't want to "risk being wiped out in an accident" since he is the only parent his daughters have.

Re: Christopher Lewis
Page: 4

Subsequent to his complaint of acute anxiety symptoms, he wore a halter monitor and was told that all of his tracings were normal.

The week before I saw Mr. Lewis, he had seen an intake worker at the Dauphin County MH/MR Office, Mr. Rugg. Mr. Rugg had scheduled him to see a psychiatrist on March 6, 2000. He also plans to see a psychiatrist at the V.A. clinic in Harrisburg "so I can get my meds for free."

Mr. Lewis said he has no ambition to rise to a higher level of responsibility at the prison. He said he is satisfied with his present assignment and likes being on night shift.

He does not go out socializing with any of his fellow workers. He believes that may cause them to discriminate against him. He said his ex-wife had a serious alcohol problem and he does not want to risk anything like that.

Based on Mr. Lewis' evaluation, I found him to be a man with significant anxiety symptoms as well as a Personality Disorder, Not Otherwise Specified, with paranoid and schizoid features. Neither of these diagnoses is a consequence of his work situation, but are longstanding in nature.

At the time I evaluated Mr. Lewis, I did not find him fit to return to regular duties at the prison. It is my professional opinion he should be involved in regular outpatient counseling and have a re-evaluation of his use of medication before he should be cleared for return to his work assignment.

Because of his hostility and suspicion toward other guards, I could not be certain he would respond appropriately in an emergency situation. He appears to have much difficulty in trusting his fellow workers, and makes frequent grievances and complaints about how he is being treated. He has no insight into the fact that he contributes in a significant way to the difficulties he has in relating to other people.

If Mr. Lewis responds positively to regular outpatient psychotherapy and the appropriate use of medication, I would anticipate at some point he will be able to return to his work situation.

Please be in touch with me if you want to discuss this evaluation or report.

Very truly yours,

Abram M. Hostetter, M.D.

AMH/kh/AMH17/lewis

COUNTY OF DAUPHIN

HARRISBURG, PA



## MEDICAL/FAMILY LEAVE OF ABSENCE REQUEST

Date _____

Name of Employee _____

Date of Employment _____ Full Time _____
                                            Part Time _____

Department _____ Position _____

I request a leave of absence for a _____ duration,

beginning _____ and ending _____

for the purpose of:

    _____    (a) my own serious illness

    _____    (b) caring for my spouse's serious illness

    _____    (c) caring for my child's serious illness

    _____    (d) caring for my parent's serious illness

    _____    (e) birth or adoption of child

It is my intention to return to work at the end of this leave.

_____ Use Dr. Hostetter's evaluation

_____ Do not use Dr. Hostetter's evaluation.
      I will provide my own physician's
      certification within 15 days.

Employee Signature _____

Department Head Approval _____

Personnel Director Approval _____

Doctor's certification must be attached.



COUNTY OF DAUPHIN
HARRISBURG, PA

CERTIFICATION OF PHYSICIAN OR PRACTITIONER
(Family and Medical Leave Act of 1993)

1. Employee's Name: _____

2. Patient's Name (If other than employee): _____

3. Diagnosis:


4. Date condition commenced:

5. Probable duration of condition:

6. Regimen of treatment to be prescribed (Indicate number of visits, general nature and duration of treatment, including referral to other provider of health services. Include schedule of visits or treatment if it is medically necessary for the employee to be off work on an intermittent basis or to work less than the employee's normal schedule of hours per day or days per week.):

   a.  By Physician or Practitioner:

   b.  By another provider of health services, if referred by Physician or Practitioner:

IF THIS CERTIFICATION RELATES TO CARE FOR THE EMPLOYEE'S SERIOUSLY-ILL FAMILY MEMBER, SKIP ITEMS 7, 8 AND 9 AND PROCEED TO ITEMS 10 THRU 14. OTHERWISE, CONTINUE BELOW.

Check **Yes** or **No** in the boxes below, as appropriate.

|  | **Yes** | **No** |  |
|---|---|---|---|
| 7. | ☐ | ☐ | Is inpatient hospitalization of the employee required? |
| 8. | ☐ | ☐ | Is employee able to perform work of any kind?  (If  "No", skip Item 9.) |
| 9. | ☐ | ☐ | Is employee able to perform the functions of employee's position? (Answer after reviewing statement from employer of essential functions of employee's position, or, if none provided, after discussing with employee.) |

FOR CERTIFICATION RELATING TO CARE FOR THE EMPLOYEE'S SERIOUSLY-ILL FAMILY MEMBER, COMPLETE ITEMS 10 THRU 14 BELOW AS THEY APPLY TO THE FAMILY MEMBER AND PROCEED TO ITEM 15.

|  | **Yes** | **No** |  |
|---|---|---|---|
| 10. | ☐ | ☐ | Is inpatient hospitalization of the family member (patient) required? |
| 11. | ☐ | ☐ | Does (or will) the patient require assistance for basic medical, hygiene, nutritional needs, safety or transportation? |
| 12. | ☐ | ☐ | After review of the employee's signed statement (See Item 14 below) is the employee's presence necessary or would it be beneficial for the care of the patient? (This may include psychological comfort.) |

13. Estimate the period of time care is needed or the employee's presence would be beneficial:

   ITEM 14 IS TO BE COMPLETED BY THE EMPLOYEE NEEDING FAMILY LEAVE.

