# ORIGINAL



4-9-02
SC

2n crt

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER LEWIS,<br>　　　　　　　Plaintiff | : CIVIL ACTION - LAW<br>:<br>: |
| v. | : NO. CV 00-0436<br>: |
| DOMINICK DEROSE, MARK<br>JESZENKA, MICHAEL HOHNEY,<br>ROBERT DRUM, MR. SHOEMAKER<br>CARL GARVER, and<br>DAUPHIN COUNTY,<br>　　　　　　　Defendants | :<br>: JUDGE RAMBO ✓<br>:<br>: MAGISTRATE JUDGE SMYSER<br>:<br>: JURY TRIAL DEMANDED |

## BRIEF IN SUPPORT OF DEFENDANTS'
## RENEWED MOTION FOR SUMMARY JUDGMENT

FILED
HARRISBURG

APR 0 8 2002

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

# **TABLE OF CONTENTS**

Table of Authorities............................................................. iii

I.    Statement of Facts and Procedural History........................ 1

II.    Questions Presented........................................................ 4

III.    Argument...................................................................... 4

     A.     Standard of Review............................................... 4

     B.     There are no genuine issues of material
           fact and Defendants, DeRose, Jeszenka,
           Hohney and Shumaker are entitled to
           summary judgment as a matter of law
           on all of Plaintiff's remaining retaliation
           claims asserted in Count I of the Complaint.............. 6

          1.     Magistrate Smyser has already ruled
               that there is a genuine issue of material
               fact on whether Plaintiff engaged in
               protected speech......................................... 8

          2.     The record is devoid of evidence that
               Plaintiff's alleged protected speech
               was a substantial motivating factor
               in the Defendants' actions........................... 8

          3.     Defendants are entitled to summary
               judgment, as a matter of law, because
               they have met their burden of proof
               that their actions would have occurred
               even in the absence of the alleged
               protected activity....................................... 19

4.      The individual Defendants are
        entitled to summary judgment as a
        matter of law because there are
        no facts of record establishing that
        their conduct violated Plaintiff's
        constitutional rights.....................................    23

5.      With no cognizable claim
        against the individual Defendants,
        Plaintiff's § 1983 municipal liability
        claim against Dauphin County fails
        as a matter of law........................................    25

C.   Plaintiff's claims of retaliation arising out
     of the handling of his benefits and back
     pay following his return from suspension
     are barred as a matter of law by the
     Settlement Agreement executed by the
     parties resolving grievance No. 59597......................    26

IV.   Conclusion...................................................................    28

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases:**

Anderson v. Liberty Lobby, Inc.,
106 S.Ct. 2505 (1986)……………………………………….. 4, 5

Baker v. McCollan,
443 U.S. 137, 140 (1979)………………………………… 7

Celotex Corp. v. Catrett,
477 U.S. 317, 324 (1986)………………………………… 6

City of Los Angeles v. Heller,
475 U.S. 796-799 (1986)………………………………… 25

Graham v. Connor,
490 U.S. 386, 393-94 (1989)…………………………….. 6

Harlow v. Fitzgerald,
457 U.S. 800, 818 (1982)………………………………… 24

Hunter v. Bryant,
500 U.S. 224, 227 (1991)………………………………… 24

Lujan v. National Wildlife Federation,
497 U.S. 871, 888-89 (1990)……………………………… 9

Matshushita Electrical Industrial Company v.
Zenith Radio Corp.,
106 S.Ct. 1348, 1386 (1986)…………………………….. 5

Monell v. New York City Department of Social Services,
436 U.S. 658 (1978………………………………………… 25

Saucier v. Katz,
121 S. Ct. 2151, 2155 (2001)……………………………… 24

Siegert v. Gilley,
500 U.S. 226, 232 (1991)……………………………………… 24

**Federal Circuit Cases:**

Borough of West Chester,
892 F.2d 453 (3d Cir. 1989)……………………………….. 25

Chippollini v. Spencer Gifts, Inc.,
814 F.2d 893, 897 (3d Cir. 1987),
cert. dismissed, 483 U.S. 1052 (1987)……………………… 6

Green v. Philadelphia Housing Authority,
105 F.3d 882, 885 (3d Cir. 1997)………………………… 7, 9, 11, 14,
18, 20, 22, 23

