ORIGINAL

FILED
HARRISBURG

APR 2 2 2002

MARY E. D'ANDREA, CLERK
Per_____ RB
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER LEWIS,  : CIVIL ACTION - LAW
         Plaintiff : 
          : 
      v. : NO. CV 00-0436
          : 
DOMINICK DEROSE, MARK : 
JESZENKA, MICHAEL HOHNEY, : JUDGE RAMBO ✓
ROBERT DRUM, MR. SHOEMAKER : 
CARL GARVER, and : MAGISTRATE JUDGE SMYSER
DAUPHIN COUNTY, : 
         Defendants : JURY TRIAL DEMANDED

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S REFVISED BRIEF ON THE SUMMARY DISMISSAL OF HIS FOURTH AMENDMENT CLAIM

# <u>TABLE OF CONTENTS</u>

Table of Authorities……………………………………… ii

I.    Statement of Procedural History……………………………. 1

II.   Statement of Material Facts……………………………….. 3

III.  Question Presented…………………………………… 23

IV.   Argument……………………………………………. 23

      A.    Defendants Garver, DeRose and Jeszenka
            are entitled to summary judgment as a
            matter of law on Plaintiff's Fourth
            amendment claim……………………………… 23

V.    Conclusion…………………………………………….. 35

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases:**

Harlow v. Fitzgerald,
457 U.S. 800, 818 (1982)……………………………………………    30

Michigan v. DeFillippo,
443 U.S. 31, 36 (1979)……………………………………………    27

Rizzo v. Goode,
423 U.S. 362 (1976)………………………………………………    32

Saucier v. Katz,
121 S.Ct. 2151, _____ (2001)…………………………………    30

Siegert v. Gilley,
500 U.S. 226, 232 (1991)………………………………………..    30

**Federal Circuit Cases:**

Bristow v. Clevenger,
80 F. Supp. 2d 421, 430 (M.D. Pa. 2000)………………………    24, 25

Britton v. Maloney,
196 F.3d 24, 30 (1st Cir. 1999)…………………………………    25

Colbert v. Angstadt,
169 F. Supp. 2d 352 (E.D. Pa. 2001)…………………………..    25

Floyd v. Farrell,
765 F.2d 1, 4 (1st Cir. 1985)……………………………………    26

Gallo v. City of Philadelphia,
161 F.3d 217 (3d. Cir. 1998)……………………………………    24

<u>Gilbert v. Feld</u>,
842 F. Supp. 803, 814 (E.D. Pa. 1993)……………………………   26

<u>Green v. Philadelphia Housing Authority</u>,
105 F.3d 882, 885 (3d Cir. 1997)……………………………   34

<u>Griffith v. Cigna Corp.</u>,
988 F.2d 457, 464 (3d Cir. 1993)……………………………   26

<u>Kornegay v. Cottingham</u>,
120 F.3d 392, 395 (3d Cir. 1997)……………………………   31

<u>Nieves v. McSweeney</u>,
241 F.3d 46, 54-57 (1st Cir. 2001)……………………………   24

<u>Rode v. Delarciprete</u>,
845 F.2d 1195, 1207 (ed Cir. 1988)……………………………   32

<u>United States v. Massac</u>,
867 F.2d 174, 175 (3d Cir. 1989)……………………………   26

<u>Valenti v. Sheeler</u>,
765 F. Supp. 227, 230 (E.D. Pa. 1991)……………………………   27

<u>Williams v. Fedor</u>,
69 F. Supp. 2d 649, 677-78 (M.D. Pa. 1999),
<u>aff'd</u>, 211 F.3d 1263 (3d Cir. 2000)……………………………   31

## I.    STATEMENT OF PROCEDURAL HISTORY:

Plaintiff, Christopher Lewis, initiated this civil action by filing a Complaint, containing three counts on March 7, 2000 which was assigned to Magistrate Judge Smyser for pretrial proceedings.   The Defendants named in the Complaint are:    (1) Dominick DeRose, Warden of the Dauphin County Prison (DCP); (2) Mark Jeszenka, a Captain at DCP; (3) Mike Hohney, a Supervisor at DCP; (4) Robert Drum, a Correctional Officer at DCP; (5) Robert Shumaker, a Detective for Dauphin County; (6) Carl Garver, a Detective for Dauphin County; and (7) Dauphin County.

In Count I of the Complaint, Plaintiff asserted that Defendants, DeRose, Jeszenka, Hohney, Shumaker and Dauphin County violated the Plaintiff's First and Fourteenth Amendment rights be retaliating against him for speaking out regarding alleged abuse of inmates and other wrongdoing at DCP.    Count II is a Fourth Amendment malicious prosecution claim against Defendants, Garver, DeRose, Drum and Jeszenka.  Count III is a state law assault claim against Defendant Hohney.

On July 9, 2001, Magistrate Judge Smyser issued a Report recommending that Defendant Hohney be granted summary judgment on

the assault claim against him; that Defendants, Garver, DeRose and Jeszenka, be granted summary judgment on the Fourth Amendment malicious prosecution claims; and that Defendants, DeRose, Jeszenka, Honey, Shumaker and Dauphin County, be granted summary judgment on Plaintiff's retaliation claims regarding the March, 1999 disciplinary report; the criminal charges stemming from the July 7, 1999 computer incident; and the February 10, 2000 disciplinary report. Magistrate Judge Smyser further recommended that Defendants' Motion for Summary Judgment on the remaining claims of retaliation asserted in Count I of the Complaint be denied.

