FILED
HARRISBURG, PA

SEP 2 6 2002

MARY E. D'ANDREA, CLER
Per _____

# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER LEWIS, | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | |
| v. | : | NO. CV 00-0436 |
| | : | |
| DOMINICK DEROSE, MARK | : | |
| JESZENKA, MICHAEL HOHNEY, | : | JUDGE RAMBO |
| ROBERT DRUM, MR. SHOEMAKER | : | |
| CARL GARVER, and | : | MAGISTRATE JUDGE SMYSER |
| DAUPHIN COUNTY, | : | |
| Defendants | : | JURY TRIAL DEMANDED |

## DEFENDANTS' REVISED PRETRIAL MEMORANDUM

### Date Conference Held:

January 24, 2002.

**A.    Brief statement as to federal court jurisdiction.**

The claims remaining for trial are § 1983 First Amendment/ retaliation claims.  Federal Court jurisdiction is authorized pursuant to 28 U.S.C. § 1331, 1343(3) and (4).

**B.    A summary statement of facts and contentions as to liability.**

Following disposition of Defendants' Motion for Summary Judgment and Renewed Motion for Summary Judgment, the only remaining claims for trial are § 1983 First Amendment/retaliation claims regarding an alleged physical threat made by Defendant Hohney to Plaintiff on April 2, 1999; an allegation that during the investigation of April 2, 1999 incident Defendant Shumaker allegedly threatened Plaintiff not to complain and not to report abuse or else he would lose his job; and the refusal to take any disciplinary action against Defendant Hohney for an incident on April 2, 1999.  Defendants contend that: Plaintiff did not engage in any protected, First Amendment activities; that Defendants did not retaliate against Plaintiff for allegedly exercising his constitutional rights; and that there was no basis for imposing discipline upon Defendant Hohney for the April 2, 1999 incident.

Lt. Hohney was involved in a verbal encounter with Plaintiff in the officers' chow hall on April 2, 1999.  At approximately 2000 hours that evening, Hohney discovered that someone had eaten part of his crab cakes that he brought from home to eat that night.  It was visibly obvious that someone had tampered with his food by biting into it and eating some of it.  This did make Lt. Hohney quite upset when he discovered what had occurred.  At that time, Lt. Hohney made several general statements concerning his food having been eaten. Lt. Hohney does recall that he made a statement to the effect of, "If I find out who tampered with my food I would surely beat their ass".  That comment was not directed at Christopher Lewis or to any individual in particular, but was merely Lt. Hohney venting his

2

anger and frustration at someone having tampered with and eaten part of his food. At that time, in fact, Lt. Hohney was relatively sure that this had not been done by Christopher Lewis. However, Mr. Lewis then made a comment about his crab cakes and "how good they were". At that time, Lt. Hohney told Mr. Lewis to leave it alone and to leave Hohney alone. At no time did Lt. Hohney make any verbal threats of bodily harm to either Christopher Lewis or to anyone else present.

Lt. Poley was present in the staff dining room on April 2, 1999. Poley remembers at that time, Lt. Hohney complained about someone eating his food. While in the staff dining room, C.O. Lewis made a statement about Lt. Hohney's crab cakes "sure tasted good". At that time, Lt. Hohney told C.O. Lewis to "shut up" and to leave him alone. At no time did Lt. Poley hear Hohney personally threaten Mr. Lewis in any way. Lt. Poley submitted a memorandum dated April 2, 1999 to Captain Mark Jeszenka, containing Poley's personal knowledge of the April 2, 1999 incident.

With respect to the incident between Christopher Lewis and Michael Hohney in the Officers' chow hall, statements were taken from all of the witnesses to the incident and forwarded to Detective Shumaker by Deputy Warden Carroll. None of the statements indicated that any verbal threat was made by Lieutenant Hohney to Christopher Lewis. The statements did indicate that Mr. Lewis was also involved in making statements to Lieutenant Hohney during their verbal altercation. There was no corroboration of the allegations by Christopher Lewis that Michael Hohney threatened him with bodily harm and these allegations were denied by Mr. Hohney.

Detective Shumaker interviewed Michael Hohney and a number of the individuals from whom statements were taken concerning the incident in the Officers' chow hall. Shumaker cannot recall at this time the specific identities of the witnesses that he interviewed, however, Shumaker specifically remembers interviewing witnesses to the incident who had given statements. Detective Shumaker also remembers that none of the individuals interviewed, who were

witnesses to the incident, indicated that they heard any threat being made by Mr. Hohney against Mr. Lewis.