14. When Family Leave is needed to care for a seriously-ill family member, the employee shall state the care he or she will provide and an estimate of the time period during which this care will be provided, including a schedule if leave is to be taken intermittently or on a reduced leave schedule:


   Employee signature: _____

   Date:

15. Signature of Physician or Practitioner: _____

16. Date:

17. Type of Practice (Field of Specialization, if any):

# PERSONNEL ACTION FORM

prsnl-3 rev 9-96

| Name | Christopher Lewis | #354 | Social Security Number | 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 |
|---|---|---|---|---|
| Address | | | City | State | Zip |
| Phone | Taxing District | | Department | Prison |

| | | | | | | |
|---|---|---|---|---|---|---|
| Resignation | Date | | Present Classification | CO 3 | | Job Code | 704719 |
| Retirement | Date | | Full Time | X | Part Time | Per Diem | Summer |
| Terminate | Date | | Present Appropriation Code | 001-311000-801101-00000 | | |
| Deceased | Date | | Proposed Classification | | | Job Code |
| Furlough | Date | | Full Time | | Part Time | Per Diem | Summer |
| Job Demotion | Date | | Proposed Appropriation Code | | |
| Suspension | Date | | | | |
| Transfer | Date | | | | |
| Temporary Position | Date | | Proposed Hourly Rate | 17.26 | Range | 29 | Step | 5 |
| Workman's Compensation | Date | | | | |
| Promotion. | Date | | | | |
| Merit Increase | Date | | **Departmental Notes** | | |
| Hire Date Change | Date | | Return from (AWOL) General Medical Leave effective 4-12-0 | | |
| Leave of Absence Personal | Date | | | | |
| Leave of Absence Medical | Date | | Family Medical Leave effective 4-13-00 | | |
| Family Medical Leave | Date | 4-13-00 | | | |
| Military Leave | Date | | | | |
| Maternity Leave | Date | | | | |
| Paternity Leave | Date | | | | |
| Return From Medical Leave General | Date | 4-12-00 | | | |
| Return From Personal Leave | Date | | Department Head Signature | | |
| Return From Family Leave | Date | | | | |
| Return From Military Leave | Date | | | 5-2-00 | |
| Return From Maternity Leave | Date | | | | |
| Return From Paternity Leave | Date | | **Personnel/Payroll Use Only** | | |
| Reclassification | Date | | | | |
| Cost of Living Increase | Date | | | | |
| Miscellaneous | Date | | | | |
| Change of Address | Date | | | Date | |

EXHIBIT

"I"

## Manton, Sharon

| | |
|---|---|
| **From:** | Evans, Willie |
| **Sent:** | Monday, July 17, 2000 2:07 PM |
| **To:** | Manton, Sharon |
| **Subject:** | RE: CO Christopher Lewis |

Delta Dental was notified on the June report to retro Mr. Lewis benefits back to April but they did not get in their system until I called on Friday July 14, 2000.

> -----Original Message-----
> **From:**    Manton, Sharon
> **Sent:**    Monday, July 17, 2000 1:07 PM
> **To:**    Evans, Willie
> **Subject:**    CO Christopher Lewis
>
> When Mr. Lewis' benefits were reinstated in February 2000 and again on April 13, was Delta Dental notified?

**EXHIBIT**

"J"

These changes will be
reflected on your next
Invoice if received by:

_____

Receipt Date:
Date Entered:
Date Proofed:
COBRA:   B & N   or   B ONLY
FOR OFFICE USE ONLY

*Copy*

♻ **DELTA DENTAL**
Delta Dental of Pennsylvania

One Delta Drive
Mechanicsburg, PA 17055
800-932-0783
TDD 888-373-3582

## ELIGIBILITY DATA UPDATE FORM

Group Number: 0384

Sublocation Number: _____

Group Name: Dauphin County Prison            Month: Feb 200_

| Action Code* | Employee Social Security # | Employee Name Last | First | Employee Date of Birth | Eff. Date of Action | Coverage Type** |
|---|---|---|---|---|---|---|
| R |  | Shadle | Deborah |  | 2-1-00 | 03 |
| T |  | Rampulla | Bryan |  | 2-1-00 | 03 |
| T |  | Rowell | Bert |  | 2-1-00 | 03 |
| R |  | Lewis | Christopher |  | 2-1-00 | 03 |
| R |  | Hurrell | Joseph |  | 2-1-00 | 03 |
| R |  | Royles | Scott |  | 2-1-00 | 03 |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