Groman v. Township of Manalapan,
47 F.3d 628, 638 (3d Cir. 1995)………………………… 7

Pro v. Donatucci,
81 F.3d 1283, 1288 (3d Cir. 1996)……………………… 7

Quiroga v. Hasbro, Inc.,
934 F.2d 497, 500 (3d Cir. 1991),
cert. denied, 502 U.S. 940 (1991)……………………….. 9

Rode v. Dellaraciprette,
845 F.2d 1195, 1207 (3d Cir. 1988)……………………. 19

Schoch v. First Fidelity Bank Corp.,
912 F.2d 654, 657 (3d Cir. 1990)………………………. 9

Watters v. City of Philadelphia,
55 F.3d 886, 892 (3d Cir. 1995)……………………….. 7

Williams v. Borough of West Chester,
892 F.2d 453 (3d Cir. 1989)……………………………. 25

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY:

Plaintiff, Christopher Lewis, initiated this civil action by filing a Complaint, containing three counts on March 7, 2000 which was assigned to Magistrate Judge Smyser for pretrial proceedings.  The Defendants named in the Complaint are:  (1) Dominick DeRose, Warden of the Dauphin County Prison (DCP); (2) Mark Jeszenka, an officer at DCP; (3) Mike Hohney, a supervisor at DCP; (4) Robert Drum, a correctional officer at DCP; (5) Robert Shumaker, a detective for Dauphin County; (6) Carl Garver, a detective for Dauphin County; and (7) Dauphin County.

In Count I of the Complaint, Plaintiff asserted that Defendants, DeRose, Jeszenka, Hohney, Shumaker and Dauphin County, violated the Plaintiff's First and Fourteenth Amendment rights by retaliating against him for speaking out regarding alleged abuse of inmates and other wrongdoing at DCP.   Count II is a Fourth Amendment malicious prosecution claim against Defendants Garver, DeRose, Drum and Jeszenka .  Count III is a state law assault claim against Defendant Hohney.

On July 9, 2001, Magistrate Judge Smyser issued a report recommending that Defendant Hohney be granted summary judgment on the assault claim against him; that Defendants, Garver, DeRose and Jeszenka,

1

be granted summary judgment on the Fourth Amendment malicious prosecution claim; and that Defendants, DeRose, Jeszenka, Hohney, Shumaker and Dauphin County, be granted summary judgment on Plaintiff's retaliation claims regarding the March, 1999 disciplinary report; the criminal charges stemming from the July 7, 1999 computer incident; and the February 10, 2000 disciplinary report.

In his July 9, 2001 report, Magistrate Judge Smyser further recommended that Defendants, DeRose, Jeszenka, Hohney, Shumaker and Dauphin County, not be granted summary judgment on the Plaintiff's retaliation claims regarding the refusal to take any disciplinary action against Defendant Hohney for an incident on April 2, 1999; an incident during the investigation of the April 2, 1999 incident, where Plaintiff was allegedly threatened not to complain and not to report abuse or else he would lose his job; the alleged refusal to pay the Plaintiff back pay and reinstate the Plaintiff's medical coverage if the Plaintiff was acquitted of the criminal charges; and the alleged physical threat by Defendant Hohney.

On July 23, 2001, Defendants filed objections to the portion of Magistrate Judge Smyser's Report and Recommendation denying in part, Defendant's Motion for Summary Judgment. By Order dated August 24,

2001, this Honorable Court overruled Defendants' objections to the Magistrate Judge's Report and Recommendation. On September 10, 2001, Defendants filed a timely Motion for Reconsideration to this Honorable Court's August 24, 2001 Order overruling Defendants' objections. By Order dated October 18, 2001, this Honorable Court denied Defendants' Motion for Reconsideration. Following a pretrial conference on February 1, 2002, this Honorable Court ordered that the parties are permitted to file renewed motions for summary judgment by April 4, 2002.

On April 4, 2002, Defendants filed a Renewed Motion for Summary Judgment; a Concise Statement of Undisputed Material Facts; and an Appendix of Exhibits with respect to the remaining claims. These consist of (1) refusal to take disciplinary action against Hohney for the 4/2/99 incident; (2) the alleged physical threat by Hohney in the incident of 4/2/99; (3) an alleged threat made by Defendant Shumaker to Plaintiff in the course of investigation after the 4/2/99 incident; and (4) an alleged failure to provide plaintiff with back pay upon his return from suspension and to reinstate his medical benefits. This Brief is in support of Defendants' Renewed Motion for Summary Judgment with respect to those claims.