Following a pretrial conference on February 1, 2002, this Honorable Court ordered that the parties are permitted to file renewed motions for summary judgment by April 4, 2002. On April 4, 2002, Defendants filed a Renewed Motion for Summary Judgment; a Concise Statement of Undisputed Material Facts; and an Appendix of Exhibits. The Brief in support of Defendants' Renewed Motion for Summary Judgment was filed on April 8, 2002.

On April 4, 2002, Plaintiff filed a "Revised Brief on the Summary Dismissal of his Fourth Amendment Claim." In his Request to Revisit the

Fourth Amendment Claim, Plaintiff does not address: (1) the lack of a "seizure" for Fourth Amendment purposes; (2) the lack of personal involvement by Defendants DeRose and Jeszenka in the decision to file the criminal charges; and (3) the Defendants' qualified immunity defense. To the contrary, Plaintiff's sole argument is that the complained of conduct does not meet the elements of the charge of unlawful use of a computer. This Brief is in opposition to Plaintiff's Revised Brief on the Summary Dismissal of His Fourth Amendment Claim.

## II.  **STATEMENT OF MATERIAL FACTS**:

Carl Garver is one of two supervisory sergeants at Dauphin County CID. Garver's job duties and capacity involve supervision in the administration and staff areas. (Garver Affidavit ¶ 2.) The matter involving Christopher Lewis and the computer in the Captain's office was first referred to Dauphin County CID by Deputy Warden Leonard Carroll on July 15, 1999. It is the policy of Dauphin County Prison for any allegations that become known to the prison administration that involve potential criminal conduct are to be referred to Dauphin County CID for investigation. As the allegations involving Christopher Lewis allegedly deleting saved filed from the computer in the Captain's office did involve

potential criminal conduct, referral to Dauphin County CID was proper. (Garver Affidavit ¶ 3.)

Garver had no knowledge of Christopher Lewis prior to the time that the investigation involving deletion of files from the computer in the Captain's office began in July 1999. Prior to that time Garver never met him, never investigated him, and never even heard of him, and had no knowledge of Lewis' disciplinary history or personnel history at the Dauphin County Prison. (Garver Affidavit ¶¶ 4, 24-25.)

Garver became involved in investigating the allegations of tampering with the computer in the Captain's office at the Dauphin County Prison as he was the on-call detective when the complaint came in. Therefore, Garver's assignment to this investigation was pure happenstance. No one from the Dauphin County District Attorney's office assigned this matter to Detective Garver as a special assignment, or as part of any type of agenda against Mr. Lewis. (Garver Affidavit ¶ 5.)

After Garver received the complaint as the on-call detective regarding allegations of tampering with the computer in the Captain's office at the Dauphin County Prison, Garver went to the prison. At that time, Detective Garver spoke with Deputy Warden Leonard Carroll and

Mr. Carroll provided Garver with statements and memoranda from individuals with knowledge of the incident. Specifically, the material provided consisted of memoranda/ statements from Captain Mark Jeszenka, Correctional Officer Robert Drum, Lieutenant Michael Hohney, Lieutenant John Adams, and Correctional Officer Kurt Boylstein. (Garver Affidavit ¶ 6, Exhibit "A".)

After receipt of these statements, Detective Garver also spoke with John Doebling, a data processing associate employed by Dauphin County. Mr. Doebling advised and confirmed that the three "saved" files at issue were present in the directory of the computer in the Captain's office as of 11:20 p.m. on 7/6/99 and had been deleted by 11:20 p.m. on 7/7/99. Detective Garver was also provided with written confirmation from Mr. Doebling of this timeframe and the deletion. (Garver Affidavit ¶ 7, Exhibit "B".)

The statement provided by Correctional Officer Boylstein confirmed that Mr. Lewis was off his E-block post from 10:45 p.m. until 11:15 p.m. Correctional Officer Drum's statement confirmed that he observed Christopher Lewis seated at the computer in the Captain's office at approximately 11:00 p.m. on July 7, 1999, and that Mr. Lewis was "pulling

up" files from Captain Jeszenka's "personal" saved files. According to the statement of Mr. Drum, Mr. Lewis pointed out to Drum that the report that he was viewing was a disciplinary report written about Mr. Lewis by Captain Jeszenka regarding sleeping on duty. According to Mr. Drum's statement, Drum observed Mr. Lewis delete that document and then state, "You didn't see nothing". Captain Jeszenka's statement confirmed that the saved files were indeed missing and that he had determined that all of his files saved on the computer directory in the Captain's office regarding disciplinary matters with Christopher Lewis had been deleted. The statement from Lieutenant Adams confirmed that Mr. Lewis had not been given permission to use the computer in the Captain's office at the time in question. (Garver Affidavit ¶ 8, Exhibit "B"; Boylstein Affidavit ¶ 8.)

As part of his investigation, Detective Garver interviewed Captain Mark Jeszenka, and John Doebling. Detective Garver also interviewed Correctional Officer Boylstein. Garver interviewed Correctional Officer Drum over the telephone initially and a second time in person before the preliminary hearing. All these individuals confirmed that the information in their statements was accurate and correct. (Garver Affidavit ¶ 9.)