After discussing the incident with Mr. Lewis, Detective Shumaker advised Lewis that there was no corroboration by any of the other witnesses that any threat of bodily harm was made by Mr. Hohney to him. Shumaker also advised him that if such a threat had been made, then Shumaker would have expected that someone else would have heard it. Shumaker further advised Lewis that it appeared from the statements that Shumaker had received and the interviews that Shumaker had conducted, that Lewis was also an active participant in the verbal altercation with Mr. Hohney. Shumaker also advised Lewis that Shumaker thought that criminal charges could not be proven beyond a reasonable doubt to a fact finder and, therefore, the District Attorney would likely not approve criminal charges. At the time of this meeting, Christopher Lewis made no mention of any incidents of mistreatment or abuse of inmates or other wrongdoing by members of the Prison staff at Dauphin County Prison or by any Prison supervisor to Shumaker. If Lewis had, Shumaker would have had him place the allegations in writing and would have seen that the allegations were investigated. At the time, Mr. Lewis did express concern about being able to report complaints of misconduct to the Prison administration. Shumaker told him that if he had any complaints to make of misconduct on the part of supervisors or staff at the Prison, he could make them directly to Shumaker or to CID in general. Lewis never did follow up and make any complaint concerning misconduct on the part of staff or supervisors at the Prison or with respect to any abuse, mistreatment, or beatings of prisoners.

Christopher Lewis never made any complaint to Detective Shumaker of any incident where an inmate was abused, beaten, or mistreated by staff or supervisors at the Dauphin County Prison. On several occasions over the four years that Shumaker was a County Detective, while he was walking the hallway of a cellblock at the Prison, Mr. Lewis stopped him and indicated that he "had information for me." Lewis did not indicate the nature of this information that he allegedly had for Shumaker. Detective Shumaker told him that if he had any

4

information that he felt should be investigated by Dauphin County CID, he should make a complaint in writing to Shumaker and it would be investigated. Mr. Lewis never made any further complaint either verbally or in writing of any abuse, beatings, or mistreatment of prisoners.

Detective Shumaker never told or advised Warden DeRose that Mr. Lewis had told me that he "had information for me." Shumaker had no conversation at all with Warden DeRose concerning any information given to Shumaker by Christopher Lewis.

At no time did either Warden DeRose, Lieutenant Hohney, or Captain Jeszenka attempt to exert any influence or pressure on Detective Shumaker's investigation into the incident that occurred in the Officers' chow hall between Michael Hohney and Christopher Lewis in April 1999. Shumaker also would not have allowed anyone to influence or pressure his investigation in any way. Shumaker conducted his investigation in a fair and impartial manner and came to his conclusions based upon the available evidence.

**C.    A comprehensive statement of undisputed facts as agreed to by counsel at the conference of attorneys required by Local Rule 16.3. No facts should be denied unless opposing counsel expects to present contrary evidence or genuinely challenges the fact on credibility grounds. The parties must reach agreement on uncontested facts even though relevancy is disputed.**

As of the filing of Defendants' Pretrial Memorandum, there are no agreed upon facts. Defendants reserve the right to supplement this section prior to the pre-trial conference including, but not limited to, the factual admissions from Plaintiff's response to Defendants' Statement of Undisputed Facts.

**D.**    **A brief description of damages, including, where applicable:**

Defendants deny any and all liability to Plaintiff and demand strict proof of each and every element of damages claimed by Plaintiff.

**E.**    **Names and addresses of witnesses, along with the specialties and qualifications of experts to be called.**

1.    Warden Dominick DeRose, Jr.
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

2.    Captain Mark Jeszenka
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

3.    Lt. Michael Hohney
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

4.    Robert Shumaker
      API Investigations, Inc.
      P. O. Box 129
      Marysville, PA  17053

5.    Deputy Warden Leonard K. Carroll
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

6.  Deputy Warden James M. DeWees
    Dauphin County Prison
    501 Mall Road
    Harrisburg, PA  17111

7.  Deputy Warden Elizabeth A. Nichols
    Dauphin County Prison
    501 Mall Road
    Harrisburg, PA  17111

8.  Major Dennis L. Stewart
    Dauphin County Prison
    501 Mall Road
    Harrisburg, PA  17111

9.  Captain Patrick Corkle
    Dauphin County Prison
    501 Mall Road
    Harrisburg, PA  17111

10. Captain Joseph Lahr
    Dauphin County Prison
    501 Mall Road
    Harrisburg, PA  17111

11. Lt. John Q. Adams
    Dauphin County Prison
    501 Mall Road
    Harrisburg, PA  17111

12. Lt. Charles Battenhausen
    Dauphin County Prison
    501 Mall Road
    Harrisburg, PA  17111

13.    Lt. Theodore Bishop
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

14.    Lt. Constance Bower
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

15.    Lt. Russell Hewitt
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

16.    Lt. Gregory Mendenhall
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

17.    Lt. Thomas Poley
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

18.    Lt. Walter Shroy
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

19.    Kenneth R. Kreaps, LPN
       c/o Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

20.   Sgt. Kenneth Cramer
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

21.   Sgt. Anthony Kuzo
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

22.   Sgt. Richard O'Neal
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

23.   William Wenner
      Director, Criminal Investigation Division
      Dauphin County Courthouse
      Front and Market Streets
      Harrisburg, PA  17101