**\* Action Codes**
A = Addition
R = Reinstatement
T = Termination
S = Status / Coverage Change
   (Show Old RC / New RC )
NC = Name Change

**Other Codes ( Explanation Required)**
C = Correction
CC = Coverage Continuation
   (COBRA)
TR = Transfer
   (Addition = A/TR)
   (Termination = T/TR)

**\*\* Coverage Type (Rate Codes)**
(01) Employee Only
(02) Employee + Spouse
(03) Employee + Family
(04) Composite
(05) Employee + 1 Child
(06) Employee + 2 or more children

NOTE: APPROPRIATE CARDS MUST BE ATTACHED FOR ALL ADDITIONS AND STATUS CHANGES

These changes will be
reflected on your next
invoice if received by:



**DELTA DENTAL**
Delta Dental of Pennsylvania

One Delta Drive
Mechanicsburg, PA 17055
800-932-0783
TDD 888-373-3582

Receipt Date:
Date Entered:
Date Proofed:
COBRA:   B & N  or  B ONLY
FOR OFFICE USE ONLY

## ELIGIBILITY DATA UPDATE FORM

Group Number: O 384

Sublocation Number:

Group Name: Dauphin County Prison                    Month: April 200

| Action Code* | Employee Social Security # | Employee Name Last | First | Employee Date of Birth | Eff. Date of Action | Coverage Type** |
|---|---|---|---|---|---|---|
| T | | Lewis | Christopher | | 3-1-00 | 03 |
| T | | Roof | David | | 4-1-00 | 03 |
| A | | Ramgulla | Bryan | | 2-1-00 | 03 |
| A | | Shatto | Irvin | | 2-1-00 | 03 |
| A | | Shuler | John | | 4-1-00 | 03 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**\* Action Codes**
A = Addition
R = Reinstatement
T = Termination
S = Status / Coverage Change
   (Show Old RC / New RC )
NC = Name Change

**Other Codes ( Explanation Required)**
C = Correction
CC = Coverage Continuation
   (COBRA)
TR = Transfer
   (Addition = A/TR)
   (Termination = T/TR)

**\*\* Coverage Type (Rate Codes)**
(01) Employee Only
(02) Employee + Spouse
(03) Employee + Family
(04) Composite
(05) Employee + 1 Child
(06) Employee + 2 or more children

NOTE: APPROPRIATE CARDS MUST BE ATTACHED FOR ALL ADDITIONS AND STATUS CHANGES

ese changes will be
eflected on your next
invoice if received by:

Copy



**DELTA DENTAL**
Delta Dental of Pennsylvania

One Delta Drive
Mechanicsburg, PA 17055
800-932-0783
TDD 888-373-3582

Receipt Date:
Date Entered:
Date Proofed:
COBRA:    B & N  or  B ONLY
FOR OFFICE USE ONLY

## ELIGIBILITY DATA UPDATE FORM

Group Number: **0384**

Sublocation Number: _____

Group Name: **Dauphin County Prison**

Month: **June 2000**

| Action Code* | Employee Social Security # | Employee Name Last | Employee Name First | Employee Date Of Birth | Eff. Date of Action | Coverage Type** |
|---|---|---|---|---|---|---|
| T | | Shadle | Deborah | | 6-1-00 | 03 |
| R | | Lewis | Christopher | | 5-1-00 | 03 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Action Codes**
= Addition
= Reinstatement
= Termination
= Status / Coverage Change
   (Show Old RC / New RC )
= Name Change

**Other Codes ( Explanation Required)**
C = Correction
CC = Coverage Continuation
      (COBRA)
TR = Transfer
      (Addition = A/TR)
      (Termination = T/TR)

**** Coverage Type (Rate Codes)**
(01) Employee Only
(02) Employee + Spouse
(03) Employee + Family
(04) Composite
(05) Employee + 1 Child
(06) Employee + 2 or more children

## CERTIFICATE OF SERVICE

I, Linda L. Gustin, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this ___4th___ day of April, 2002, I served a true and correct copy of the foregoing **Appendix of Exhibits in Support of Defendants' Renewed Motion for Summary Judgment** via U.S. First Class Mail, postage prepaid, addressed as follows:

Don Bailey, Esquire
4311 North Sixth Street
Harrisburg, PA   17110


_Linda L. Gustin_
Linda L. Gustin