## II.    QUESTIONS PRESENTED:

A.    STANDARD OF REVIEW.

B.    WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON ALL OF THE REMAINING CLAIMS OF RETALIATION ASSERTED IN COUNT I OF PLAINTIFF'S COMPLAINT?

[SUGGESTED ANSWER: YES]

C.    WHETHER PLAINTIFF'S CLAIMS OF RETALIA-TION ARISING OUT OF THE HANDLING OF HIS BACK PAY AND BENEFITS FOLLOWING HIS RETURN FROM SUSPENSION ARE BARRED, AS A MATTER OF LAW, BY THE SETTLEMENT AGREEMENT EXECUTED BY THE PARTIES RESOLVING GRIEVANCE NO. 59597?

[SUGGESTED ANSWER: YES]

## III.    ARGUMENT:

A.    STANDARD OF REVIEW.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In determining whether genuine issues of material fact exist, the United States Supreme Court in <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505 (1986), held that: "The mere existence of a scintilla of evidence in support of the

4

[non-moving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." Id., at 2525. Moreover, the inquiry focuses on "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party may prevail as a matter of law." Id., at 2512.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' ". Matshushita Electrical Industrial Company v. Zenith Radio Corp., 106 S.Ct. 1348, 1386 (1986). "A plaintiff may not obtain a trial merely by showing that there is 'some metaphysical doubt as to the material facts' ". Id., at 1356 (citations omitted). Accordingly, "there is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 264 (1986).

Once a party has shown an absence of evidence to support the claims of the non-moving party, the non-moving party must do more than simply sit back and rest on the allegations in the complaint. The plaintiff must go beyond the pleadings and by his own affidavits or the discovery on file,

5

designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The substantive law defines which facts are material, that is, which facts may affect the outcome of the lawsuit.  Id.  If the non-movant bears the burden of persuasion at trial, the moving party may meet its burden by showing that the evidentiary materials of record, if reduced to admissible form, would be insufficient to carry the non-movant's burden at trial.  Chippollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir. 1987); cert. dismissed, 483 U.S. 1052 (1987).

> **B.    THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND DEFENDANTS, DEROSE, JESZENKA, HOHNEY AND SHUMAKER ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON ALL OF PLAINTIFF'S REMAINING RETALIATION CLAIMS ASSERTED IN COUNT I OF THE COMPLAINT.**

Plaintiff, Christopher Lewis, uses § 1983 as the vehicle to bring his civil rights claims alleging violations of his First and Fourteenth Amendment rights.  It is well settled that "§ 1983 'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred.' "  Graham v. Connor, 490 U.S. 386, 393-94

(1989). The plaintiff in a § 1983 claim must prove: (1) that the defendants deprived him of a right secured by the Constitution or laws of the United States; and (2) that defendants were acting under color of state law in effecting such a deprivation. See, Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). Thus, the first step in analyzing a § 1983 claim is identification of the specific right or rights allegedly violated by defendant's actions. See, Baker v. McCollan, 443 U.S. 137, 140 (1979).

In the remaining claims asserted in Count I, Plaintiff avers that Defendants, DeRose, Jeszenka, Hohney and Shumaker violated his First and Fourteenth Amendment rights by retaliating against Plaintiff for allegedly reporting instances of misconduct and/or abuse by the prison staff. According to the Third Circuit, a public employee's claim of retaliation for a protected activity, here speech, is analyzed in three steps. Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir. 1997), Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996); Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995). First, the plaintiff must demonstrate that his speech was protected. Green, 105 F.3d at 885. Second, the plaintiff must show that the speech was a motivating factor in the alleged retaliatory action. Id. Third, the defendant may defeat

plaintiff's claim by establishing that the adverse action would have been taken even in the absence of the protected speech.  Id.  Defendants contend that based upon the facts of record, Plaintiff cannot meet his burden of proof in establishing a violation of his First and/or Fourteenth Amendment rights with respect to the remaining retaliation claims asserted in Count I of the Complaint.