After obtaining the factual background of the matter, Detective Garver contacted Michael Rozman, Chief Deputy District Attorney for Dauphin County. Garver advised Mr. Rozman of the facts that had been gathered, specifically, the information as contained in the statements of the various witnesses, Lieutenant Adams, Correctional Officer Boylstein, Correctional Officer Drum, Captain Jeszenka, and Mr. Doebling. (Garver Affidavit ¶ 10.)

Detective Garver then asked Mr. Rozman whether the factual scenario as outlined constituted a crime under the Pennsylvania Crimes Code. Mr. Rozman, after consulting the Crimes Code, thereafter advised Detective Garver that the facts established in the investigation met the criteria for a violation of 18 Pa. C.S.A. § 3933(a)(1). This is a third degree felony for unlawful use of computer. (Garver Affidavit ¶ 11.)

In describing the factual background of the matter, Detective Garver did not provide Mr. Rozman with Christopher Lewis' name. Detective Garver only referred to a guard at the prison. (Garver Affidavit ¶ 12.) Based upon Mr. Rozman's advice and the results of his investigation, including a review of witness statements and witness interviews, Detective

Garver felt that probable cause existed to charge Christopher Lewis for a violation of 18 Pa. C.S.A. § 3933(a)(1).  (Garver Affidavit ¶ 13.)

Specifically, Detective Garver felt that Christopher Lewis by deleting documents saved in the computer directory without authority intended to interrupt the normal functioning of the prison organization.  Those documents had been saved on the computer and would be immediately accessible to the author by using the computer in the Captain's office.  Even if these documents existed in a hard copy elsewhere, after the deletion by Mr. Lewis the author would no longer be able to access them on the computer in the Captain's office in normal fashion.  In other words, in the normal functioning of the organization, the author of the document would be able to access the document on the computer and now would no longer be able to do so due to the deletion.  Detective Garver also felt that Mr. Lewis, by deleting the documents which were not his own, exercised control over the property of another, namely the author of the documents deleted. (Garver Affidavit ¶ 14, Exhibit "C"; Jeszenka Supp. Aff. ¶ 4.)

Detective Garver also believed that there was probable cause for a violation of 18 Pa. C.S.A. § 3933(a)(2).  Specifically, Garver felt that by intentionally deleting the documents from the computer directory,

Christopher Lewis intentionally and without authorization both accessed, altered and interfered with the operation of the computer in the Captain's office and the computer database contained therein. (Garver Affidavit ¶ 15.)

To the best of Garver's recollection, there were three saved computer files at issue that were deleted from the records of the computer in the Captain's office. To Detective Garver's knowledge, all of these documents were created by Captain Jeszenka and they involved Christopher Lewis and matters of discipline. (Garver Affidavit ¶ 16.)

Lieutenant Michael Hohney was not interviewed as part of Detective Garver's investigation. While Mr. Hohney had alleged that documents created by him had been deleted from the same computer directory, Detective Garver concluded that he could not establish when this deletion occurred or that Christopher Lewis deleted the documents. (Garver Affidavit ¶ 17.)

Captain Mark Jeszenka, in his interview with Detective Garver, indicated that he had not deleted any documents from the computer directory and had not given permission to Christopher Lewis or anyone else to do so. The files that were deleted were indexed in the computer

directory under the last name "Lewis".  (Garver Affidavit ¶ 18, Exhibit "B".)

Detective Garver contacted Christopher Lewis on two occasions prior to criminal charges being filed to determine if he wanted to voluntarily provide Garver with his version of events.  On both occasions, Mr. Lewis refused to speak to Detective Garver.  (Garver Affidavit ¶ 19.)

Detective Garver did have a conversation with Warden DeRose as a courtesy to advise him that Mr. Lewis was going to be charged criminally. Detective Garver recalls having no more than two conversations with the Warden prior to the time that criminal charges were filed on this matter. At no time did Warden DeRose attempt to influence Garver's investigation or suggest that Christopher Lewis should be criminally charged.  (Garver Affidavit ¶ 20.)

Warden DeRose did not in any way influence, direct, or pressure Detective Garver's investigation.  Warden DeRose has no authority to in any way direct, influence, or pressure investigations by Dauphin County Criminal Investigation Division.  To Detective Garver's knowledge, all investigations performed by CID are performed on a fair and independent basis.  In this matter, Detective Garver conducted his own investigation of

the facts and was not in any way influenced or pressured by Warden DeRose to file criminal charges. While Warden DeRose did not attempt to influence or pressure him, Detective Garver also would not have allowed anyone to do so under any circumstances. (Garver Affidavit ¶ 21.)

Warden DeRose had no personal or direct knowledge of the incident when Christopher Lewis deleted files from the directory of the computer in the Captain's office. He did not provide Detective Garver with any information that contributed or led to the filing of the criminal charges against Mr. Lewis. (Garver Affidavit ¶ 22.)

Detective Garver never suggested, told, or advised Correctional Officer Drum to change, enhance or embellish his testimony or to testify in any way inaccurately or untruthfully at either the preliminary hearing or criminal trial. In fact, Mr. Drum's testimony at the Preliminary Hearing and at trial was exactly in line with his version of events that were provided in his initial written statement. (Garver Affidavit ¶ 23, Exhibit "A".)