24.   Sgt. Tyrone Wilkerson
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

25.   Correctional Officer Kurt Boylstein
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

26.   Correctional Officer James McIntyre
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

27.   C.O. Lamont Alderman
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

28.   Sgt. Walter Hostetter
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

29.   Sgt. Mike Cryder
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

30.   Lt. Lee Rhoads
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

31.   Sgt. Scott Rowe
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

32.   C.O. Mario Eckert
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

33.   Russ Palmer
      Former Maintenance Officer
      4312 Snavely Road
      Elizabethtown, PA  17022

34.    Charles Jackson
       Maintenance Officer
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

35.    Correctional Officer James Heckard
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

36.    Correctional Officer Glorilyn Leffler
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

37.    Correctional Officer Ryan Jackson
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

38.    Correctional Officer David Mimms
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

39.    Lt. Joseph Carnazzo
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

40.    Correctional Officer James Miller
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

41.    Correctional Officer Tracy Yohn
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

42.    Correctional Officer Charles Brandt
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

43.    Correctional Officer Randy Pope
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

44.    Correctional Officer Thomas Gragg
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

45.    Correctional Officer Mark Salvatore
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

46.    Abram Hostetter, M.D.            (psychiatrist -- Curriculum
       20 Briarcrest Square, Suite 205  Vitae and report are
       Hershey, PA  17033-2359          attached as Exhibit "A")

47.    James Hinkley
       Training Officer
       Dauphin County Prison
       501 Mall Road
       Harrisburg, PA  17111

48.   James Yanick, RN
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

49.   Capt. Michael Carlos Madden
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

50.   Carol Colburn, RN
      Rockingham County Department of Corrections
      99 North Road
      Brentwood, NH  03833

51.   Greg Benedek
      County Detective
      Dauphin County District Attorney's Office
      Front and Market Streets
      Harrisburg, PA  17101

52.   Sgt. James Jones
      Dauphin County Prison
      501 Mall Road
      Harrisburg, PA  17111

53.   Christopher Lewis (as on cross-examination)

54.   Any witnesses listed by Plaintiff.

55.   Defendants reserve the right to supplement this list of
      witnesses, upon reasonable notice, prior to trial.

**F.    Summary of testimony of each expert witness.**

Abram Hostetter, M.D. will testify consistent with his report which is attached as Exhibit "A" concerning any of Plaintiff's claims for emotional injury.

**G.    Special comment about pleadings and discovery, including depositions and the exchange of medical reports.**

None at this time.

**H.    A summary of legal issues involved and legal authorities relied upon.**

(1)    Whether Plaintiff can demonstrate by a preponderance of the evidence that he engaged in activity (speech) protected by the First Amendment?  <u>Green v. Philadelphia Housing Authority</u>, 105 F.3d 882, 885 (3d Cir. 1997); <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990).

(2)    Whether the Plaintiff can demonstrate by a preponderance of the evidence that his constitutionally protected conduct, if any, was a substantial or motivating factor in the Defendants' actions?  <u>Green v. Philadelphia Housing Authority</u>, 105 F.3d 882, 885 (3d Cir. 1997); <u>Suppan v. Dadonna</u>, 203 F.2d 228, 235 (3d Cir. 2000).

(3)    In the event that Plaintiff meets his burden of proof of retaliation for the exercise of First Amendment rights, then whether Defendants can show by a preponderance of the evidence that they would have reached the same decision or would have taken the same action even in the absence of protected conduct?  <u>Suppan v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2000).

(4)    Whether Defendants are immune from liability under federal law? <u>Hunter v. Bryant</u>, 112 S.Ct. 534, 537 (1991); <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987); <u>Kornegay v. Cottingham</u>, 120 F.3d 392, 395 (3d Cir. 1997).

## I.    Stipulations desired.

(1)    Authenticity and admissibility of defense exhibits.

(2)    Substitution of photocopies for original documents.

## J.    Estimated number of trial days.

4-5 days total, with 2-2½ days devoted to the Defendants' case in chief.

## K.    Any other matter pertinent to the case to be tried.

(1)    This Honorable Court denied "for now" with leave to renew the motion at the time of trial, Defendants' Motion in Limine seeking to preclude any testimony and/or evidence regarding any incidents, other than the April 2, 1999 crab cake incident, in which Defendant Hohney allegedly used force or the threat of physical force against any individual.  Defendants seek to renew that motion and obtain a ruling prior to trial.