> **1.     Magistrate Smyser has already ruled that there is a genuine issue of material fact on whether Plaintiff engaged in protected speech.**

With respect to the first step in the retaliation analysis, on page 29 of his Report and Recommendation, Magistrate Judge Smyser found that there was a genuine factual dispute about whether the Plaintiff complained to prison officials about inmate abuse and/or other wrongs.  Moreover, the Defendants have not argued that alleged complaints about inmate abuse or other wrongs would not be constitutionally protected speech. Consequently, this Honorable Court need not address the first prong of the Green analysis.

> **2.     The record is devoid of evidence that Plaintiff's alleged protected speech was a substantial motivating factor in the Defendants' actions.**

In opposing a summary judgment motion, a non-movant may not "rest upon mere allegations, general denials or . . . vague statements." Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991), cert. denied, 502 U.S. 940 (1991). In Schoch v. First Fidelity Bank Corp., 912 F.2d 654, 657 (3d Cir. 1990), the court ruled that unsupported allegations in the non-movant's memorandum and pleadings are insufficient to overcome a properly supported motion for summary judgment. According to the Supreme Court, the summary judgment procedure enables a party "who believes that there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process of litigation continues." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990). In this case, Defendants contend that Plaintiff cannot point to any facts of record which satisfy the second prong of the Green analysis.

In his response to Defendants' initial Motion for Summary Judgment, Plaintiff asserted that his First Amendment rights were violated and that he was retaliated against for engaging in protected activity with respect to the prison's handling of inmate Deon Stafford. It is important to note, however, that inmate Stafford was last incarcerated at the Dauphin County

Prison on December 13, 1996, the day he was transferred to the State Correctional System to serve a sentence of 132 months to 312 months. (Exhibit 31, para. 7.)  It is also important to note that the April 2, 1999 crab cake incident; Defendant Shumaker's investigation of that matter; and the prison's decision not to take any disciplinary action against Defendant Hohney occurred at least 28 months after inmate Stafford's transfer to the State Correctional System.  It strains credulity to suggest that there is some nexus between any alleged protected activity on the part of Plaintiff with respect to the conditions of inmate Stafford's confinement and the handling of the April 2, 1999 crab cake incident more than two (2) years later.  Given the lack of temporal proximity between the events, and given the fact that Plaintiff cannot point to any facts of record showing that he engaged in any other protected activity, Plaintiff has not, and cannot show that any comments with regard to the handling of inmate Stafford were a motivating factor with respect to Defendant Hohney's alleged threats on April 2; Defendant Shumaker's alleged comments to Plaintiff during the subsequent investigation; and the employer's decision not to discipline Hohney for that incident.  Consequently, Defendants' Renewed Motion for Summary Judgment must be granted as  a matter of law, since Plaintiff

cannot point to any facts of record satisfying the second prong of the <u>Green</u> analysis.

The same argument applies to the claim for retaliation arising out of the dispute over Plaintiff's benefits following his return to employment as a Correctional Officer in February, 2000, after he was acquitted of the criminal charges. In that regard, that dispute arose more than three years after inmate Stafford was last incarcerated at Dauphin County Prison. Moreover, it is important to note that Plaintiff was suspended from employment after the criminal charges were filed arising out of the July, 1999 deletion of the computer records and thus, Plaintiff was not even at the facility for a number of months. The record is devoid of any evidence establishing that Plaintiff engaged in any protected activity on or about the time that the dispute over the benefits arose. Consequently, Defendants are entitled to summary judgment as a matter of law on Plaintiff's retaliation claims arising out of the handling of the back pay and/or benefits issues.

Defendants further contend that Plaintiff cannot point to any facts of record substantiating his conclusory assertion that Defendants retaliated

against him with respect to the handling of the back pay and/or benefits issues.

The Personnel and Payroll Department oversees and coordinates the various employee medical benefits programs, including dental, vision and prescription benefits and health insurance coverage for eligible County employees. (Manton Dec. par. 2). On January 20, 2000, Deputy Warden DeWees submitted a personnel action form indicating that Christopher Lewis, an employee at the prison, was returning from a suspension effective January 23, 2000. After submission of that form, it would be the responsibility of Manton's Department to ensure that Mr. Lewis was re-enrolled with the applicable benefits programs and the Warden would not be involved in that process. (Manton Dec. par. 3; Exhibit "A").