Warden DeRose never stated or inferred in any way to Detective Garver that he was pursuing any type of retaliation against Christopher Lewis nor did Garver receive the impression from either of my discussions

with Warden DeRose that there was any issue of retaliation against Christopher Lewis.  (Garver Affidavit ¶ 26.)  It was never brought to Detective Garver's attention either before or during his investigation of this matter, that Christopher Lewis was alleging that he had reported wrongdoing and abuse at the prison.  (Garver Affidavit ¶ 27.)

Detective Garver completed the criminal complaint and probable cause affidavit charging Mr. Lewis with violation of 18 Pa. C.S.A. § 3933(a)(1).  (Garver Affidavit ¶ 28, Exhibit "D".)  A preliminary hearing was held in connection with those criminal charges.  At that preliminary hearing Christopher Lewis testified.  The criminal charge was held for court by District Justice Robert Yanich, a neutral and detached magistrate, after hearing all of the evidence, including the testimony of Christopher Lewis. (Garver Affidavit ¶ 29.)

When written allegations that Mr. Lewis had deleted files from the directory of the computer in the Captain's office at the Dauphin County Prison were brought to the attention of the prison administration, the matter was referred to the criminal investigation division of the Dauphin County District Attorney's Office (CID) for follow-up investigation.  In this regard, it was and remains policy at the Dauphin County Prison to refer allegations of

misconduct against prison staff members that could involve potential criminal conduct to Dauphin County CID for investigation. (DeRose Affidavit ¶ 3.)

At no time did Warden DeRose request, direct, or attempt to influence anyone at Dauphin County CID as to whether criminal charges should or should not be filed against Christopher Lewis arising out of the alleged incident with the computer in the Captain's office of July 7, 1999. (DeRose Affidavit ¶ 4.) At no time did Warden DeRose provide any first-hand information to Dauphin County CID with respect to the underlying incident of July 7, 1999, which ultimately lead to the criminal charges being filed against Christopher Lewis, as DeRose did not possess such knowledge of that incident. (DeRose Affidavit ¶ 5.)

To the best of his knowledge, the decision to charge Christopher Lewis criminally was made by the Dauphin County District Attorney's Office and Warden DeRose had no involvement with that decision. (DeRose Affidavit ¶ 6.) Warden DeRose never directed, told, or suggested to any of the attorneys or County Detectives at the Dauphin County District Attorney's Office that criminal charges be filed against Christopher Lewis as a result of the alleged

incident of July 7, 1999 prior to the time that the criminal charge was brought. (DeRose Affidavit ¶ 7.)

At no time did DeRose ever advise, tell, direct, or suggest to Robert Drum that he lie, be in any way untruthful in his testimony, or in any way shade or embellish his testimony at the criminal trial of Christopher Lewis. (DeRose Affidavit ¶ 15.)  DeRose has no authority and has never had authority in his position as Warden to tell, advise, or suggest to the Dauphin County District Attorney's Office as to when criminal charges should or should not be brought against any prison staff member.  DeRose never presumed to tell, direct, or suggest to anyone in the Dauphin County District Attorney's Office as to when criminal charges were appropriate against any staff member at the prison, and whether or not criminal charges should or should not be filed against any staff member. (DeRose Affidavit ¶ 16.)

On July 8, 1999, Correctional Officer Robert Drum came to Captain Jeszenka and advised him that on the previous night he had observed Christopher Lewis sitting at the computer at the Captain's desk, exploring and deleting computer files created by Captain Jeszenka concerning Mr. Lewis and saved on the I-drive of the computer at that location.  One of those documents saved on the computer in the Captain's office that had been

deleted was Jeszenka's disciplinary report issued to Mr. Lewis concerning the March 4, 1999 sleeping-on-duty incident. Captain Jeszenka checked the directory of his documents on the computer in the Captain's office and found that all of Jeszenka's documents pertaining to Christopher Lewis had been deleted. Captain Jeszenka also found that a file document concerning an incident with Correctional Officer James McIntyre had been deleted several weeks before, and this had not been done by Jeszenka. Captain Jeszenka then asked Lieutenant Michael Hohney to check his saved files for missing items and this check also revealed that files pertaining to Christopher Lewis were no longer saved and had been deleted. Captain Jeszenka then checked the shift roster for the 2200-0600 shift on July 7, 1999. That duty roster reflected that Christopher Lewis had been assigned to F-Block at that time. Captain Jeszenka then asked Correction Officer Kurt Boylestein, who had been assigned to E-Block during that shift if Mr. Lewis had been off his post for any lengthy periods of time. In response, Mr. Boylestein provided Jeszenka with a written statement indicating that Christopher Lewis was not at his post from approximately 2225 hours until 2315 hours during the time at issue. (Jeszenka Affidavit ¶ 15.)