(2)    This Honorable Court did not address the portions of Defendants' Motion in Limine seeking to preclude testimony and/or evidence regarding any prior instances of alleged retaliation against any other prison employee for allegedly engaging in activities protected by the First Amendment. (<u>See</u>, paragraph (2) of Defendants' proposed Court Order and paragraphs 17-20 of Defendants' Motion in Limine).  Now that the Court has bifurcated the trial of the claims against Dauphin

County from the claims against the individuals, Defendants renew paragraphs 17-20 of their Motion in Limine and seek a ruling from the court prior to trial.

(3)    This Honorable Court did not address the portions of Defendants' Motion in Limine seeking to preclude testimony and/or evidence regarding other instances of alleged mistreatment and/or beatings of inmates which were not reported to prison officials. (See, paragraph 4 of Defendants' proposed Court Order and paragraphs 21-23 of Defendants' Motion in Limine). Defendants renew that portion of their Motion in Limine and seek a ruling from the court prior to trial.

(4)    Since the time of the filing of Defendants' Motion in Limine, this Honorable Court has granted in part and denied in part Defendants' Motion for Summary Judgment and Renewed Motion for Summary Judgment. Defendants intend to file a Supplemental Motion in Limine to preclude any and all testimony and/or evidence regarding the claims which have been dismissed.

(5)    In light of the language of the Court's Memorandum on Defendants' Supplemental Summary Judgment Motion, Defendants intend to file an additional Motion in Limine to preclude evidence of any alleged reports of inmate abuse by Plaintiff which occurred more than one year prior to the "crab cake incident" of April 2, 1999.

L.    **Pursuant to Local Rule 16.3 appended to this memorandum is a pre-numbered schedule of exhibits, with brief identification of each, on the clerk's Exhibit Form.**

See Clerk's Exhibit form attached as "Exhibit "B".

**M.**   **Append any special verdict questions which counsel desires to submit.**

See Defendants' Proposed Special Verdict Questions attached as Exhibit "C".


**N.**   **Defense counsel must file a statement that the person or committee with settlement authority has been notified of the requirements of and possible sanctions under Local Rule 16.2.**

Undersigned defense counsel hereby certifies that the person with settlement authority has been notified of the requirements of Rule 16.2 and the possible sanctions under Local Rule 103.2, M.D. Pa.


**O.**   **Certificate must be filed as required under Local Rule 30.10 that counsel have met and reviewed depositions and videotapes in an effort to eliminate irrelevancies, side comments,  resolved objections, and other matters not necessary for consideration by the trier of fact.**

The deposition of Dr. Hostetter, defendants' psychiatric expert, is scheduled for October 15, 2002.  Prior to trial, counsel will confer in an effort to eliminate irrelevancies, side comments and other matters not necessary for the jury's consideration and to resolve any objections.


**P.**   **In all trials without a jury, requests for findings of both fact and law shall be submitted with this Memorandum as required under Local Rule 48.2**

Not applicable.

Respectfully submitted,

LAVERY, FAHERTY, YOUNG &
PATTERSON, P.C.

Date: _9/26/02_

By: _____
Frank J. Lavery, Jr., Esquire
Attorney I.D. 42370
P. O. Box 1245
Harrisburg, PA  17108-1245
(717) 233-6633
Attorney for Defendants



**HPA**

**Hershey Psychiatric Associates**

20 Briarcrest Square, Suite 205
Hershey, Pennsylvania 17033-2359
(717) 533-4797
Fax: (717) 533-1574

March 8, 2000

Paul J. Delasega, Esquire
POB 999
Harrisburg, PA 17108

Re: Christopher Lewis
Your File #477-00233

Dear Mr. Delasega:

In this report I will summarize my observations and conclusions after reviewing the packet of records you had forwarded to me concerning Mr. Lewis' employment at the Dauphin County Prison, and seeing him in a psychiatric evaluation in my office on February 29, 2000.

He is a thirty-five-year-old divorced man who has been employed as a Correctional Officer at the prison for more than twelve years.

You had asked me to perform a psychiatric evaluation to determine whether Mr. Lewis is psychiatrically fit to carry a weapon and whether he could function appropriately in emergency situations.

In reviewing the records, it is clear that Mr. Lewis has made many grievances during his years of employment at the prison. Also, he has had violations of expectations of an Officer at times, including sleeping on duty after he had taken medication.

In 1999 he was charged with a felony, of having deleted negative items from his personnel file, which was stored in a computer.

This led to a jury trial in which Mr. Lewis was found not guilty. He returned to work on January 23, 2000.