In paragraphs 4 through 16 of her Unsworn Declaration, Sharon Manton sets forth the procedural history over the course of a 12-week period in which Plaintiff was brought back from suspension (January 23, 2000), left again without applying for Family and Medical Leave (February 14, 2000), and then reconsidered and applied for Family and Medical Leave benefits (effective April 13, 2000). Manton's Declaration also attests to the fact that all of the foregoing changes in employment status and/or

eligibility for benefits were handled in accordance with the Department's standard operating procedures with respect to the administration of employee benefits programs. (Manton Dec. par. 17). Moreover, Manton also believes that any delays and/or problems which occurred were due to Mr. Lewis' frequent changes in employment status and not due to any involvement of the Warden in the benefits process. (Manton Dec. par. 18). Manton further attests to the fact that Warden DeRose never in any way interfered with, obstructed or did anything to delay the processing of Christopher Lewis' re-enrollment for benefits, or with respect to reimbursement of Mr. Lewis for medical expenses incurred during his period of suspension. In fact, to Manton's knowledge, the Warden's only involvement with Mr. Lewis' re-enrollment for benefits was a phone call on February 14, 2000 to confirm that the necessary paperwork had been completed for Manton's office to again enroll Mr. Lewis for his benefits. (Manton Dec. par. 19; DeRose Second Supp. Aff. par. 17).

Based upon the foregoing, Plaintiff cannot establish that his alleged complaint about abuse at the prison was a substantial motivating factor with respect to the handling of his health benefits. Moreover, the conclusory allegations of Count I of Plaintiff's Complaint, are inadequate,

13

as a matter of law to overcome Defendants' properly supported Motion for Summary Judgment. Since Plaintiff cannot point to any facts of record establishing the second prong of the Green analysis, Defendants are entitled to summary judgment on his retaliation claim.

In Count I of his Complaint, Plaintiff also asserts a retaliation claim arising out of the alleged delay in calculation of and payment of Lewis' back pay from the period of his suspension. In paragraphs 2 through 14 of his Second Supplemental Affidavit, Warden DeRose details the nature of the dispute over the computation of the proper amount of back wages and the chronology of the negotiations that led to the compromised resolution of those matters.

Upon Mr. Lewis' return to work in late January, 2000, computing the back wages owed to him during the period of suspension was not a simple matter of just calculating the amount of wages owed to him for that time period at straight time based upon a normal work week. Rather, these calculations also included issues concerning entitlement to and calculation of leave time pay, overtime pay, holiday pay, and training pay as well as deductions for any wages and unemployment compensation received during the period of suspension. After his return to work, Mr. Lewis had

raised issues concerning his alleged entitlement to payment for these items during his period of suspension. He also initially refused to provide a W-2 wage form for employment that he had during his period of suspension. (DeRose Second Supp. Aff. par. 2; Exhibit "A").

Thereafter, DeRose further reviewed and researched these matters and drafted a memorandum concerning adjustments to those items claimed by Mr. Lewis for back wage reimbursement that DeRose felt were proper and justified. That memorandum also addressed the issue of health benefits on page 3. The applicable section indicated that if Mr. Lewis had any out of pocket medical expenses during this period of his suspension, they would be reimbursed at the rate appropriate for his health care coverage. DeRose then forwarded this memorandum by correspondence of February 24, 2000 to Charles Shugart, the Union representative, who was involved in negotiation of these items, for his review. (DeRose Second Supp. Aff. par. 3; Exhibits "B" and "C").

As of the time of DeRose's February 24, 2000 letter (Exhibit "C") Mr. Lewis was again no longer actively employed at the prison. After his return from suspension, on or about February 14, 2000, he claimed that a stress-related medical condition prevented him from working at the prison,

and he has not returned to duty since that date. (DeRose Second Supp. Aff. par. 4).

As of February 2000, there was pending a grievance number 59597 dated 7/14/99 pertaining to these matters which had previously been filed by Christopher Lewis and which states as follows:

> "I am grieving that I had been suspended without pay on July 12, 1999. I had been accused of erasing the file in the Captain's office. I am requesting a hearing and all monies lost in back pay and in benefits owed to me."

That grievance was also signed by Charles Shugart, the Union representative, as well as by Mr. Lewis. (DeRose Second Supp. Aff. par. 5; Exhibit "D").