When Jeszenka was asked during his deposition what benefit he thought Lewis might have from deleting the computer files, Jeszenka speculated that Lewis might have done it to "piss me off." Jeszenka said this because he was speculating that Lewis would know that Jeszenka would not be able to access these documents directly from the computer, which would cause inconvenience and confusion to Jeszenka. Jeszenka also clarified that the deleted files were not word processing drafts, but rather, were completed documents. Moreover, it is not true that Jeszenka testified that the deletion of these files was a "meaningless, harmless non-event." Rather, by these documents being deleted, Jeszenka now had no ease of access to them. The documents deleted from Jeszenka's files of documents pertained to prison matters that he wrote, including disciplinary reports and information he gathered, which Jeszenka used to review for hearings and to consult in the future. Jeszenka kept those documents on the computer in the Captain's office for ease of access to them by him. Hard copies of those documents are normally kept in the personnel files of the employees. However, the personnel files are locked in the administrative offices, which are generally open only from 8:00 a.m. to 4:00 p.m. In addition, those prison personnel files can be accessed only by a few selected individuals. Since Jeszenka

16

worked the nightshift, those documents would not be accessible to him. (Jeszenka Supp. Aff. ¶ 4.)

Robert Drum came to Jeszenka with the initial allegations that Christopher Lewis had deleted documents from the computer in the Captain's office on July 7, 1999. Drum initiated that discussion with Captain Jeszenka. Captain Jeszenka had no knowledge of these matters until Mr. Drum told him on July 8, 1999 what he knew about the incident. Mr. Drum also provided Captain Jeszenka with a written statement concerning his knowledge of that matter. At no time did Captain Jeszenka ever suggest, advise, or direct Robert Drum to make up any false or misleading allegations against Christopher Lewis with respect to the incident of July 7, 1999 involving the computer in the Captain's office. (Jeszenka Affidavit ¶ 16.)

On July 8, 1999 Captain Jeszenka wrote a memorandum to the Warden advising what Jeszenka had learned about the incident of July 7, 1999 involving the computer in the Captain's office and made formal complaint to the administration based upon what Jeszenka knew at the time. (Jeszenka Affidavit ¶ 17, Exhibit "F".) The next day, July 9, 1999, Captain Jeszenka issued an Employee Disciplinary Report to Christopher Lewis concerning the July 7, 1999 incident involving the computer in the Captain's office. No one

from the Prison administration instructed, advised, or suggested to Captain Jeszenka that he write Mr. Lewis up for this disciplinary violation. The basis for the disciplinary violation was the information that Captain Jeszenka had learned from Correctional Officer Drum and other sources as outlined in Jeszenka's July 8, 1999 memorandum. (Jeszenka Affidavit ¶ 18, Exhibit "F" and Exhibit "G".)

Thereafter, Captain Jeszenka's only involvement in the criminal prosecution of Mr. Lewis was providing the information known to Jeszenka which was already outlined in his July 8, 1999 memorandum to the Dauphin County District Attorney's Office and providing testimony at the preliminary hearing and criminal trial. (Jeszenka Affidavit ¶ 19, Exhibit "F".)

Captain Jeszenka did advise Lt. Hohney on July 8, 1999 of the allegations made by Correctional Officer Robert Drum that Christopher Lewis had deleted documents from the directory of the computer in the Captain's office. Captain Jeszenka asked Lt. Hohney to check the computer directory for any documents that Hohney had saved concerning Christopher Lewis. Lt. Hohney did so and found that two documents that he had saved about Christopher Lewis were missing from the computer directory. One of those documents concerned a sleeping on duty incident

involving Mr. Lewis of March 4, 1999 and the other was Lt. Hohney's memorandum to the administration concerning the incident in the chow hall on April 2, 1999.  Lt. Hohney did not delete those documents from the computer directory and does not know when the documents were deleted or by whom.  (Hohney Affidavit ¶ 11.)

The criminal charge that was brought against Christopher Lewis pertained to the deletion of Captain Jeszenka's documents from the computer in the Captain's office.  It did not, to the best of Lt. Hohney's knowledge, pertain to the deletion of any of Hohney's saved documents on the computer.  Lt. Hohney was not involved in the prosecution of Christopher Lewis and did not testify at either the preliminary hearing, or at the trial.  (Hohney Affidavit ¶ 12.)

After Lt. Hohney became aware that documents that he had saved on the directory of the computer in the Captain's office had been deleted, Hohney became concerned as he wanted to have his own record of documents that he had generated on the computer.  Therefore, Lt. Hohney emailed the remaining documents that he had on the directory of the computer in the Captain's office to his home computer so that Hohney would have record of them there in the event that these documents were

also later deleted from the computer in the Captain's office. (Hohney Affidavit ¶ 13.)

Lt. Hohney never deleted, emailed or tampered with any of the other supervisors' documents that were saved on the computer in the Captain's office. The only documents that Hohney emailed to his home computer were Hohney's own documents that he had created. (Hohney Affidavit ¶ 14.)

Robert Drum testified that he was in the Captain's office at approximately 10:30 p.m. on July 7, 1999 to check the leave book because he wanted to take a day off. While in the Captain's room, Christopher Lewis asked Drum how to find a file in the computer. Drum explained to Lewis there's a find files command in windows and explained to Lewis how it worked. (Criminal transcript pp. 34-35.)

Drum then assisted Lt. Adams and CO Eckert with a computer problem. After resolving Lt. Adams' computer problem, Mr. Lewis called Drum over and Lewis had something up on the screen regarding the disciplinary write-up that Lewis had received for sleeping on duty. (Criminal transcript pp. 37-38, Drum deposition pp. 56-57.)

Lewis was commenting on some of the things in the disciplinary report that he didn't feel were right or that he thought were fabricated. Drum observed Lewis close out the program and there was still a box on the screen for other things that are open, including the search Lewis had conducted. (Criminal transcript p. 39, Drum deposition p. 122.)