Then in early February 2000 he had significant absenteeism and was placed off work indefinitely on February 11, 2000.

Abram M. Hostetter, M.D., F.A.C.P., F.A.P.A.          Barbara G. Kuhlengel, M.D., F.A.P.A.          M. George Feeney, Ph.D.
                                                      Kathleen L. Huth, Office Manager



EXHIBIT
"A"

Re: Christopher Lewis
Page: 2

When he appeared for his appointment on February 29, 2000 he said he was very nervous being in my office.

He said he takes two medications since the Summer of 1999 when he was charged with felonious behavior, the anti-anxiety agent BuSpar, of which he uses 15 mg twice daily, and the antidepressant medication Zoloft, of which he uses 50 mg once daily.

Mr. Lewis said he believes he was "set up by another officer" who doesn't like him.

I found him to be fully able to comprehend my questions, but he was somewhat guarded in his responses early in the interview.  He gave no evidence of being depressed nor of being significantly anxious.  There was no cognitive impairment.

He told me he wants to return to the work situation and believes he will be able to function when he gets back to work.

He informed me he is the single parent of two daughters, ages twelve and six. He has primary custody of those children.

He told me he is picked on by "a selected number of individuals."  He said two officers above him do not get along well with him.  He said since returning to work in January, 2000, he had been "written up for two bogus charges."

He spoke about having become so tense at work that his blood pressure went to 170/100.  He then claimed when he went to the Emergency Room at the hospital he was unable to obtain care because his health insurance had not been reinstated.

I asked him about his family situation.  He said his wife "took off in June 1999." They had been separated since June 1997.  He described it as "an amicable divorce."

She was a certified nurses' aide.  She had an Eskimo background.  He had met her when he was in military service in Alaska.  She has now returned to Alaska and rarely contacts him or their daughters.

After Mrs. Lewis left, he took his daughters for psychological counseling.  He believes they have adjusted to living without their mother.  He said he has a very supportive family in the Harrisburg area and they help him in taking care of his daughters.

At this point I asked Mr. Lewis how he feels about the fact that his wife had left

Re: Christopher Lewis
Page: 3

him. He said, "I deal only with the facts, not with feelings."

Mr. Lewis had worked night shift at the prison for four years. He felt he had done a good job, but recognized that he had difficulty in getting along with fellow officers.

When he was working at night, his mother or his brother or sister-in-law would look after the children. His brother and sister-in-law, along with their four-month-old baby, live on the third floor of Mr. Lewis' house.

Mr. Lewis is not involved with any religious or social groups. He has never had any serious medical problems.

I heard nothing to indicate that he is psychotic.

He said in the Fall of 1989 he had taken a one-month "stress leave" because he was threatened to be beaten up by other guards at the prison.

I found him to be somewhat rigid and single-minded in the way he made his presentation. He said he knows he is "viewed as a trouble maker because I live by the rules."

Mr. Lewis believes he is being treated differently from other guards. He said he has been written up for "things that I see as being bull crap."

He asserted that he has no trouble in getting along with the inmates in the prison.

He said no one had ever referred him for counseling or psychiatric treatment. The Physician's Assistant in Dr. Little's office, Ms. Roth, had prescribed the medication for him and had indicated he has "acute anxiety secondary to repeated job stress."

He talked about the incident when he had been asleep on the job at work. He said that was because he had mistakenly taken an overdose of medication for flu symptoms, which caused him to fall asleep.

Mr. Lewis has a way of rationalizing all of his behaviors. I asked him why he had not attended work on a regular basis after he returned on January 23, 2000. He said it was because he was having chest pain and because there was ice and snow on the roads on some days. He said he didn't want to "risk being wiped out in an accident" since he is the only parent his daughters have.

Re: Christopher Lewis
Page: 4

Subsequent to his complaint of acute anxiety symptoms, he wore a halter monitor and was told that all of his tracings were normal.

The week before I saw Mr. Lewis, he had seen an intake worker at the Dauphin County MH/MR Office, Mr. Rugg. Mr. Rugg had scheduled him to see a psychiatrist on March 6, 2000. He also plans to see a psychiatrist at the V.A. clinic in Harrisburg "so I can get my meds for free."

Mr. Lewis said he has no ambition to rise to a higher level of responsibility at the prison. He said he is satisfied with his present assignment and likes being on night shift.

He does not go out socializing with any of his fellow workers. He believes that may cause them to discriminate against him. He said his ex-wife had a serious alcohol problem and he does not want to risk anything like that.

Based on Mr. Lewis' evaluation, I found him to be a man with significant anxiety symptoms as well as a Personality Disorder, Not Otherwise Specified, with paranoid and schizoid features. Neither of these diagnoses is a consequence of his work situation, but are longstanding in nature.