DeRose then received correspondence of February 25, 2000 in response to his draft memorandum (Exhibit "B") which was signed by both Charles Shugart and by Christopher Lewis. While many of the items that DeRose discussed in his memorandum were agreed to by Mr. Shugart and Mr. Lewis, there still remained several unresolved issues. Specifically, these issues pertain to alleged entitlement to back pay for training time, a credit of seven (7) vacation days and five (5) sick days that Mr. Lewis and Mr. Shugart claimed he would have earned between July 11, 1999 and

January 9, 2000, as well as applicable deductions for wages and unemployment compensation received during the period of suspension. Mr. Shugart and Mr. Lewis also did not agree that this settlement should include resolution of a prior three (3) day suspension for sleeping on duty which DeRose had proposed in his memorandum (Exhibit "B"). The letter did indicate that Mr. Lewis was under an HMO (County provided) and as such, would not have had any "out of pocket" costs for medical services. It was agreed to resolve this issue as outlined in DeRose's memorandum with the understanding that all of Mr. Lewis' medical bills would be paid in full. Finally, the letter specifically indicates as follows:

> "Any corrections to the draft settlement must be mutually agreed upon prior to the final settlement of this matter. The signatures of the County and grievant will settle all issues, discipline or other matters related to this incident and proposal."

Based upon this paragraph from the letter from Mr. Shugart and Mr. Lewis, DeRose understood that final settlement of the matter could not occur until any corrections to the draft settlement document were mutually agreed upon between Lewis, the Union, and the County. (DeRose Second Supp. Aff. par. 6; Exhibit "E").

Based upon the foregoing, there were legitimate issues of dispute over the proper calculation of the amount of the award for back wages which required considerable negotiation over an extended period of time to resolve. It is also important to note that based upon the February 25, 2000 correspondence, Plaintiff and the Union Business Agent were insisting that all outstanding issues must be agreed upon prior to a final settlement of this matter. Additionally, Warden DeRose's Second Supplemental Affidavit attests to the fact that at no time did he ever direct, advise or suggest, either directly or indirectly, either before or after the completion of the settlement agreement that payment of medical expenses incurred by Mr. Lewis either not be paid or that there be any delay in their processing and payment. In fact, from the start, DeRose's initial memorandum specifically recognized the medical expenses that were incurred during the period of suspension would be submitted and would be reimbursed at the applicable rate by the County. (DeRose Second Supp. Aff. par. 16, Exhibit "A" and "J"). Based upon the foregoing, Plaintiff cannot meet his burden of proof under the second prong of the Green analysis. Consequently, Defendants are entitled to summary judgment as a

matter of law on Plaintiff's retaliation claim arising out of the handling of the claim for back pay.

With respect to the retaliation claim against Defendant Shumaker, the undisputed facts of record establish that he was employed as a County Detective by the Criminal Investigation Division of the Dauphin County District Attorney's office, and as such, he had no ability and/or authority to act with respect to the terms and conditions of Plaintiff's employment at the prison. More importantly, as a County Detective, Shumaker had no ability and/or authority to recommend let alone, to take any administration and/or disciplinary action against Lt. Hohney for the crab cake incident. In order to be held liable under § 1983, Detective Shumaker must have some personal involvement in the complaint of conduct. Rode v. Dellaraciprette, 845 F.2d 1195, 1207 (3d Cir. 1988). The mere fact that Plaintiff claims that Shumaker opined that Plaintiff "wasn't going to have any friends", without more, is insufficient to establish a cognizable retaliation claim.

     **3.**     **Defendants are entitled to summary judgment, as a matter of law, because they have met their burden of proof that their actions would have occurred even in the absence of the alleged protected activity.**

The Defendants further contend that they are entitled to summary judgment as a matter of law on the claim that the prison failed to discipline Defendant Hohney as a result of the crab cake incident. As a threshold matter, Defendants assert that Plaintiff does not have a constitutional right to have disciplinary action taken against a co-employee.

Moreover, the undisputed facts of record establish that the April 2, 1999 incident was referred for an investigation by the Criminal Investigation Division; that statements were obtained from a number of co-workers present for the incident and none of them corroborated Plaintiff's allegations that Hohney threatened the Plaintiff with bodily harm; and a number of individuals with firsthand knowledge of the incident were interviewed and none of the individuals interviewed indicated that they heard any threats being made by Hohney against the Plaintiff. Plaintiff was told by Detective Shumaker that the District Attorney's office would likely not approve the filing of criminal charges. (See Shumaker affidavit, ¶ 5.)