Lewis then clicked on the open file, Lewis.doc or whatever, and then clicked the delete button. A window popped up and said do you want to delete this file, yes or no. Lewis clicked yes and turned around and looked Drum straight in the eye and said you didn't just see that. (Criminal trial transcript pp. 39, 41, Drum deposition pp. 16-19, 23, 126.)

The next night, Captain Jeszenka was working on the computer and it hit Drum like a ton of bricks about Lewis deleting the file from the computer. Drum went over to Captain Jeszenka and mentioned that he might want to check and make sure all of his files were there. Jeszenka noticed that some of his Lewis files were gone and Drum told Jeszenka what he knew from the previous night. (Criminal trial transcript pp. 42-43, Drum deposition pp. 99-100, 104, 107.)

Drum wrote a statement on July 8, 1999 about what he observed on July 7, 1999 on the computer in the Captain's office. The information in

that statement is true and accurate to the best of his recollection. (Drum deposition pp. 128-129; Lewis deposition Exhibit "10".) Drum did not give Detective Garver any information contrary to what Drum wrote in his July 8, 1999 memo as to what he had seen in the Captain's office the previous night. (Drum deposition p. 131.)

Drum's testimony at the preliminary hearing was consistent with what he had written in his July 8, 1999 memorandum. (Drum deposition p. 132.) Drum's testimony at the criminal trial was accurate as to what he had observed on the night of July 7, 1999 and he testified truthfully in his deposition in this civil action. (Drum deposition pp. 132, 142-143.)

Christopher Lewis does not have any evidence that Robert Drum did not go to Captain Jeszenka's office on July 8, 1999 and provide information to Captain Jeszenka relating to the deletion of the computer files. (Lewis deposition Day II p. 300.) Christopher Lewis admits that he left his post on F-Block and was at the Captain's office at about 23:00 hours on July 7, 1999. (Lewis deposition Day II, pp. 301, 304, 388.)

Christopher Lewis has no reason to believe that Mr. Doebling, the County's computer person, was incorrect when he indicated that three documents: "Lew.doc, Lew2.doc and Lewis.doc", were deleted from the

directory in the Captain's computer as of 23:19 on July 7, 1999. (Lewis deposition Day II, p. 311, Exhibit "11".) Christopher Lewis acknowledges that neither Lt. Adams nor anyone else authorized him to use the computer equipment in the Captain's office on the night of July 7, 1999. (Lewis deposition Day II p. 321, Exhibit "12".)

Christopher Lewis received the criminal charges in the mail and he was later fingerprinted at the Swatara Township building. (Lewis deposition Day II pp. 350, 361.)

III.    **QUESTION PRESENTED:**

    A.    **WHETHER DEFENDANTS GARVER, DEROSE AND JESZENKA ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FOURTH AMENDMENT CLAIM?**

                **[SUGGESTED ANSWER: YES]**

IV.    **ARGUMENT:**

    A.    **DEFENDANTS GARVER, DEROSE AND JESZENKA ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FOURTH AMENDMENT CLAIM.**

As a threshold matter, Defendants contended in their dispositive motion and supporting brief that there was no seizure under the circumstances of this case and, accordingly, there is no basis for a Fourth

Amendment claim.  In his Report, Magistrate Judge Smyser relied upon
<u>Bristow v. Clevenger</u>, 80 F. Supp. 2d 421, 430 (M.D. Pa. 2000) and <u>Nieves v.
McSweeney</u>, 241 F.3d 46, 54-57 (1st Cir. 2001), and found as a matter of law
that there was no "seizure" of Mr. Lewis for Fourth Amendment purposes.
In his latest pleading, Plaintiff has not addressed this threshold issue and
has not directed the court to any case law which is contrary to the holdings
in <u>Bristow</u> and/or <u>Nieves</u>.  Consequently, Plaintiff's request to reconsider
the summary dismissal of his Fourth Amendment claim must be denied as
a matter of law.

In <u>Bristow v. Clevenger</u>, <u>supra</u>., a factually analogous case, this
Honorable Court, relying upon <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217
(3d. Cir. 1998), held that mailing criminal charges to an individual,
processing of that individual for fingerprints, and requiring her attendance
at judicial proceedings was not a "seizure" of that individual under the
Fourth Amendment for purposes of her § 1983 malicious prosecution
claim.  In this case, Plaintiff admits that he was not arrested, rather the
criminal charges were mailed to him and that he was simply processed at
the Swatara Township building for fingerprints and appeared for the

preliminary hearing and the criminal trial. Since this case is legally and logically indistinguishable from the facts presented in Bristow, there was no seizure of Mr. Lewis for Fourth Amendment purposes. See also, Colbert v. Angstadt, 169 F. Supp. 2d 352 (E.D. Pa. 2001); Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999). Consequently, Defendants are entitled to summary judgment was properly entered on behalf of Defendants on the Fourth Amendment claim asserted in Count II of the Complaint.