At the time I evaluated Mr. Lewis, I did not find him fit to return to regular duties at the prison. It is my professional opinion he should be involved in regular outpatient counseling and have a re-evaluation of his use of medication before he should be cleared for return to his work assignment.

Because of his hostility and suspicion toward other guards, I could not be certain he would respond appropriately in an emergency situation. He appears to have much difficulty in trusting his fellow workers, and makes frequent grievances and complaints about how he is being treated. He has no insight into the fact that he contributes in a significant way to the difficulties he has in relating to other people.

If Mr. Lewis responds positively to regular outpatient psychotherapy and the appropriate use of medication, I would anticipate at some point he will be able to return to his work situation.

Please be in touch with me if you want to discuss this evaluation or report.

Very truly yours,

Abram M. Hostetter, M.D.

AMH/kh/AMH17/lewis

# CLERK'S EXHIBIT LISTING

JUDGE: ___Sylvia H. Rambo -- Magistrate Judge Smyser___

Abbreviated Name of Case: ___Christopher Lewis v. Dominick DeRose, et al.___

Case No.: ___CV-00-0436___

Name of party submitting this list: ___Defendant(s)___

(Judge's trial notes: vertical lines equal ditto marks throughout; W equals witness)

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 1 | Christopher Lewis' grievances. | | | | |
| 2 | Plaintiff's Answers to Interrogatories. | | | | |
| 3 | Collective Bargaining Agreement Article XI through Article XIII. | | | | |
| 4 | Dauphin County Prison form re: report of extraordinary incident. | | | | |
| 5 | Anonymous memorandum dated 5/7/99. | | | | |
| 6 | Affidavit of Deputy Warden Leonard K. Carroll. | | | | |
| 7 | Affidavit of Deputy Warden James DeWees. | | | | |
| 8 | Affidavit of Deputy Warden Elizabeth Nichols. | | | | |
| 9 | Affidavit of Major Dennis Stewart. | | | | |
| 10 | Affidavit of Captain Patrick Corkle. | | | | |
| 11 | Affidavit of Captain Joseph Lahr. | | | | |
| 12 | Affidavit of John Q. "Micky" Adams. | | | | |



EXHIBIT

"B"

CLERK'S EXHIBIT LISTING

JUDGE:  Sylvia H. Rambo   -- Magistrate Judge Smyser

Abbreviated Name of Case:  Christopher Lewis v. Dominick DeRose, et al.

Case No.:  CV-00-0436

Name of party submitting this list:  Defendant(s)

(Judge's trial notes:  vertical lines equal ditto marks throughout; W equals witness)

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 13 | Affidavit of Lt. Charles Battenhausen. | | | | |
| 14 | Affidavit of Lt. Theodore Bishop. | | | | |
| 15 | Affidavit of Lt. Constance Bower. | | | | |
| 16 | Affidavit of Lt. Russell Hewitt. | | | | |
| 17 | Affidavit of Lt. Greg Mendenhall. | | | | |
| 18 | Affidavit of Lt. Thomas Poley. | | | | |
| 19 | Affidavit of Lt. Walter Shroy. | | | | |
| 20 | Affidavit of Sgt. Kenneth Cramer. | | | | |
| 21 | Affidavit of Sgt. Anthony Kuzo. | | | | |
| 22 | Affidavit of Sgt. Richard O'Neal. | | | | |
| 23 | Affidavit of Sgt. Scott Rowe. | | | | |
| 24 | Affidavit of C.O. Kurt Boylstein. | | | | |

CLERK'S EXHIBIT LISTING

JUDGE:   Sylvia H. Rambo   -- Magistrate Judge Smyser

Abbreviated Name of Case:   Christopher Lewis v. Dominick DeRose, et al.

Case No.:   CV-00-0436

Name of party submitting this list:   Defendant(s)
(Judge's trial notes: vertical lines equal ditto marks throughout; W equals witness)

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 25 | Affidavit of C.O. Lamont Alderman. | | | | |
| 26 | Christopher Lewis' deposition transcript Day I (with exhibits). | | | | |
| 27 | Christopher Lewis' deposition transcript Day II (with exhibits). | | | | |
| 28 | Plaintiff's employment records from Bonitz Brothers. | | | | |
| 29 | Tactical Teams P.T. requirements memo (2/16/96) with comments from Christian Laudenslager. | | | | |
| 30 | CERT team reports identified in Wilkerson deposition. | | | | |
| 31 | Sgt. Wilkerson's deposition transcript (with exhibits). | | | | |
| 32 | Report of extraordinary occurrence with attachments re inmate Villegas. | | | | |
| 33 | Documents re incident between Plaintiff and Dave Coldren. | | | | |

CLERK'S EXHIBIT LISTING

JUDGE:    Sylvia H. Rambo    -- Magistrate Judge Smyser

Abbreviated Name of Case:   Christopher Lewis v. Dominick DeRose, et al.