Under the third prong of the <u>Green</u> analysis, Defendants contend that the refusal to take disciplinary action against Defendant Hohney would have happened even in the absence of any constitutionally protected

activity.  In that regard, if Hohney had made a threat against Plaintiff in front of numerous individuals, then common sense dictates that someone else would have heard it.  The written and verbal statements obtained from the witnesses, however, failed to corroborate Lewis' version of events and, in fact, the individuals interviewed by Defendant Shumaker indicated that Plaintiff was also an active participant in the verbal altercation with Hohney.  This was a classic "he said-he said" incident and since there was no corroboration of Plaintiff's version of events, there was no basis for pursuing any disciplinary action against Defendant Hohney.

It is also important to note, however, that this incident was not simply swept under the rug; to the contrary, written statements were obtained from all of the individuals who witnessed the altercation and the matter was investigated by the County Detective's office.  Clearly, there are no facts of record from which a reasonable jury could infer impermissible retaliatory conduct on the part of the Defendants.  More importantly, the undisputed facts of record establish that under the circumstances, even in the absence of any alleged First Amendment activity by Plaintiff, there was no basis for any disciplinary action against Lt. Hohney.

The retaliation claim against Lt. Hohney for the alleged threat during the crab cake incident also fails as a matter of law.  In his response to paragraph 181 of Defendants' Fact Statement, Plaintiff avers that Hohney was screaming "during the April 2, 1999 incident <u>because</u> he became angry over someone eating or taking a bit, from one of his crab cakes."  No one appears to dispute that someone had taken a bite from the crab cake.  In other words, this was a petty lunchroom dispute over one staff member's food having allegedly been tampered with by someone else.  It is simply not plausible to suggest that Lt. Hohney's anger or any statements that he made were in retaliation for Plaintiff's alleged complaints about abuse and/or misconduct.

Finally, Defendants contend that they have met their burden of proof with respect to the third prong of the <u>Green</u> test on the retaliation claim arising out of the handling of the back pay and benefits issues.  It is important to note that it is not unusual for a dispute to arise between an employer and employee regarding the calculation and payment of back pay (in this case, $16,818.50).  This was a negotiated resolution of this matter which involved issues regarding the proper number of sick and/or vacation days to be credited to the Plaintiff; the employer's entitlement to

22

an offset for unemployment compensation benefits paid; the calculation of the appropriate amount of the offset from earnings from alternative employment; calculation of holiday pay; and a determination of whether Plaintiff would be compensated for training hours.  Given the number of legal and factual issues involved with Plaintiff's return to employment, there was bound to be some controversy concerning the County's calculation of Plaintiff's back pay and benefits.  The record is devoid of any factual evidence whatsoever supporting a claim for retaliation arising out of the calculation of back pay and/or benefits.  Even if such a retaliatory motive is presumed, which is denied, the Defendants have met their burden of proof under the third prong of the <u>Green</u> analysis. Consequently, Defendants are entitled to summary judgment as a matter of law on any and all retaliation claims arising out of the handling of the back pay and/or benefits issues.

    **4.**    **The individual Defendants are entitled to summary judgment as a matter of law because there are no facts of record establishing that their conduct violated Plaintiff's constitutional rights.**

Under the doctrine of qualified immunity, local officials performing administrative and executive functions are shielded from suits for civil

damages brought under § 1983 insofar as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. " Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The privilege is "an immunity from suit rather than a mere defense to liability", Id. and as such, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 500 U.S. 224, 227 (1991). (Per curiam). As a threshold matter, a district court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Saucier v. Katz, 121 S. Ct. 2151, 2155 (2001); Siegert v. Gilley, 500 U.S. 226, 232 (1991). If the allegations do not establish the violation of the constitutional right, then the government official is entitled to qualified immunity. Id. at 2156.

As noted in Section B(2) and (3) of this Brief, Plaintiff cannot point to any facts of record establishing that the individual Defendants violated any of Plaintiff's federally protected rights. According to the Supreme Court's analysis in Saucier, this concludes the qualified immunity analysis and the claims against the individual Defendants must be dismissed with prejudice as a matter of law.