In Count II of his Complaint, Plaintiff asserts a claim pursuant to § 1983 against Defendants, DeRose, Garver and Jeszenka for violation of Plaintiff's Fourth Amendment rights arising out of his arrest and prosecution for deletion of files in the computer in the Captain's office at the Dauphin County Prison. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

The Fourth Amendment requires that an arrest be made on the basis of probable cause, which occurs, "when the facts and circumstances known

to the [police] officer warrant a prudent man in the officer's shoes in believing that an offense has been committed and the accused is responsible."   United States v. Massac, 867 F.2d 174, 175 (3d Cir. 1989). The absence of probable cause is an "indispensable element of a malicious prosecution claim" and Plaintiff bears the burden of demonstrating the absence of probable cause.  Gilbert v. Feld, 842 F. Supp. 803, 814 (E.D. Pa. 1993).  The Third Circuit has defined probable cause as "proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense."  Griffith v. Cigna Corp., 988 F.2d 457, 464 (3d Cir. 1993).  When the official's conduct is objectively reasonable, i.e. he acts with probable cause, his subjective motivations and intentions are immaterial.  Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985).

According to the PA Crimes Code, the offense of unlawful use of a computer is defined in pertinent part, as follows:

3933  Unlawful use of computer

(a)    Offense defined.  – A person commits the offense of unlawful use of computer if he . . .

(1)    accesses, exceeds authority to access, alters, damages or destroys any computer, computer

26

> system, computer network, computer software,
> computer programs or database or any part
> thereof, with the intent:
>
> (i)    to interrupt the normal functioning of an
>        organization; . . .
>
> (2)    intentionally and without authorization, accesses,
>        alters, interferes with the operation of, damages
>        or destroys any computer, computer system,
>        computer network, computer software, computer
>        program or computer database or any part
>        thereof. . .

18 Pa. C.S.A. § 3933 (a)(1) and (2).  Section 3933(c) defines "access" as": "to

intercept, instruct, communicate with, store data in, retrieve data from or

otherwise make use of any resources of a computer, computer system,

computer network or database."   Plaintiff's <u>sole</u> challenge is that the

conduct complained or (deletion of Captain Jeszenka's documents from the

computer in the Captain's office) does not fit the definition of unlawful use

of a computer.  Plaintiff's assertion, however, has no basis in fact and/or

law.

Initially, in this regard, the fact that an arrestee is later "exonerated"

is irrelevant to the viability of an arrest.  <u>Michigan v. DeFillippo</u>, 443 U.S.

31, 36 (1979); <u>Valenti v. Sheeler</u>, 765 F. Supp. 227 230 (E.D. Pa. 1990). More importantly, the undisputed facts of record show that there was ample probable cause to support the filing of criminal charges against the Plaintiff and that the facts of record before the court establish each element of the offense. CO Boylstein's statement attests to the fact that Plaintiff was away from his post at approximately 11:00 p.m. on July 7, 1999 and the deposition testimony of CO Drum and Plaintiff both establish that Plaintiff was in fact in the Captain's office at that time. Drum observed Mr. Lewis pulling up disciplinary records from Captain Jeszenka's "personal" saved files regarding Lewis sleeping on duty. Drum then observed Mr. Lewis delete that document and that state, "You didn't see nothing".

Drum then brought the matter to Captain Jeszenka's attention the following evening and Jeszenka confirmed that the files were indeed missing and that he had determined that all of his files saved on the computer directory in the Captain's office regarding disciplinary matters with Christopher Lewis had been deleted. Plaintiff also acknowledged that Lt. Adams had not given him permission to use the computer in the Captain's office at approximately 2300 hours on July 7, 1999. Moreover,

John Doebling, a data processing associate employed by Dauphin County, confirmed that the three "saved" files at issue were present in the directory of the computer in the Captain's office as of 11:20 p.m. on July 6, 1999 and had been deleted by 11:20 p.m. on July 7, 1999. All of this evidence points to a fair probability that a crime had been committed (the deletion of the computer records from the Captain's computer) and that Mr. Lewis was the individual responsible for that offense. Capt. Jeszenka's Supplemental Affidavit also attests to the disruption of the normal operation of the prison in that he could no longer access these records while on duty on the nightshift at DCP. In short, the undisputed facts of record substantiated that there was unauthorized access to, and alteration of, computer files kept on the computer in the Captain's office pertaining to disciplinary action against Plaintiff and that there was credible evidence that Mr. Lewis was the individual responsible for this unlawful use of the computer.

Detective Garver then reviewed the factual scenario with Chief Deputy District Attorney Rozman. The prosecutor, after consulting the Crimes Code, advised Detective Garver that the facts established in the investigation met the criteria for a violation of 18 Pa. C.S.A. § 3933(a)(1), a

third degree felony for unlawful use of the computer. Based upon ADA Rozman's advice and the results of his own investigation, Garver felt that probable cause existed to charge Christopher Lewis for violating § 3933 of the Crimes Code. The complained of conduct in this case by Detective Garver, was undertaken on the advice of counsel, in good faith, and, as such, should be deemed conclusively undertaken with probable cause.

Defendants contended that there are no facts of record inconsistent with their good faith, qualified immunity under federal law and Plaintiff does not challenge this assertion in his brief. See, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold inquiry in any qualified immunity analysis is: "taken in the light most favorable to the party asserting the injury, that the facts alleged show the official's conduct violated a constitutional right." Siegert v. Gilley, 500 U.S. 226, 232 (1991). As noted by the U.S. Supreme Court, if the facts of record do not establish a violation of a federally protected right, then "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 121 S.Ct. 2151, _____ (2001). As noted above, the facts of record do not establish a cognizable constitutional claim. Consequently, the Defendants are

immune from liability as a matter of law on the claims asserted in Count II of the Complaint.