Case No.:    CV-00-0436

Name of party submitting this list:  Defendant(s)

(Judge's trial notes:  vertical lines equal ditto marks throughout; W equals witness)

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 34 | Letters from Elmer LaBuck. | | | | |
| 35 | Documents re incident with Hollenbush. | | | | |
| 36 | Extraordinary occurrence reports re: restraint of Deon Stafford in 1996. | | | | |
| 37 | Criminal history – Nathan Griggs. | | | | |
| 38 | Reports re: incidents involving Elmer LaBuck. | | | | |
| 39 | Transcript of deposition of Christian Laudenslager (with exhibits). | | | | |
| 40 | Transcript of deposition of James McIntyre Day I (with exhibits). | | | | |
| 41 | Transcript of deposition of James McIntyre Day II (with exhibits). | | | | |
| 42 | Transcript of deposition of Carl Coble (with exhibits). | | | | |
| 43 | Lt. Hohney's memorandum to Captain Jeszenka re 4/2/99 crab cake incident. | | | | |

CLERK'S EXHIBIT LISTING

JUDGE:    Sylvia H. Rambo    -- Magistrate Judge Smyser

Abbreviated Name of Case:  Christopher Lewis v. Dominick DeRose, et al.

Case No.:   CV-00-0436

Name of party submitting this list:  Defendant(s)

(Judge's trial notes:  vertical lines equal ditto marks throughout; W equals witness)

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 44 | Christopher Lewis' memorandum to Deputy Warden Carroll re 4/2/99 incident with Lt. Hohney. | | | | |
| 45 | Lt. Thomas Poley's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 46 | Sgt. Scott Rowe's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 47 | Sgt. Michael Cryder's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 48 | C.O. James Heckard's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 49 | C.O. Kirk Boylstein's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 50 | C.O. Glorilyn Leffler's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 51 | C.O. Ryan Jackson's memorandum to Captain Jeszenka re 4/2/99incident. | | | | |

CLERK'S EXHIBIT LISTING

JUDGE:    Sylvia H. Rambo    -- Magistrate Judge Smyser

Abbreviated Name of Case:    Christopher Lewis v. Dominick DeRose, et al.

Case No.:    CV-00-0436

Name of party submitting this list:    Defendant(s)

(Judge's trial notes:  vertical lines equal ditto marks throughout; W equals witness)

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 52 | C.O. David Mimms' memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 53 | C.O. James Miller's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 54 | C.O. James McIntyre's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 55 | Russ Palmer's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 56 | Charles Jackson's memorandum to Captain Jeszenka re 4/2/99 incident. | | | | |
| 57 | Medical incident/injury report on Christopher Lewis (4/2/99). | | | | |
| 58 | Request for leave (4/2/99) from Christopher Lewis. | | | | |
| 59 | Captain Jeszenka's memorandum to Deputy Warden Carroll re 4/2/99 incident. | | | | |

CLERK'S EXHIBIT LISTING

JUDGE: Sylvia H. Rambo  -- Magistrate Judge Smyser

Abbreviated Name of Case:  Christopher Lewis v. Dominick DeRose, et al.

Case No.:  CV-00-0436

Name of party submitting this list: Defendant(s)

(Judge's trial notes: vertical lines equal ditto marks throughout; W equals witness)

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 60 | Correspondence (4/13/99) from Deputy Warden Carroll to William Wenner re request for investigation of 4/2/99 incident. | | | | |
| 61 | Detective Shumaker's prison investigation disposition report re 4/2/99 incident. | | | | |
| 62 | Deputy Warden Carroll's 4/29/99 memo to Christopher Lewis re Detective Shumaker's determination that no violation occurred. | | | | |
| 63 | Medical incident/injury report re: Christopher Lewis dated 3/5/99 with Yanick's memo. | | | | |
| 64 | Report of extraordinary occurrence with attachments re: inmate Geraldine Stump. | | | | |
| 65 | Deon Stafford's Amended Complaint. | | | | |
| 66 | Report of extraordinary occurrence with attachments re: inmate William Vinson. | | | | |

CLERK'S EXHIBIT LISTING

JUDGE:    Sylvia H. Rambo    -- Magistrate Judge Smyser

Abbreviated Name of Case:    Christopher Lewis v. Dominick DeRose, et al.