**5.    With no cognizable claim against the individual Defendants, Plaintiff's § 1983 municipal liability claim against Dauphin County fails as a matter of law.**

As noted in Section III.B2-4 above, Plaintiff has failed to point to any facts of record establishing that the individual Defendants deprived Plaintiff of his First and/or Fourteenth Amendment rights.  With respect to the § 1983 municipal liability claim against Dauphin County asserted in Count I of the Complaint, the Defendants contend that, since there was no violation of Plaintiff's federally protected rights by any employee, there is no basis for imposing § 1983 liability against the County of Dauphin.  See, City of Los Angeles v. Heller, 475 U.S. 796-799 (1986) (per curiam) ("neither Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), nor any of our cases authorize the award of damages against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm." ); see, also, Williams v. Borough of West Chester, 892 F.2d 453 (3d Cir. 1989).  Since the actions of Defendants, DeRose, Jeszenka, Hohney and Shumaker do not rise to the level of a cognizable retaliation claim under the First and/or Fourteenth Amendment, any claim of an unconstitutional policy, practice or custom is not even at issue.  Therefore, no further analysis of the policy, practice and

medical coverage. Warden DeRose's original Affidavit attests to the fact that a personnel action form was sent to the personnel office on January 20, 2000, returning Plaintiff to work as of January 23, 2000, and Plaintiff's medical insurance should have, but was not, reinstated at that time. Plaintiff then brought this oversight to the attention of prison administration on February 15, 2000 and was provided the appropriate documents to complete so that his insurance could be reinstated. At that time, Plaintiff was assured that any outstanding medical and/or dental bills would be paid and that he would be reimbursed for any out-of-pocket expenses that he had. Thereafter, Lewis' medical benefits were then reinstated retroactively to February 1, 2000. A negotiated settlement was reached with respect to Mr. Lewis' back pay and benefits (the subject matter of Grievance No. 59597). That agreement provides, in pertinent part, as follows:

> 14. This agreement settles and resolves all matters raised in Grievance No. 59597. It does not constitute a waiver of any other claims or causes of action asserted by the grievant in the lawsuit that he has filed in the United States District Court for the Middle District of Pennsylvania, captioned <u>Christopher Lewis v. Dominick DeRose, Mark Jeszenka, Michael Hohney, Robert Drum, Mr. Shoemaker, Carl</u>

> Garver, and Dauphin County, and docketed
> to No. CV-00-0436.  It is also specifically
> agreed that this agreement does not make
> Christopher Lewis a prevailing party for
> purposes of any claims for attorney fees and
> costs under federal law asserted in the above-
> captioned lawsuit.

DeRose Affidavit, ¶¶ 31-33 and Exhibit "E".

Based upon the foregoing, it is readily apparent that any issues involving Plaintiff's benefits, including back pay and/or insurance coverages, have been resolved and that Plaintiff has executed a release on any and all such claims.  That grievance requests " a hearing and all monies lost in back pay and in benefits owed to me."  (Emphasis added.)  Clearly, the issues of back pay and benefits owed to Plaintiff were matters raised in that grievance and were also matters settled and resolved in the release agreement.  Therefore, the settlement agreement precludes Plaintiff from pursuing claims including those for alleged retaliation arising out of these matters.

## IV.   CONCLUSION:

For the reasons advanced herein, Defendants respectfully request that this Honorable Court grant their Renewed Motion for Summary

Judgment and enter judgment in favor of the Defendants and against the Plaintiff on the remaining claims of retaliation asserted in Count I of the Complaint.

Respectfully submitted,

Lavery, Faherty, Young & Patterson, P.C.

By: _____

Frank J. Lavery, Jr., Esquire
Atty No. 42370
James D. Young, Esquire
Atty No. 53904
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
Attys for Defendants

DATE: _4|8|02_

## CERTIFICATE OF SERVICE

I, Megan L. Renno, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this _____ day of April, 2002,  I served a true and correct copy of the foregoing **Brief in Support of Defendants' Renewed Motion for Summary Judgment** via U.S. First Class Mail, postage prepaid, addressed as follows:

Don Bailey, Esquire
4311 North Sixth Street
Harrisburg, PA  17110

_____
Megan L. Renno