The focus of the analysis is not on whether the defendant's conduct was legal per se, but rather the reasonableness of the belief that the conduct was legal.  Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).  "To determine reasonableness, a reviewing court must ask 'whether a reasonable person could have believed defendant's actions to be lawful in light of clearly established law and the information he possessed.' "  Id. at 396.  As noted in Williams v. Fedor, 69 F. Supp. 2d 649, 677-78 (M.D. Pa. 1999), aff'd, 211 F.3d 1263 (3d Cir. 2000), under the objective reasonable standard, officers can rely upon the district attorney's legal advice in pursuing a prosecution.  Based upon the facts of record, a reasonable officer in Detective Garver's shoes would have been concluded that there was ample probable cause to support the filing of the criminal charge. Consequently, Garver is entitled to summary judgment as a matter of law on the Fourth Amendment claim asserted against him.

Defendants contended that  the record is devoid of any evidence that Warden DeRose had the requisite personal involvement in the underlying

prosecution and Plaintiff does not challenge that assertion in his brief.  <u>See</u>, <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Rode v. Delarciprete</u>, 845 F.2d 1195, 1207 (ed Cir. 1988).  Pursuant to established policy, the matter was referred to CID for investigation, but the record is devoid of any evidence establishing that Warden DeRose requested, directed or attempted to influence the investigation of this incident.  Moreover, the undisputed facts of record establish that DeRose had no personal knowledge of the July 7, 1999 incident and he had no involvement with the Dauphin County District Attorney's office decision to file the criminal charges against Plaintiff.  Since Warden DeRose lacked the requisite personal involvement involvement in the underlying prosecution, he cannot be held liable on the Fourth Amendment claim.

With respect to the claims against Captain Jeszenka, it is important to note that Mr. Drum approached him with the initial allegations that Plaintiff had deleted documents from the computer and at no time did Jeszenka ever suggest, advise or direct Drum to make up any false or misleading allegations against Mr. Lewis.  Drum then provided Jeszenka with a written statement of his knowledge of the incident.  Moreover,

Drum testified at the preliminary hearing and at trial exactly in accordance with the information that he himself had brought to Jeszenka's attention verbally and in the written report. On July 8, 1999, Captain Jeszenka wrote a memorandum to the Warden advising what Jeszenka had learned about the incident, from Drum and others and issued an employee disciplinary report to the Plaintiff. Thereafter, Jeszenka's only involvement in the criminal prosecution was providing information known to Jeszenka to the Dauphin County District Attorney's office (information which was already outlined in his July 8, 1999 memo) and providing testimony at the preliminary hearing and criminal trial. The record is totally devoid of any evidence indicating that Captain Jeszenka took any action to in any way influence, direct or pressure Detective Garver and/or CID to file criminal charges against the Plaintiff. Thus, there is no basis for imposing § 1983 liability against Captain Jeszenka and Plaintiff does not challenge this assertion in his brief. Consequently, Jeszenka is entitled to summary judgment as a matter of law on the Fourth Amendment claim.

To the extent that Plaintiff is seeking reinstatement of his First Amendment claim arising out of the computer incident, said claims fail as a

matter of a law. Magistrate Judge Smyser properly concluded that Plaintiff did not point to any facts of record establishing his constitutionally protected conduct was a substantial or motivating factor in the alleged retaliatory action as required by Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir. 1997). Plaintiff's brief does not challenge this conclusion. In that regard, the undisputed facts of record establish that the criminal investigation was conducted by Defendant Garver, an individual who was not even aware that Plaintiff had reported abuses to the prison administration. Thus, there are no facts of record from which a reasonable trier of fact could infer that criminal charges were filed against the Plaintiff in retaliation for reporting abuses at DCP. Defendants further contend that they have satisfied the third prong of the Green analysis in that the filing of the criminal charges would have been appropriate even in the absence of any protected conduct. Plaintiff's brief also does not challenge this defense. Consequently, Magistrate Judge Smyser properly concluded that Defendants were entitled to summary judgment as a matter of law on the retaliation claims arising out of the July, 1999 computer incident.

## V.   <u>CONCLUSION</u>:

For the reasons advanced herein, Defendants respectfully request that this Honorable Court deny Plaintiff's request to reconsider the previous Court Order granting summary judgment in favor of the Defendants and against the Plaintiff on the Fourth Amendment claim asserted in Count II of the Complaint."

Respectfully submitted,

Lavery, Faherty, Young & Patterson, P.C.

By: _____

Frank J. Lavery, Jr., Esquire
Atty No. 42370
James D. Young, Esquire
Atty No. 53904
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
Attys for Defendants

DATE: ___4/22/02___

## **CERTIFICATE OF SERVICE**

I, Linda L. Gustin, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this _____22nd_____ day of April, 2002, I served a true and correct copy of the foregoing **Defendants' Brief in Opposition to Plaintiff's Revised Brief on the Summary Dismissal of His Fourth Amendment Claim** via U.S. First Class Mail, postage prepaid, addressed as follows:

Don Bailey, Esquire
4311 North Sixth Street
Harrisburg, PA   17110


_____
Linda L. Gustin