Case No.:    CV-00-0436

Name of party submitting this list:    Defendant(s)

(Judge's trial notes: vertical lines equal ditto marks throughout; W equals witness)

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 67 | Report of Dr. Abram Hostetter on 02/29/2000 IME of Christopher Lewis. | | | | |
| 68 | 01/26/90 memo Lt. Lahr to Captain Carroll re C.O. Lewis. | | | | |
| 69 | Any exhibits listed by Plaintiff. | | | | |
| 70 | Defendants reserve the right to supplement this list of exhibits prior to trial. | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER LEWIS,       :   CIVIL ACTION - LAW
             Plaintiff     :
                        :
          v.           :   NO. CV 00-0436
                        :
DOMINICK DEROSE, MARK    :
JESZENKA, MICHAEL HOHNEY,  :   JUDGE RAMBO
ROBERT DRUM, MR. SHOEMAKER :
CARL GARVER, and         :   MAGISTRATE JUDGE SMYSER
DAUPHIN COUNTY,         :
             Defendants   :   JURY TRIAL DEMANDED

## DEFENDANTS' PROPOSED SPECIAL VERDICT QUESTIONS

1.    Do you find, by a preponderance of the evidence that Plaintiff reported alleged employee misconduct and/or inmate abuse to his superiors?

        Yes_____   No_____

(If you have answered "Yes" to Question No. 1, then go on to Question No. 2. If you have answered "No" to Question No. 1, this concludes your deliberations. Please sign the last page of the verdict form and return to the courtroom.)



EXHIBIT
"C"

2.    Do you find, by a preponderance of the evidence, that each of the Defendants took any adverse employment action against Plaintiff?

Dominick DeRose        Yes_____    No_____
Mark Jeszenka          Yes_____    No_____
Michael Hohney         Yes_____    No_____
Robert Shumaker        Yes_____    No_____

(If you have answered "yes" as to any Defendant on Question No. 2 go on to Question No. 3.  If you have answered "No" to Question No. 2 as to all Defendants, this concludes your deliberations.  Please sign the last page of the verdict form and return to the courtroom.)

3.    If you answered "Yes" to Questions No. 1 and 2, do you find by a preponderance of the evidence that Plaintiff's protected speech was a substantial motivating factor in the adverse employment actions taken by each of the Defendants?

Dominick DeRose        Yes_____    No_____
Mark Jeszenka          Yes_____    No_____
Michael Hohney         Yes_____    No_____
Robert Shumaker        Yes_____    No_____

(If you have answered "Yes" as to any Defendant on Question No. 3, go on to Question No. 4.  If you have answered "No" to Question No. 3 as to all Defendants, this concludes your deliberations.  Please sign the last page of the verdict form and return to the courtroom.)

4.    If you have answered "Yes" to Question No. 3 as to any Defendant, then do you find that each such Defendant has established, by a preponderance of the evidence, that the adverse employment action he has taken against Plaintiff

would have been taken even in the absence of protected speech?

|                    |          |          |
|--------------------|----------|----------|
| Dominick DeRose    | Yes_____ | No_____  |
| Mark Jeszenka      | Yes_____ | No_____  |
| Michael Hohney     | Yes_____ | No_____  |
| Robert Shumaker    | Yes_____ | No_____  |

**(If you have answered "Yes" to Question No. 4 as to each Defendant, this concludes your deliberations. Please sign the last page of the verdict form and return to the courtroom. If you have answered "No" to Question No. 4 as to any Defendant, proceed to Question No. 5.)**

5.    Do you find, by a preponderance of the evidence, that Defendants should be granted qualified immunity because of the "good faith" defense?

|                    |          |          |
|--------------------|----------|----------|
| Dominick DeRose    | Yes_____ | No_____  |
| Mark Jeszenka      | Yes_____ | No_____  |
| Michael Hohney     | Yes_____ | No_____  |
| Robert Shumaker    | Yes_____ | No_____  |

**(If you have answered "Yes" to Question No. 5 as to all Defendants, this concludes your deliberations. Please sign the last page of the verdict form and return to the courtroom. If you have answered "No" to Question No. 5 as to any Defendant, proceed to Question No. 6.)**

6.    State the amount of damages, if any, sustained by Plaintiff as a result of the conduct of the Defendants.

$_____

Date:_____                    _____
                                                          Foreperson

## CERTIFICATE OF SERVICE

I, Linda L. Gustin, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this _____26th_____ day of September, 2002,    I served a true and correct copy of the foregoing **Defendants' Revised Pretrial Memorandum** via U.S. First Class Mail, postage prepaid, addressed as follows:

Don Bailey, Esquire
4311 North Sixth Street
Harrisburg, PA   17110

Samuel C. Stretton, Esquire
301 S. High Street
P.O. Box  3231
West Chester, PA 19381-3231


_Linda L. Gustin_
Linda L. Gustin